# ATTACHMENT 2

# Complaint

FILED
2019 JUL 03 10:10 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 19-2-17560-5 KNT

SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| Firs Home Owners Association, | No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF CHAPTER 49.60 RCW** |
| v. | |
| City of SeaTac, a Municipal Corporation, | DEMAND FOR JURY TRIAL |
| Defendant. | |

The Plaintiff, Firs Home Owners Association, by and through its attorneys of record, Vicente Omar Barraza and Christina Henry, alleges, as follows:

## I.     PARTIES

1.1     The Firs Home Owners Association[1], incorporated as a nonprofit domestic corporation on October 22, 2016 under Unified Business Identifier number 604047064. The Firs Home Owners Association members are individual home owners who lease spaces on which their manufactured homes are located.

1.2     The Defendant, City of SeaTac, is a local government entity pursuant to Chapter 4.96 RCW *et. seq.* located in King County, Washington, with a registered agent located at 4800

---

[1] The Firs Home Owners Association may assert these claims pursuant to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

COMPLAINT - 1

South 188th Street, SeaTac, WA 98188-8605. City Clerk, Kristina Gregg, serves as the

appointed agent for service of process pursuant to RCW 4.96.020.

## II.    JURISDICTION AND VENUE

2.1    This Court has original subject matter jurisdiction pursuant to the Constitution of

the State of Washington, Art. 4 § 6.

2.2    Venue is proper in King County pursuant to RCW 4.12.020 because the

defendant is located in and conducts its operations in King County.

## III.    STATUTORY COMPLIANCE

3.1    On February 13, 2019, a standard tort claim form was served on Defendant City

of SeaTac pursuant to Chapter 4.96 RCW et. seq.  More than sixty days have elapsed.

## IV.    FACTS

4.1    Spanish is the primary language spoken by adult heads of housing located within

the Firs Mobile Home Park.

4.2    Nearly all the adults residing in the Firs Mobile Home Park were born in countries

other than the United States, especially countries located in Latin America, including Mexico

and El Salvador.

4.3    On May 8, 2016, Fife Motel Inc., which owns the Firs Mobile Home Park, hand-

delivered a letter written in the English language to all 66 tenants in The Firs Mobile Home Park

advising them of an open house meeting scheduled for Saturday, May 14, 2016, from 11:00 a.m.

to 5:00 p.m. at a hotel adjacent to the park.  Fife Motel advised tenants that it intended to close

the mobile home park and that a relocation specialist would attend the May 14, 2016 meeting to

work with the families regarding the closure of the park.

4.4    On May 27, 2016, Fife Motel Inc. submitted a Relocation Plan to the City of

SeaTac for approval pursuant to SeaTac Municipal Code (SMC) 15.465.600.H. The City does

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

not appear to have required Fife Motel Inc. to provide certified translations and interpreters through the housing relocation process.

4.5     On July 7, 2016, the owner of Fife Motel sent an English-language letter to the Firs residents and invited them to attend a July 11, 2016 meeting regarding the relocation. However, the City of SeaTac's Ordinance required the City to schedule and host the meeting. Although Mr. Steve Pilcher, Planning Manager for the City of SeaTac attended the meeting, the City was required to provide certified interpreters and translated documents to ensure maximum effectiveness in its communications to the residents but did not do so.

4.6     On July 22, 2016, the City of SeaTac issued a State Environmental Policy Act ("SEPA") determination of non-significance which concluded that the Mobile Home Park Relocation Plan for the Firs Mobile Home Park "w[ould] facilitate future development of the site with projects consistent with the City's Comprehensive Plan." The City failed to provide SEPA related materials pertinent to the approval of the Revised Relocation Plan in Spanish to the residents.

4.7     On August 30, 2016, Fife Motel submitted a revised Relocation Plan to the City.

4.8     On or about October 6, 2016, then-Deputy Mayor Pam Fernald asserted that the families at Firs "do not pay taxes" apparently alluding to the fact that many are immigrant tenants. The City failed to provide certified Spanish-language interpreters at this City Council meeting attended by the Firs MHP residents.

4.10    On October 7, 2016, Fife Motel submitted its final draft of the Relocation Plan to the City of SeaTac with some sections translated into Spanish.

4.11    On October 17, 2016, the City approved the Relocation Plan and issued a Certificate of Approval. The City failed to provide the Relocation Approval letter in Spanish

COMPLAINT - 3

and failed to provide residents with information in Spanish about their right to appeal the City's approval of the Revised Relocation Plan.

4.12    On October 22, 2016, the residents of the Firs Mobile Home Park established the Firs Home Owners Association ("HOA") to challenge the City of SeaTac's ("SeaTac") October 17, 2016 approval of the Fife Motel Inc.'s Relocation Plan prepared pursuant to the City of SeaTac's municipal ordinance at SMC 15.465.600.

4.13    Following SeaTac's approval of the Relocation Plan on October 17, 2016, Fife Motel Inc. informed the residents of their intent to close the park effective October 31, 2017.

4.14    On October 25, 2016, homeowners residing in the Firs Mobile Home Park attended the SeaTac City Council Meeting and requested an extension of the October 31st deadline to appeal the city's approval of the Mobile Home Park Relocation Plan for the Firs. The City Council refused to extend the appeal deadline as requested at the meeting on October 25, 2016 although many of the families did not receive notice of the approval of the relocation plan until on or about October 25, 2016, well into the appeal period.

4.15    On October 25, 2016, Councilmembers Pam Fernald, Kathryn Campbell, and Mayor Sietkes made comments at a public meeting of the Council that the residents of Firs considered discriminatory based on their national origin. The City failed to provide certified Spanish-language interpreters at this City Council meeting attended by the Firs MHP residents.

4.16    On October 30, 2016, Joseph Scorcio sent an email to an advocate assisting the HOA. Mr. Scorcio responded on behalf of SeaTac City Council members to refuse to offer a special meeting of the Council to discuss concerns expressed by the Firs residents about the loss of their housing.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

4.17    On October 31, 2016, the HOA timely appealed the Relocation Plan approval to the City of SeaTac's Hearing Examiner. The Hearing Examiner issued a Decision in favor of the City on February 22, 2017 and denied Reconsideration on March 6, 2017.

4.18    On November 3, 2016, staff removed the sign-up list for public comment when they observed members of the Firs HOA arrive at the council budget workshop.

4.19    The HOA timely exhausted its administrative appeals and filed a land use protection act action against the City of SeaTac and Fife Motel Inc. in King County Superior Court (17-2-07094-7 KNT) on March 24, 2017.

4.20    On May 23, 2017, Jeff Robinson informed an ally of the HOA that they should not speak at the City Council Meeting that day, because Mr. Robinson was trying to talk the Council into moving forward with an affordable housing scheme and seeing the Firs residents at the meeting would only enrage the Council members and make them less inclined to support his plan.

4.21    On November 28, 2017, police chief Lisa Mulligan took the sign-in sheet from Firs resident Erasmo Martinez as he was trying to sign up to speak at a Council meeting and told him "this meeting isn't for you".

4.22    On December 13, 2017, at the Special Council Meeting, then-Mayor Siefkes, upon seeing the arrival of the Firs residents, took great pains to insist that at Special Council Meetings, public comment will only be heard on agenda items, and repeatedly said "Firs is not on the agenda tonight"; "we will not be taking public comment on things like the Firs tonight". This rule was not posted online, on the meeting agenda, or on the screen where they sometimes show rules for public comment.

4.23    On June 7, 2018, King County Superior Court Judge LeRoy McCullough reversed, in part, the decision of the City of SeaTac Hearing Examiner and remanded the

BARRAZA LAW PLLC
10728 16ᵀᴴ AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

relocation plan for modification. On the topic of the July 11, 2016 meeting, the King County Superior Court noted:

> By a letter dated July 7, 2016 (this letter was also in English) the owner advised the mobile home park residents of a second meeting to be held on July 11, 2016.
>
> According to that letter, Mr. Steve Pilcher, P-i-l-c-h-e-r, Planning Manager, City of SeaTac, would attend that meeting and answer questions about the relocation process.
>
> The relocation specialist, an interpreter, and a social worker also attended that meeting. I'll note that parenthetically.
>
> Going back to the letter about July 11, it also advised residents that they would receive a copy of the relocation report and plan following its approval by the City.
>
> The meeting occurred on July 11 and was, in fact, attended by Mr. Pilcher, the Planning Manager for the City of SeaTac. An interpreter was provided because, as I've indicated, tenants of many of the mobile homes speak Spanish and limited English.
>
> The tenants would later complain about the quality of the interpreter service provided at that meeting.
>
> Although individual meetings within tenants' homes occurred within the two meetings, some indicated that no such meetings occurred.
>
> On July 22nd, 2016, the City's "responsible official" issued the State Environmental Policy Act threshold Declaration of Non-Significance. This was done in English.

The Court further noted:

> The code itself, therefore, mandates that the City schedule a meeting and provide from its -- and I believe the idea was it's a neutral perspective, and a neutral objective source, information about the standards to be complied with. This was not done. And the City conceded the same at the hearing examiner level, but dismisses this as a technicality, as do some of the other parties, but this Court -- in this Court's opinion it's much more than a technicality.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

1  Finally, the King County Superior Court which noted "[o]n the subject of translation and

2  interpreters, notices of all proceedings should be issued for what we would term maximum

3  effectiveness."

4      4.24    On February 13, 2019, the Firs Home Owners Association filed a pre-litigation

5  tort claim against the City of SeaTac claiming that the City engaged in disparate treatment and

6  disparate impact discrimination throughout the housing relocation planning process related to the

7  closure of the Firs Mobile Home Park.

8

9                              **V.    CAUSES OF ACTION**

10     5.1    Plaintiffs repeat and reallege and incorporate by reference the foregoing

11  paragraphs.

12     5.2    The Firs Home Owners Association asserts that the City of SeaTac, commencing

13  in or around May of 2016 through the present, violated the Washington Law Against

14  Discrimination at Chapter RCW 49.60 by failing to provide qualified interpreters and

15  translations to the predominantly Latino/Hispanic, non-English-speaking residents of the Firs

16  Mobile Home Park because the lack of adequate and effective English-language

17  communications deprived them of their right to use and enjoy their housing free of

18  discrimination; treating them in a disparate manner by offering the non-Hispanic owners of

19  Fife Motel Inc. benefits and accommodations not made available to them, and by approving a

20  relocation plan which will result in disparate impact housing discrimination.

21     5.3    The Legislature affords persons residing in Washington a broad right to enjoy and

22  maintain their housing and participate in public assemblies free of discrimination.

23  RCW 49.60.030(1)(b) and (c). Washington's Law Against Discrimination prohibits the City

24  of SeaTac from discriminating against members of the Firs Home Owners Association because

25  of their national origin related to their housing or in the course of a public assemblage for

26  public purposes. RCW 49.60.040(2).

27

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

1

2

3

4

5

6

7

8

> It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, families with children, sex, marital status, sexual orientation, age, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.

9

RCW 49.60.010.

10

     5.4     In furtherance of these rights, "[i]t is ... the policy of this state to secure the

11

rights, constitutional or otherwise, of persons who, because of a non-English-speaking cultural

12

background, are unable to readily understand or communicate in the English language, and who

13

consequently cannot be fully protected in legal proceedings unless qualified interpreters are

14

available to assist them." RCW 2.43.010. "*'Legal proceeding' means a proceeding* in any court

15

in this state, grand jury hearing, or hearing before an inquiry judge, or *before* an administrative

16

board, commission, agency, or licensing body of the state or *any political subdivision thereof*."

17

(emphasis added). RCW 2.43.020(3).

18

     5.5     The City of SeaTac outlines a mobile home park relocation planning process at

19

SMC 15.465.600.H. The mobile relocation planning process constitutes a proceeding before the

20

City, especially the Director of SeaTac's Department of Community and Economic Development

21

("CED"). SMC 15.465.600.H. The Director's decision may be appealed to the City's Hearing

22

Examiner. SMC 15.465.600.H.2.g. The decision of the Hearing Examiner may be appealed to the

23

Superior Court pursuant to Chapter 36.70C RCW. The Firs Home Owners Association appealed

24

the Hearing Examiner's decision to the King County Superior Court which noted "[o]n the

25

subject of translation and interpreters, notices of all proceedings should be issued for what we

26

would term maximum effectiveness."

27

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

1      5.6     Nearly all the home owners comprising the Firs Home Owners Association

2  constitute persons of a non-English-speaking background. Thus, State law requires the City of

3  SeaTac's mobile home park relocation planning process to comply with RCW 2.43.

4      5.7     The City of SeaTac must comply with federal Limited English Proficiency

5  ("LEP") requirements because it receives federal funding directly and indirectly (through the

6  King County Consortium) and must comply with federal law and rules which require language

7  access for Firs residents.[2]

8      5.8     Title VI of the Civil Rights Act of 1964 obligates the City of SeaTac to provide

9  Spanish language interpretation and translation. To-date, none of the City's correspondence or

10  meetings were translated or interpreted.

11      5.9     It is thus undisputed that the City of SeaTac violated RCW 2.43.010 by failing to

12  provide certified interpreters and translations of proceedings and written information related to

13  the Firs Mobile Home Park relocation planning process, including the statutorily mandated

14  "meeting with tenants to inform them of the owner's proposal for the property, the requirements

15  of the mobile home relocation standards, as contained herein, and the proposed timeline for the

16  process" which occurred July 11, 2016.

17      5.10    The City of SeaTac's failure to provide certified interpreters and translations of

18  proceedings and written information related to the Firs Mobile Home Park relocation planning

19  process violated the Washington Law Against Discrimination.

20      5.11    <u>Disparate Treatment</u>. According to testimony at the Public Hearing on January 19,

21  2017, the City of SeaTac paid to re-translate the Relocation Plan developed by the Owner. The

22  _____

    [2] According to the Consortium website:

23  The King County Housing and Community Development Program (HCD) administers federal funds from the United
    States Department of Housing and Urban Development (HUD) on behalf of King County and most of the cities in
24  King County. The City of Seattle receives its own federal funds separately.

25  King County and the cities in King County jointly cooperate in an urban county consortium. The Consortium
    participants cooperate to further the broad goals of the federal programs. In order to carry out these activities, King
26  County HCD and the Consortium have agreed to a decision-making structure.

27  The Consortium has agreed to the establishment of committees that assist in making decisions concerning the
    administration of these federally funded programs.

1   City provided Fife Motel Inc. a gift in violation of Washington Constitution Article VIII, Section

2   7 which holds that "[n]o county, city, town or other municipal corporation shall hereafter give

3   any money, or property, or loan its money, or credit to or in aid of any individual, association,

4   company or corporation…" Const. art. VIII, § 7. The City engaged in disparate treatment in

5   violation of the Washington Law Against Discrimination by refusing to allow HOA members to

6   testify because it assisted the owner of the Fife Motel, Inc. to pay for translations of documents

7          5.12    Disparate Impact. Under the Washington Law Against Discrimination, a victim of

8   discrimination may pursue claims against a third party who interferes with the individual's right

9   to obtain and use and enjoy a dwelling without discrimination. *Howell v. Dep't of Soc. & Health*

10  *Servs.*, 7 Wn. App. 2d 899 (2019).

11         5.13    The approval of the Firs Mobile Home Park relocation plan violated the

12  Washington Law Against Discrimination because the closure of the park will have a disparate

13  impact on the predominantly Latino/Hispanic, non-English-speaking members of the Firs Home

14  Owners Association and the community at large. Indeed, the Fair Housing Act was passed by

15  Congress in 1968 as a response to the Civil Rights Movement and immediately following the

16  assassination of Martin Luther King, JR, and is aimed to prevent discrimination, and combat

17  segregation. The explicit goal of the Law is, "…to provide, within constitutional limitations, for

18  fair housing throughout the United States." 42 U.S.C. § 3601. The courts have delineated that the

19  purpose of the Fair Housing Act was to further integration and combat segregation. *Trafficante v.*

20  *Metropolitan Life Ins. Co.,* 409 U.S. 205 (1972).

21         5.14    42 U.S.C. § 3608(d) requires that "all executive departments and agencies [to]

22  administer their programs and activities relating to housing and urban development (including

23  any Federal agency having regulatory or supervisory authority over financial institutions) in a

24  manner affirmatively to further the purposes of this subchapter..." The §3608 requirement has

25  become known as the duty to affirmatively further fair housing.

26         5.15    Discrimination under the Fair Housing Act (and equal protection claims) can be

27  shown not just by showing overt discrimination, but also by "practices that are fair in form, but

**BARRAZA LAW PLLC**
10728 16ᵀᴴ Aᴠᴇ SW Sᴇᴀᴛᴛʟᴇ WA 98146
206-933-7861 phone 206-933-7863 fax

COMPLAINT - 10

1   discriminatory in operation." *Griggs v. Duke Power Co.,* 401 U.S. 424 (1971) (holding that an

2   employment practice which operates to exclude Black folks cannot be shown to be related to job

3   performance, the practice is prohibited). This discrimination is commonly referred to as disparate

4   impact liability. A policy that may be challenged under disparate impact is "a practice has a

5   discriminatory effect where it actually or predictably results in a disparate impact on a group of

6   persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of

7   race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.500

8   (2016).

9        5.16   Seatac is among King County's most diverse cities, with 61% of the population

10  being people of color, 31% foreign-born, and 40% speaking another language. See Chandler

11  Felt, Presentation on SeaTac's Demographics, King County (2012) *available at*

12  http://www.ci.seatac.wa.us/home/showdocument?id=4893.

13       5.17   SeaTac, pursuant to the State Growth Management Act, adopted a Comprehensive

14  Plan in 2015 and again in 2017. Comprehensive Plans commit to increasing housing options in

15  SeaTac, maintaining SeaTac's existing mobile home parks as a source of affordable housing, and

16  minimizing the impacts of mobile home relocation on low and moderate income residents. The

17  approval of the Firs Relocation Plan conflicts with SeaTac's own policies and obligations to

18  affirmatively further fair housing.

19                          **VI.    DAMAGES**

20       6.1    As a result of the forgoing, the Plaintiff has suffered injury, economic loss, and

21  emotional distress.

22                    **VII.    REQUEST FOR RELIEF**

23       7.1    Defendant's wrongful conduct described above has caused the Plaintiffs damages

24  for which Plaintiffs seek judgment against Defendant awarding Plaintiffs the following forms of

25  relief:

26       (a)    An award of all general and special damages that are established at trial;

27       (b)    Compensation for emotional distress;

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

1      (c)    An award of actual and reasonable attorneys' fees and litigation expenses as

2 provided by law, including the WLAD, Chapter 49.60 RCW ("WLAD");

3      (d)    Out-of-pocket and investigative expenses;

4      (e)    Pre-judgment interest on all amounts awarded as allowed by law;

5      (f)    Post judgment interest;

6      (g)    A supplemental award to cover any adverse tax consequences of the judgment;

7 and

8      (h)    Such other equitable, legal, or additional relief as may be appropriate and just.

9

10     DATED this July 3, 2019

11                       BARRAZA LAW, PLLC

12                       */s/ V. Omar Barraza*

13                       V. Omar Barraza, WSBA# 43589
                            10728 16th Ave SW

14                       Seattle, WA 98146
                            omar@barrazalaw.com

15                       Tel# 206-933-7861
                            Fax# 206-933-7863

16

17                       HENRY & DEGRAAFF, PS

18                       */s/ Christina L. Henry*

19                       Christina L. Henry, WSBA #31272
                            787 Maynard Avenue South

20                       Seattle, Washington 98104
                            chenry@hdm-legal.com

21                       Tel.: (206) 330-0595
                            Fax: (206) 400-7609

22

23

24

25

26

27

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax