The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| FIRS HOME OWNERS ASSOCIATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>CITY OF SEATAC, a Municipal<br>Corporation<br><br>                    Defendant. | No.  2:19-cv-01130-RSL<br><br>FIRST AMENDED COMPLAINT |

The Plaintiff, Firs Home Owners Association (the "Association"), by and through its

attorneys of record, Vicente Omar Barraza, Christina Henry and Brendan Donckers, alleges, as

follows:

The City of SeaTac discriminated against the members of the Firs Home Owners

Association almost all of whom are Latino or Hispanic, in the use and enjoyment of their

housing and access to public accommodations on the basis of their national origin because it

exercised its police power to facilitate the closure of the Firs Mobile Home Park when it

conferred benefits and privileges on the Korean-owned landlord but failed, with hostile intent,

to confer upon the residents their minimum statutory protections; failed to enforce the stay of

the mobile home park closure; and perpetuated a discriminatory effect based on national origin

when it failed to act to maintain and affirmatively further fair and affordable housing by doing

FIRST AMENDED COMPLAINT - 1

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

something other than nothing to assist the residents to buy, relocate or delay the park's closure until the landlord fully complied with their legal obligations.

## I.       PARTIES

1.1.       Fife Motel Inc. owns and operates the Firs Mobile Home Park located at 20440 International Boulevard in SeaTac, WA 98198.

1.2.       The Firs Home Owners Association[1] incorporated as a nonprofit domestic corporation on October 22, 2016 under Unified Business Identifier number 604047064 to represent the interests of its members who are individual home owners who lease the lots on which their manufactured homes are located from Fife Motel Inc.

1.3.       The Defendant, City of SeaTac, is a local government entity pursuant to Chapter 4.96 RCW et. seq. located in King County, Washington, with a registered agent located at 4800 South 188th Street, SeaTac, WA 98188-8605. City Clerk, Kristina Gregg, serves as the appointed agent for service of process pursuant to RCW 4.96.020.

## II.       JURISDICTION AND VENUE

2.1.       On July 22, 2019, the City of SeaTac removed the Firs Home Owners Association complaint from King County Superior Court asserting federal question jurisdiction pursuant to 28 U.S.C. § 1441(a).

## III.       FACTS

3.1.       On October 26, 2007, Fife Motel Inc. (the "landlord"), an entity owned by a group of Korean investors or relatives, purchased the Firs Mobile Home Park located at 20440 International Boulevard in SeaTac, WA 98198 for $4,999,500.00.

3.2.       Firs Mobile Home Park contains 69 "lots" leased from Fife Motel Inc. which contain manufactured or mobile homes occupied as individual homesteads. There are approximately three recreational vehicles which also occupy the Firs Mobile Home Park.

---

[1] The Firs Home Owners Association may assert these claims pursuant to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

3.3.     Seatac is among King County's most diverse cities, with 61% of the population being people of color, 31% foreign-born, and 40% speaking another language. See Chandler Felt, Presentation on SeaTac's Demographics, King County (2012) *available at* http://www.ci.seatac.wa.us/home/showdocument?id=4893.

3.4.     The City of SeaTac contains "a relatively large number of mobile homes (544 units), which make up five percent of the City's housing units.  Most of the mobile homes are located in mobile home parks, which include: (1) Bow Lake Mobile Home Park, comprised of 408 Units at 18030 32nd Avenue South; (2) Firs Mobile Home Park, comprised of 73 Units at 20440 International Boulevard; and (3) Angle Lake Mobile Home Park 63 Units 2916 S. 200th Street." See City of SeaTac Comprehensive Plan Land Use Background Report at https://www.seatacwa.gov/home/showdocument?id=21347.

3.5.     The 2013-2017 American Community Survey 5-Year Estimates indicates that SeaTac contains 104 householders who are Hispanic or Latino and 531 mobile home structures in SeaTac. In other words, approximately 20% of SeaTac's mobile households are Hispanic or Latino.

3.6.     The Firs Home Owners Association includes 48 member households, 47 of whom are households whose head is Hispanic or Latino.[2] Spanish is the primary language spoken by the Hispanic or Latino adult heads of housing located within the Firs Mobile Home Park. Nearly all the adults residing in the Firs Mobile Home Park were born in countries other than the United States, especially countries located in Latin America, particularly Mexico, El Salvador, and Guatemala.

3.7.     In addition to the 47 Hispanic Firs Home Owners Association members, the Home Owners Association estimates another 15 Hispanic or Latino families moved since the landlord announced the closure of the park in 2016. Thus, the closure of the Firs Mobile Home

---

[2] The non-Hispanic member passed away, but her estate effectively remains a member.

FIRST AMENDED COMPLAINT - 3

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

Park has or will result in the displacement of an estimated 62 of the 104 - or 60% - of the Latino or Hispanic mobile home households residing in SeaTac.

3.8.    The City of SeaTac is a member of the King County Community Development Block Grant (CDBG) Consortium and the King County HOME Investment Partnerships (HOME) Program Consortium. SeaTac is and was a member of the Consortium for the 2015, 2016, and 2017 funding years.

3.9.    The King County Housing and Community Development Program administers the CDBG, ESG, HOME and RAHP Consortia funds on behalf of the participating city members and staffs the inter-jurisdictional Joint Recommendations Committee (JRC) of the consortia. The JRC reviews and recommends policy matters and project selections concerning consortia funds to the King County Executive for approval. The partnership agreement provides, in relevant part:

i.    All participating units of local government hereby agree to affirmatively further fair housing and to ensure that no CDBG or HOME Program funds shall be expended for activities that do not affirmatively further fair housing within its jurisdiction or that impede the County's actions to comply with its fair housing certification. For purposes of this section, "affirmatively furthering fair housing" includes participation in the process of developing an Analysis of Impediments to Fair Housing Choice and a Fair Housing Action Plan. While King County has the primary responsibility for the development of these reports to HUD pursuant to Section VI.A. of this Agreement, upon request, the City shall provide assistance to the County in preparing such reports. All participating units of local government acknowledge that the urban county consortium is prohibited from funding activities in, or in support of, any cooperating unit of general local government that does not affirmatively further fair housing within its own jurisdiction or that impedes the county's actions to comply with the county's fair housing certification.

ii.   The City shall agree to comply with the policies, goals, objectives and strategies of the King County Consortium Consolidated Housing and Community Development Plan.

iii.  Parties to this Agreement must take all required actions necessary to assure compliance with King County's certification under Section 104(b) of Title I of the Housing and Community Development Act of 1974, as amended, regarding Title VI of the Civil Rights Act of 1964, (Title III of the Civil Rights Act), the Fair Housing Act as amended, affirmatively furthering fair housing, Section 109 of Title I of the Housing and Community Development Act of 1974, as amended, which incorporates Section 504 of the Rehabilitation Act of 1973, the Age

FIRST AMENDED COMPLAINT - 4

(No. C19-1130RSL)

**BARRAZA LAW, PLLC**
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

Discrimination Act of 1975, the Americans with Disabilities Act of 1990, and other applicable laws.

3.10.    On June 9, 2015, the City of SeaTac adopted a Comprehensive Plan pursuant to the Growth Management Act ("GMA") which requires many cities and counties in Washington to adopt comprehensive plans which articulate a series of land use planning goals, objectives, policies, actions, and standards that are intended to guide the day-to-day decisions of elected officials and local government staff. The Comprehensive Plan commits the City to:

i.     "Support[ing] the maintenance of SeaTac's existing mobile home parks as a source of affordable housing." Goal 3.8
ii.    "Encouraging cooperation between the State, County, City, and other groups concerned with mobile home issues to increase opportunities for tenant ownership of mobile home parks." Policy 3.8A
iii.   "Encouraging essential safety upgrades for older mobile homes." Policy 3.8B
iv.    "Where owners meet low income guidelines, utilize City resources to upgrade existing mobile homes to meet minimum building standards." Policy 3.8C
v.     Minimize the impacts of mobile home relocation on low and moderate income residents. Goal 3.9
vi.    Assist with identifying relocation options for mobile home park tenants forced to move due to mobile home park closure. Policy 3.9A
vii.   Ensure that sufficient relocation plans are in place prior to the closure of any mobile home park. Policy 3.9B

3.11.    The King County Consortium published its 2015-2019 Consolidated Plan which stated: "CDBG, ESG, and HOME funds are allocated throughout King County. King County has two target areas: SeaTac and Skyway. Both are potential areas for a Neighborhood Revitalization Strategy Area. More target areas may be added during the period of this plan."

3.12.    Between October and November of 2015, King County distributed $21,026.64 in HOME funds to help rehabilitate two homes located on 35th Ave S and 43rd Ave S in SeaTac, Washington.

3.13.    The City of SeaTac 2015-2016 biennial budget states:

The City recognizes its responsibility and the need for participation and continues to assist in funding human service programs in the community, allocating one and one-half percent (1.5%) of

FIRST AMENDED COMPLAINT - 5

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

> General Fund operating expenditures for this purpose. City staff will administer a number of human service contracts, providing more than $1035,000 in budgeted general human services contracts, and $52,000 in CDBG contracts.

The budget references six different indirect and direct federal grants received in budget years 2011-2016 for community development, criminal justice, and traffic safety and security.

3.14.    Between December 30, 2015 and December 31, 2016, King County distributed $120,171.39 in CDBG funds for minor home repair services for 73 low- and moderate income homeowners in the cities of SeaTac, Tukwila, Des Moines and Covington.

3.15.    In January of 2016, councilmember and then-Mayor Rick Forschler, and councilmembers Peter Kwon, Michael Siefkes and Erin Sitterly appointed James "Donny" Payne as SeaTac's interim City Manager.

3.16.    On February 9, 2016, then SeaTac Mayor Rick Forschler invited controversial Washington State Representative Matt Shea to make a presentation to the City Council urging them to decline to accept federal housing and community development funds to build the SeaTac Riverton Heights Park which is located next to the Islamic Center of Seattle. According to the Inlander newspaper, Shea, a well-known anti-Islamist, currently under investigation by the State Legislature related to claims he engaged in, planned, or promoted political violence against groups or individuals, commented in a 2014 speech: "I say we take the TSA [Transportation Safety Administration] and put them on the southern border, and let them grope and feel some of these tuberculosis-laden leprosy-laden immigrants."[3]

3.17.    On April 6, 2016, interim City Manager Payne resigned after an outside investigator found that Payne instructed SeaTac staff to create a "tactical map" of Muslim residents from census data "in case he needed to go into the neighborhoods to 'make the peace." According to the investigator: "Mr. Payne's concerns about Muslims committing acts of terrorism seem to be the main motivation for his GIS mapping request." The investigator also

---

[3] https://www.inlander.com/spokane/why-former-commissioner-shelly-oquinn-disinvited-matt-shea-from-a-census-count-committee-meeting/Content?oid=18184585

FIRST AMENDED COMPLAINT - 6

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

"found Payne sought to create a fraudulent hiring process to employ an acquaintance and asked SeaTac's police chief whether she'd support reversing a city ban on employees from bringing firearms to work." Furthermore, the report stated that "multiple witnesses" believed Mayor Rick Forschler, and councilmembers Peter Kwon, Michael Siefkes and Erin Sitterly had preselected Payne and "the hiring process was a sham," because the job was never advertised for competition.

3.18.    Mayor Forschler also resigned his position as mayor around this time but remained a member of the City Council.

3.19.    Between April 19, 2016 and February 3, 2017, King County distributed $2,855.76 in CDBG funds for minor home repair services for a SeaTac resident residing on 31st Ave S in SeaTac.

3.20.    On May 8, 2016, the landlord hand-delivered a letter written in the English language to all 66 tenants in The Firs Mobile Home Park advising them of an open house meeting scheduled for Saturday, May 14, 2016, from 11:00 a.m. to 5:00 p.m. at a hotel adjacent to the park.  The landlord letter advised members of the Association that it intended to close the mobile home park and that a relocation specialist would attend the May 14, 2016 meeting to work with the families regarding the closure of the park.

3.21.    The residents immediately began looking for assistance in the community to ascertain their rights and to push back against the closure of the mobile home park. The families already comprised a tight-knit community and promptly united, with guidance from the Tenants Union, to engage stakeholders including the Highline School District, the Legislature, federal representatives and senators, King County staff and elected officials, the Port of Seattle, neighboring elected officials, the Seattle City Council, El Centro de La Raza, the Low Income Housing Institute, Legacy of Equality, Leadership and Organizing  ("LELO"), the Church Council of Greater Seattle, and many others. Unlike all of these organizations who dialogued with members of the Association to save the Firs through tenant-ownership or relocation, the record will show that the City of SeaTac refused to productively dialogue with the residents or

FIRST AMENDED COMPLAINT - 7

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

their allies, like Sharon Lee, the Executive Director of the Low Income Housing Institute, because of its purported impotence in the face of their landlord.

3.22.    The City of SeaTac outlines a mobile home park relocation planning process at SMC 15.465.600.H. The mobile relocation planning process constitutes a proceeding before the City, especially the Director of SeaTac's Department of Community and Economic Development ("CED"). SMC 15.465.600.H. The Director's decision may be appealed to the City's Hearing Examiner. SMC 15.465.600.H.2.g. The decision of the Hearing Examiner may be appealed to the Superior Court pursuant to Chapter 36.70C RCW. On May 27, 2016, the landlord submitted a Relocation Plan to the City of SeaTac for approval pursuant to SeaTac Municipal Code (SMC) 15.465.600.H.

3.23.    It is a policy or practice of the City of SeaTac to provide certified language interpreters at "official" meetings hosted or conducted by the City and in municipal court proceedings.

3.24.    The City did not require the landlord to provide certified translations and interpreters throughout the housing relocation process.

3.25.    The SeaTac Municipal Code obligated the City of SeaTac to schedule a meeting with the Firs residents "to inform them of the owner's proposal for the property, the requirements of the mobile home relocation standards, as contained herein, and the proposed timeline for the process." SMC 15.465.600.H.2.b.

3.26.    It is undisputed that SeaTac delegated the hosting of the required meeting to the landlord who, on July 7, 2016, sent an English-language letter to the Firs residents and invited them to attend a July 11, 2016 meeting regarding the relocation. The meeting occurred at a private hotel rather than a City facility. Although Mr. Steve Pilcher, Planning Manager for the City of SeaTac attended the meeting, it was not an "official" City meeting that would have required the City to offer and provide certified interpreters and translated documents to ensure maximum effectiveness in its communications to the residents and HOA members. Although the landlord hired a private interpreter, the Firs residents complained that the interpreter who

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

attended the July 11, 2016 meeting was not competent. It is undisputed that the written materials provided at the meeting were in English. It is also undisputed that the interpreter hired by the landlord lacked certification of any sort.

3.27.    On July 8, 2016,  State Court judge Richard F. McDermott awarded an $18 million judgment against the City of SeaTac for intentionally sabotaging a private park-and-fly development plan, strong-arming the landowners into giving up their property using a straw buyer and violating the state's Public Records Act by withholding city emails and documents proving the deception. Then City Economic Development Manager Jeffrey Robinson was named as a defendant. See K & S Developments, LLC v. City of SeaTac, King County Superior Court 12-2-40564-6.

3.28.    On July 22, 2016, the City of SeaTac issued a State Environmental Policy Act ("SEPA") determination of non-significance which concluded that the Mobile Home Park Relocation Plan for the Firs Mobile Home Park "w[ould] facilitate future development of the site with projects consistent with the City's Comprehensive Plan." The City failed to provide SEPA related materials pertinent to the approval of the Revised Relocation Plan in Spanish to the residents.

3.29.    On August 30, 2016, the landlord submitted a revised Relocation Plan in response to the City's review.

3.30.    In September of 2016, the Angle Lake Light Rail station opened mere blocks from Firs Mobile Home Park.

3.31.    On or about October 6, 2016, the City hosted a Town Hall meeting. Then-Deputy Mayor Pam Fernald asked what Firs residents considered to be a hostile question when she asked how many persons spoke English. Ms. Fernald asserted that the families at Firs "do not pay taxes," apparently alluding to the fact that many are immigrant tenants. The City failed to provide certified Spanish-language interpreters at this City Council meeting attended by the Firs MHP residents. Although an official meeting, no video can be found of the meeting on the public

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

website hosted by the City of SeaTac. Ms. Fernald subsequently alluded to her Town Hall comments at the regular October 25, 2016 City Council Meeting.

3.32.    On October 7, 2016, Fife Motel submitted its final draft of the Relocation Plan to the City of SeaTac with some sections translated into Spanish.

3.33.    On October 17, 2016, Steve Pilcher, Planning Manager for the City of SeaTac, approved the Relocation Plan and issued a Certificate of Approval. The City failed to provide the Relocation Approval letter in Spanish and failed to provide residents with information in Spanish about their right to appeal the City's approval of the Revised Relocation Plan. Jeff Robinson, Acting Director of Community and Economic Development, was copied on the letter.

3.34.    On October 22, 2016, the residents of the Firs Mobile Home Park established the Firs Home Owners Association ("HOA"), Unified Business Identifier number 604047064, to coordinate their mutual interests and challenge the City of SeaTac's ("SeaTac") October 17, 2016 approval of the Fife Motel Inc.'s Relocation Plan prepared pursuant to the City of SeaTac's municipal ordinance at SMC 15.465.600.

3.35.    By letter dated October 25, 2016, the landlord informed the residents in an English-language and Spanish-language letter of his intent to close the park effective October 31, 2017.

3.36.    On October 25, 2016, HOA members attended the SeaTac City Council Meeting and requested an extension of the October 31st deadline to appeal the city's approval of the Mobile Home Park Relocation Plan for the Firs. Although many of the families did not receive notice of the approval of the relocation plan until on or about October 25, 2016, well into the appeal period, the City Council refused to extend the appeal deadline as requested at the meeting on October 25, 2016

3.37.    On October 25, 2016, Councilmembers Pam Fernald, Kathryn Campbell, and Mayor Sietkes made hostile comments at a public meeting of the Council that the residents of Firs considered discriminatory based on their national origin. The City failed to provide certified

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

Spanish-language interpreters at this City Council meeting attended by the Firs MHP residents. The official meeting minutes confirm:

- The following people spoke against the relocation of the Firs Mobile Home Park: Monica Mendoza Castejon (on behalf of the Firs Mobile Home Park homeowners), Patsy Ware, Martha Zamora, and Irene Cruz. Ms. Mendoza Castejon requested Council extend the appeal process.
- Firs Mobile Home Park update - 14 day appeal period closes October 31. Discussion ensued as to whether Council has authority to stop the sale of property or extend the appeal. Mr. Scorcio replied no.

3.38.   Acting City Manager Report Jose Scorcio testified at the October 25, 2016 meeting that the City required the Plan to be translated and that the State of Washington controlled the closure plan.

3.39.   At the same meeting, Councilmember Kathryn Campbell asked: "Does this Council have any legal authority to prevent the sale of the property by the person that owns it?" Scorcio replied and stated in part: "The City Council does not have a role in closures of mobile home parks." Councilmember Kathryn Campbell then – at least as it appears in the video – calls out to the audience: "I am sure that somebody will take care of translating that for me. Would you do that for me? Please?"

3.40.   At the October 25, 2016 meeting, Councilmember Tony Anderson discussed extending the comment period. He testified, in part, that: "This thing…obviously…has significant impact on our community. Lots of kids are affected by this. This is the first time in my memory that this has come up. This is something new and we should give it the time it deserves...We obviously have language barriers here…"[4]

3.41.   The publicly available video for the October 25, 2016 meeting confirms that multiple councilmembers stated that the park closure was exclusively a matter of State law and implied or expressed the City's utter impotence to help the Association members. At 2:17:43, Deputy Mayor Fernald stated that she thought the Association members were receiving bad information and advice. Fernald expressly asked the residents not to come and tell the Council

---

[4] Not a verbatim transcript.

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

that it was up to the Council to do something and also not to come with "your signs and things. We get it, but there's nothing we can do." At 2:24:33, then Mayor Sietkes (who subsequently resigned his seat after he relinquished his law license after allegations he'd manipulated a vulnerable client into giving him cars and cash worth up to $300,000) stated that it was not under the City's authority to help them stay in their homes and that the process was governed by State law. The Mayor reiterated that the Association members were being misinformed.

3.42.    On October 30, 2016, Joseph Scorcio sent an email to an advocate assisting the Association members. Although Scorcio responded on behalf of SeaTac City Council members to refuse to offer a special meeting of the Council to discuss concerns expressed by the Association members about the loss of their housing, he confirmed that an appeal would automatically stay the closure of the Park. See SeaTac Municipal Code 15.465.600 H.2.g. (If the decision is appealed, the relocation plan process as set forth herein shall automatically be stayed until the appeal is resolved); and SeaTac Municipal Code 15.465.600 H.2.k. (The relocation plan shall be deemed to be satisfactorily implemented when the plan's stated actions have been implemented and when all tenants have relocated).

3.43.    On October 31, 2016, the Association members timely appealed the Relocation Plan approval to the City of SeaTac's Hearing Examiner.

3.44.    On November 3, 2016, City staff removed the sign-up list for public comment when they observed Association members arrive at the council budget workshop.

3.45.    On November 22, 2016, allies of the Association members attended the City Council meeting and urged the Council to do more to protect the Firs from closure.

3.46.    Between November 28, 2016 and December 31, 2017, King County distributed $354, 112.76 in CDBG funds for the development of the SeaTac Riverton Heights Park, a 2-acre old school site located in a low to moderate-income residential neighborhood. King County allocated an additional $215,291 in CDBG funds between January 1, 2019 and May 30, 2020 to complete a second phase of development at SeaTac Riverton Heights Park. The City of SeaTac owns SeaTac Riverton Heights Park.

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

3.47.    Between November 29, 2016 and December 31, 2017, King County distributed $131,884.46 in CDBG funds for minor home repair services for 72 low- and moderate income homeowners in the cities of SeaTac, Tukwila, Des Moines and Covington. It appears that a total of 16 SeaTac households benefited from these funds.

3.48.    The public hearing on the Firs administrative appeal was held on January 19, 2017. The City hired a Spanish language interpreter for the hearing. Many HOA members testified about their vibrant community and painted a dire picture of the park's closure for themselves, the Firs community, and the larger community, including the school district. Moreover, Steve Pilcher, Planning Manager for the City of SeaTac, testified:

> Staff asked the park owner's agent to have the plan translated. Upon receipt of that translated version, we hired a third-party translator to verify its accuracy. That translator opted to retranslate the plan from the original English, feeling that it provided a more accurate translation. And that is the version contained in the final plan that was approved by the city.

3.49.    On February 2, 2017, the City of SeaTac submitted Supplemental Briefing to the City of SeaTac Hearing Examiner claiming:

> The City is not subject to the Limited English Proficiency (LEP) requirement under Title VI because the City is not receiving any direct or indirect Federal Financial assistance. Specifically, the Community and Economic Development Department of the City is not receiving any Federal assistance at the time the Department was processing the relocation plan. It is also important to note that the Appellant has provided no evidence nor cited any authority to support his claim that the City is a recipient of Federal assistance such that it would be required to provide Spanish translations pursuant to Title VI.

3.50.    Since February 14, 2017, King County has been distributing $405,919.00 in CDBG funds to pay environmental review and special assessment costs for low- and moderate income homeowners related to the construction of sewers to 212 unsewered lots in two areas inside the cities of Burien, SeaTac, and Tukwila.

FIRST AMENDED COMPLAINT - 13

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

3.51.    On February 22, 2017, the Hearing Examiner approved the City's approval of the relocation plan.

3.52.    On March 6, 2017, the Hearing Examiner denied the Association's request for reconsideration.

3.53.    After fully exhausting its administrative appeals, the Association members filed a land use protection act action against the City of SeaTac and Fife Motel Inc. in King County Superior Court (17-2-07094-7 KNT) on March 24, 2017.

3.54.    On May 23, 2017, Jeff Robinson informed an ally of the Association members that they should not speak at the City Council Meeting that day, because Mr. Robinson was trying to talk the Council into moving forward with an affordable housing scheme and seeing the Association members at the meeting would only enrage the Council members and make them less inclined to support his plan.

3.55.    On May 26, 2017, the King County Superior Court set the land use trial for March 5, 2018 because the landlord had no redevelopment plan nor buyer to purchase the Firs Mobile Home Park land.

3.56.    On May 31, 2017, the King County Superior Court denied the landlord's request to set his dispositive motion for hearing and re-iterated that no dispositive motions could be brought except at the time that that parties' opening brief is filed, effectively staying adverse actions against Association members until the Court issued its determination following the trial set for March 5, 2018.

3.57.    On August 15, 2017, SeaTac renewed its participation in the King County Community Development Block Grant (CDBG) Consortium, and the King County HOME Investment Partnerships (HOME) Program Consortium for 2018-2020.

3.58.    On November 1, 2017, Association members found a sign handwritten in English nailed to the building where the Fife Motel Inc. previously accepted rent:

Park is closing 10/31/2017.
Please do not drop the rent checks any more.
Thanks. 253-266-3621

FIRST AMENDED COMPLAINT - 14

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

3.59.    Between November 7, 2017 and March 28, 2017, King County distributed $7,480.14 in CDBG funds to level and re-block a manufactured home located on S. 181st St. in SeaTac.

3.60.    On November 10, 2017, the <u>Seattle Weekly</u> published an article detailing the efforts of the Association members to make plans to offer to purchase the park from the owner.

3.61.    On November 21, 2017, Fife Motel Inc. filed three unlawful detainer lawsuits against the Association members.

3.62.    On November 28, 2017, police chief Lisa Mulligan took the sign-in sheet from Association member Erasmo Martinez as he was trying to sign up to speak at a Council meeting and told him "this meeting isn't for you".

3.63.    On December 1, 2017, Association members found a sign handwritten in English posted in the Firs Mobile Home Park stating:

> Dear Firs MHP Tenants
> To stay until March 31, 2018, you must sign the
> relocation agreement (will get $2,000).
> The eviction process has begun for those who have
> not signed the relocation agreement
> You can be evicted right away if you have not yet
> signed the relocation agreement.
> Please call or text 253-266-3621 to sign the
> relocation document.
> Thank you

3.64.    On December 5, 2017 at 1:05 AM, Jong Park, believed to be the owner of Fife Motel Inc. sent a text message to seven or more households stating:

> Dear fir's tenants. The mobile home park closing date was October
> 31, 2016. My attorney offered your attorney a new closing date but
> he counter offered an unacceptable offer. So I have no choice but
> to begin the eviction process. Please understand that I rent you the
> land only and mobile home is yours. You are responsible to move
> out your trailer. To avoid eviction you to sign the relocation
> agreement by December 10, 2016. Thank you.

FIRST AMENDED COMPLAINT - 15

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

3.65.     On December 5, 2017, the landlord delivered the following letter to a number of Association members:

> Dear tenants:
>
> The original mobile home park closing date was October 31st, 2017. As tenant's attorney rejected our offer to extend the closing date, I have no choice but to begin the eviction process. To avoid eviction you have to sign the Relocation Agreement.
>
> Please understand the mobile home is yours and we are rent the land only.
>
> You are responsible for removing your mobile home (along with any of your personal property) off the rented land.
>
> If you sign the Relocation Agreement:
> Fife Motel Inc. will provide $2000.00 in moving assistance.
> You can apply for state assistance.
> You will be allowed to stay until March 31st, 2018 and if the closing date delayed in certain situation, you can stay until new closing date.
>
> We have taken all necessary legal steps and the Firs Mobile Home Park will close eventually regardless of what your attorney says or does.
>
> The eviction notice will be delivered to you anytime soon. Once you receive the eviction notice from my attorney, you will be evicted and have to pay all the legal fees and expenses according to the lease agreement.
>
> Please contact me by call or text to 253-266-3621 as soon as possible to avoid eviction.
>
> Thanks,
>
> /s/ Jong Park

3.66.     On December 12, 2017, at the Special Council Meeting, then-Mayor Siefkes, upon seeing the arrival of the Association members, took great pains to insist that at Special Council Meetings, public comment will only be heard on agenda items, and repeatedly said "Firs is not on the agenda tonight"; "we will not be taking public comment on things like the Firs

FIRST AMENDED COMPLAINT - 16

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

tonight". This rule was not posted online, on the meeting agenda, or on the screen where they sometimes show rules for public comment.

3.67.   On December 14, 2017, the landlord filed four unlawful detainer lawsuits against members of the Home Owners Association.

3.68.   On December 15, 2017, City Attorney Mary Mirante Bartolo informed the Superior Court "the City's not part of that [unlawful detainer] action. That's under a completely different cause number. It's not under this cause number…"

3.69.   On or about December 17, 2017, multiple Association members received a letter from Jong Park of Fife Motel Inc.

> Dear tenants:
>
> The original mobile home park closing date was October 31st, 2017. After today's court decision, it has been decided and approved by the Judge for us to evict a tenant. Arrangements have been made to the Sheriff's office to follow through with evictions.
>
> We have no choice other than to start the eviction process for all remaining tenants.
>
> Some should expect a notice for eviction sometime this week. The rest of the tenants will receive the same eviction in the upcoming weeks.
>
> To avoid eviction and reverse your eviction status, you will have to sign the Relocation Agreement no later than Dec 20th 2017.
>
> Please understand the mobile home is yours and we only rent the land. You are responsible for removing your mobile home (along with any of your personal property) off the rented land.
>
> If you sign the Relocation Agreement:
>
> Fife Motel Inc. will provide $2000.00 in moving assistance.
> You can apply for state assistance.
>
> You will be allowed to stay until March 31st, 2018 and if the closing date delayed in certain situation, you can stay until new closing date.
>
> Please contact me by call or text to 253-266-3621 as soon as possible to avoid eviction.

FIRST AMENDED COMPLAINT - 17

(No. C19-1130RSL)

**BARRAZA LAW, PLLC**
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

Thanks.
Jong Park
The Firs Mobile Home Park

3.70.    On January 5, 2018, the King County Superior Court stayed the pending evictions.

3.71.    According to the January 8, 2018 Seattle Weekly newspaper, "When asked if he would consider accepting the residents' proposal to buy the property, (Jong) Park said that he wouldn't, 'because they can't afford it.'

3.72.    Kone Consulting prepared a Human Services Needs Assessment for the City of SeaTac. The Report, released on January 9, 2018, which found, in part that, "SeaTac's Hispanic or Latino residents are twice as likely to be poor as white residents." With respect to housing, the consultant's report recommended that SeaTac:

1. Continue to work with partners in the Comprehensive Plan and with South King Housing and Homelessness partnership.
2. Expand opportunities through participation on the King County Regional Affordable Housing Task Force.
3. Identify gaps and consider investing resources in areas in most need, such as affordable housing for households under 30% AMI.
4. Support utility assistance, rental inspection programs, and relocation assistance to prevent homelessness and help those with very low incomes.
5. Adopt tenant protections that prevent discrimination.
6. Consider use of zoning and land use tools to support housing development that will meet the needs of the community.

At the City Council's Special Administration and Finance Committee meeting on January 17, 2018, council members Peter Kwon, Pam Fernald, and Mayor Erin Sitterley, "expressed concerns that the [Human Services Needs Assessment] did not deliver the information they hoped to receive. The committee suggested this item be deferred to a Council workshop or Special Council meeting to further discuss in detail as a whole council."

3.73.    On January 19, 2018, current Mayor Erin Sitterley privately retweeted a tweet that stated, in part, "We will not negotiate the status of unlawful immigrants while Democrats hold our lawful citizens hostage over their reckless demands."

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

3.74.    On January 31, 2018, the <u>Real Change</u> newspaper published an article quoting Jong Soo Park as stating that he "and his partners plan to close the park and develop the site, likely building a hotel and possibly an apartment complex where the mobile homes used to be."

3.75.    On February 8, 2018, counsel for the landlord categorically refused to negotiate with the residents for the purchase of the Firs Mobile Home Park.

3.76.    On March 9, 2018, the <u>Seattle Times</u> announced that the State of Washington "allocated up to $2.5 million to save the Firs Mobile Home Park, whose 170 residents face eviction under the owner's plans for redevelopment. But the amount falls far short of the $10.7 million fair-market value of the SeaTac land." The Legislature allocated $2.5 million to the Firs community but the City of SeaTac did not make any effort to help the HOA leverage this incredible contribution. As a result of the money being undisbursed, the State lowered the allocation to $1 million, a loss of $1.5 million dollars resulting from the City's refusal to cooperate with the HOA to leverage these funds.

3.77.    The City of SeaTac's ADA [Americans with Disabilities Act] Transition Plan dated April 27, 2018 confirms:

> Title VI Nondiscrimination Law Title VI of the Civil Rights Act of 1964 is a Federal statute and provides that no person shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. This includes matters related to language access or limited English proficient (LEP) persons.
>
> The City of SeaTac ADA Transition Plan public participation process included translation service upon request for open house materials, draft plan and open house. Additionally, the open house was specifically held at City Hall because the building is accessible.

3.78.    On June 7, 2018, King County Superior Court Judge LeRoy McCullough reversed, in part, the decision of the City of SeaTac Hearing Examiner and remanded the

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

relocation plan for modification. Regarding the July 11, 2016 meeting, Judge McCullough noted, in part, in his oral ruling:

> By a letter dated July 7, 2016 (this letter was also in English) the owner advised the mobile home park residents of a second meeting to be held on July 11, 2016.
>
> According to that letter, Mr. Steve Pilcher, P-i-l-c-h-e-r, Planning Manager, City of SeaTac, would attend that meeting and answer questions about the relocation process.
>
> The relocation specialist, an interpreter, and a social worker also attended that meeting. I'll note that parenthetically.
>
> Going back to the letter about July 11, it also advised residents that they would receive a copy of the relocation report and plan following its approval by the City.
>
> The meeting occurred on July 11 and was, in fact, attended by Mr. Pilcher, the Planning Manager for the City of SeaTac. An interpreter was provided because, as I've indicated, tenants of many of the mobile homes speak Spanish and limited English.
>
> The tenants would later complain about the quality of the interpreter service provided at that meeting.
>
> Although individual meetings within tenants' homes occurred within the two meetings, some indicated that no such meetings occurred.
>
> On July 22nd, 2016, the City's "responsible official" issued the State Environmental Policy Act threshold Declaration of Non-Significance. This was done in English.

The Court further noted:

> The code itself, therefore, mandates that the City schedule a meeting and provide from its -- and I believe the idea was it's a neutral perspective, and a neutral objective source, information about the standards to be complied with. This was not done. And the City conceded the same at the hearing examiner level, but dismisses this as a technicality, as do some of the other parties, but this Court -- in this Court's opinion it's much more than a technicality.

FIRST AMENDED COMPLAINT - 20

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

3.79.    Judge McCullough further stated "[o]n the subject of translation and interpreters, notices of all proceedings should be issued for what we would term maximum effectiveness."

3.80.    Judge McCullough's Order, signed September 19, 2018, also noted the failure to translate the relocation Inventory document in his Order of Remand and spoke of flaws in the SEPA process. Judge McCullough entered the following findings of fact:

1.  The Court adopts the findings of fact contained in the Hearing Examiner's Report and Decision dated February 22, 2017 (the "Decision"), but the Court modifies the Decision to add the below additional findings of fact.
2.  On January 10, 2017, witness Stephanie Ruiz testified before the Hearing Examiner that she received a notice of the May meeting taped to her door; that she attended the meeting where they were told there would be a one-on-one meeting with each family; that she did not have a one-on-one meeting for her family; that she does not recall giving information at the meeting regarding age, income, cost of living at the park. (See FIRSMBL0063- FIRSMBL0064, Certification of Record, Dkt. No. 30.)
3.  The letter from Jong Park dated July 7, 2016, which the Hearing Examiner admitted as Exhibit 5, was not translated into Spanish.
4.  The Determination of Nonsignificance dated July 22, 2016, which the Hearing Examiner admitted as Exhibit 7, was not translated into Spanish.
5.  The City of SeaTac's letter dated October 17, 2016, which is part of the Record at page FIRSMBLO151, was not translated into Spanish.
6.  There were multiple complaints by witnesses that the information provided by the owner was unclear, either because the documents were not in Spanish or because the public meeting interpreter did not speak Spanish well.

3.81.    On September 25, 2018 the SeaTac City Council voted five to one in favor of moving forward with plans to sell the City-owned Bakaro mall, displacing over 60 immigrant businesses who organized the SeaTac Community Coalition to challenge the decision.

3.82     On February 13, 2019, pursuant to Chapter 4.96 RCW et. seq., the Firs Home Owners Association filed a pre-litigation tort claim against the City of SeaTac claiming that the City engaged in disparate treatment and disparate impact discrimination throughout the housing relocation planning process related to the closure of the Firs Mobile Home Park. More than sixty days elapsed before the Firs Home Owners Association filed its action in the King County Superior Court on July 3, 2019, cause number 19-2-17560-5 KNT.

FIRST AMENDED COMPLAINT - 21

(No. C19-1130RSL)

3.83.    On March 21, 2019, the parties, including the City of SeaTac, attended mediation before Honorable Paris Kallas (ret.) at the offices of Judicial Dispute Resolution. The City of SeaTac was represented by outside counsel, Kenneth W. Harper of Menke Jackson Beyer LLP. The goal of the mediation was to facilitate a resolution of three separate causes of action, including the Land Use Petition Act appeal (the "LUPA Lawsuit") a separate civil action entitled Zamora et al v Fife Motel, Inc., King County Superior Court cause number 18-2-06771-5, filed by six families against whom Respondent Fife Motel, Inc. initiated unlawful detainer proceedings (the "Zamora" lawsuit), and the tort claim filed by the HOA. The Petitioners in the land use protection act lawsuit and the Plaintiffs in the Zamora lawsuit reached a settlement with Fife Motel, Inc. after a marathon 16-hour-long mediation session. The members of the Association waived all past claims against Fife Motel Inc. as a condition of their settlement with Fife in the LUPA action. No claims were dismissed against SeaTac.

## IV.    CLAIMS

## A.    CLAIMS UNDER THE WASHINGTON LAW AGAINST DISCRIMINATION ("WLAD")

4.1.    Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.2.    The Legislature affords persons residing in Washington a broad right to enjoy and maintain their housing and participate in public assemblies free of discrimination. RCW 49.60.030(1)(b) and (c). Washington's Law Against Discrimination prohibits the City of SeaTac from discriminating against the mostly Hispanic or Latino members of Firs Home Owners Association because of their national origin related to their housing or in the course of a public assemblage for public purposes. RCW 49.60.040(2).

> It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because

FIRST AMENDED COMPLAINT - 22

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

of race, creed, color, national origin, families with children, sex, marital status, sexual orientation, age, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. RCW 49.60.010.

4.3.    The WLAD "shall be construed liberally" to accomplish its antidiscrimination purposes. Blackburn v. Dep't of Soc. & Health Servs., 186 Wn.2d 250, 257 (2016). See also RCW 49.60.020. Toward that end, a victim of discrimination may pursue WLAD claims against a third party who interferes with the individual's right to obtain and use and enjoy a dwelling without discrimination. Howell v. Dep't of Soc. & Health Servs., 7 Wn. App. 2d 899 (2019).

4.4.    While Washington courts look to federal civil rights statutes as "a source of guidance," they also recognize that "they are not binding and that we are free to adopt those theories and rationale[s] which best further the purposes and mandates of our state statute." Blackburn v. Dep't of Soc. & Health Servs., 186 Wn.2d 250, 258 (2016). In a case involving an employer who removed a WLAD to federal court in an apparent effort to find refuge in the relatively narrower federal jurisprudence, the Supreme Court of Washington "decline[d] to use federal interpretations of the ADA to constrain the protections offered by the WLAD." Taylor v. Burlington N. R.R. Holdings, Inc., 193 Wash. 2d 611, 617, 444 P.3d 606 (2019) recognizing that "the legislature has expressly rejected the idea that the ADA should be used to constrain the protections offered under the WLAD." Id. at 621-22. While the instant case involves national origin rather than disability, it cannot be disputed that Washington's Law Against Discrimination provides a broader, albeit overlapping, set of rights and civil rights protections to her denizens than federal jurisprudence.

**WLAD CLAIM 1:**    **The City of SeaTac Treated the Koran Landlord More Favorably than the Hispanic or Latino Tenants in Violation of RCW 49.60.222(1)(b).**

Barraza Law, PLLC
10728 16th Ave SW
Seattle, WA 98146
(206) 933-7861 (206) 933-7863 fax

4.5.     Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.6.     On October 25, 2016, City Manager Joe Scorcio informed the City Council and public that the City made the landlord translate the relocation plan into Spanish. Mr. Scorcio further claimed that "the City Council does not have a role in closures of mobile home parks." However, a different City official subsequently admitted on January 19, 2017 that the City used its own funds to pay to re-translate the inaccurately translated Relocation Plan developed by the landlord, notwithstanding its disclaimer of agency. Thus, the City facilitated the closure of the Firs Mobile Home Park because it conferred a benefit on the Fife Motel Inc. in the form of an expedited park closure when it gifted the Korean landlord free translation services in violation of Washington Constitution Article VIII, Section 7, which holds that "[n]o county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation…" Const. art. VIII, § 7. Rather than requiring the Korean owner to delay the closure of a precious affordable housing community by using his own funds to retranslate the inadequate plan, the City expedited the process in a manner that disparately favored the Korean owner to achieve his target closure date of October 31, 2017. The City of SeaTac discriminated against the mostly Hispanic or Latino members of the Home Owners Association in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith in violation of RCW 49.60.222(1)(b) because it failed to act neutrally when it violated State law to favorably assist their Korean landlord to expedite the closure and dislocation of their predominantly Hispanic or Latino housing community.

**WLAD CLAIM 2:     The City Deprived the HOA Members of an Equitable Opportunity to Use and Enjoy Their Housing Because It Failed to Require the Landlord to Provide Them Spanish Language Access throughout the Relocation Planning Process in Violation of RCW 49.60.222(1)(b).**

4.7.     Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

4.8.     In analyzing the relocation process, Judge McCullough effectively held that the City neglected to ensure that "translation and interpreters, [and] notices of all [relocation] proceedings should be issued for what we would term maximum effectiveness." The City of SeaTac discriminated against the mostly Hispanic or Latino members of the Home Owners Association in violation of RCW 49.60.222(1)(b) by providing inferior terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith because it failed to require the landlord to provide Spanish language access to the HOA members throughout the relocation planning process, including when it failed to require a Spanish-language translation of the Inventory and when it failed to provide a certified Spanish-language interpreter at the mandatory July 11, 2016 relocation meeting.

**WLAD CLAIM 3:     The City Deprived the HOA Members of an Equitable Opportunity to Use and Enjoy Their Housing Because It Failed to Control the Mandatory July 11, 2016 Relocation Meeting in Violation of RCW 49.60.222(1)(b).**

4.9.     Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.10.     Judge McCullough held that the City was obligated to sponsor the July 11, 2016 relocation meeting required by the City's Ordinance. According to Judge McCullough: "The code itself, therefore, mandates that the City schedule a meeting and provide from its -- and I believe the idea was it's a neutral perspective, and a neutral objective source, information about the standards to be complied with. This was not done. And the City conceded the same at the hearing examiner level, but dismisses this as a technicality, as do some of the other parties, but this Court -- in this Court's opinion it's much more than a technicality." The July 11, 2016 was a "facility" or "service" related to housing occupied by the members of the HOA. The City's failure to host an official meeting pursuant to its own Ordinance violated the WLAD at RCW 49.60.222(1)(b) because it provided deprived the Firs residents of a City-required

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

1    "facility" or "service" in the form of a neutral process which provided maximally effective

2    Spanish language access services in connection with their housing.

3    **WLAD CLAIM 4:**   **The City of SeaTac Engaged in Coercion, Intimidation, Threats, or**
     **Interference Against the HOA Members for Exercising their Fair**
4    **Housing Rights in Violation of RCW 49.60.2235 by Trying to**
     **Fracture the HOA's Collaboration with the Tenants Union.**

5         4.11.   Plaintiffs repeat and reallege and incorporate by reference the foregoing

6    paragraphs.

7         4.12.   The Tenants Union of Washington assisted the HOA members to organize to

8    defend their right to fair housing and affordable housing. The City of SeaTac violated the

9    Washington Law Against Discrimination at RCW 49.60.2235 when Mayor Sietkes and then

10   Deputy Mayor Fernald coerced, intimidated, threatened, or interfered with the Firs residents'

11   exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of

12   their having aided or encouraged themselves in the exercise or enjoyment of, their fair housing

13   rights because, on October 25, 2016, they admonished the mostly Hispanic or Latino residents of

14   the Firs that they were receiving bad information or advice about their rights to advocate to save

15   their housing. The clear implication was that the City was accusing the Tenants Union of lying to

     the residents to pit the HOA members against their advocates and fracture their collaboration.

16   **WLAD CLAIM 5:**   **The City of SeaTac Engaged in Coercion, Intimidation, Threats, or**
     **Interference Against the HOA Members for Exercising their Fair**
17   **Housing Rights in Violation of RCW 49.60.2235 by Disinviting them**
     **to Council Meetings.**

18        4.13.   Plaintiffs repeat and reallege and incorporate by reference the foregoing

19   paragraphs.

20        4.14.   The City of SeaTac violated the Washington Law Against Discrimination at

21   RCW 49.60.2235 when Deputy Mayor Fernald coerced, intimidated, threatened, or interfered

22   with the Firs residents' exercise or enjoyment of, or on account of their having exercised or

23   enjoyed, or on account of their having aided or encouraged themselves in the exercise or

24   enjoyment of, their fair housing rights because on October 25, 2016, Fernald admonished the

**BARRAZA LAW, PLLC**
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

Hispanic or Latino residents not come with "your signs and things. We get it, but there's nothing we can do."

**WLAD CLAIM 6:**   **The City of SeaTac Engaged Deprived the HOA Residents Access to Public Accommodations Because of their National Origin in Violation of RCW 49.60.215 when it Disinvited them from Council Meetings.**

4.15.   Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.16.   The City of SeaTac violated the Washington Law Against Discrimination at RCW 49.60.215 when Deputy Mayor Fernald committed an act which directly or indirectly resulted in a distinction, restriction, or discrimination…or refused or withheld from the Hispanic or Latino residents of the Firs their admission or presence at a public City Council meeting because on October 25, 2016, Fernald admonished the residents not to come with "your signs and things."

**WLAD CLAIM 7:**   **The City of SeaTac Denied the HOA Residents Access to Public Accommodations Because of their National Origin in Violation of RCW 49.60.215 when it Failed to Ensure that they were provided equal language access throughout the relocation planning process.**

4.17.   Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.18.   Nearly all the homeowners comprising the Firs Home Owners Association constitute persons whose primary language is Spanish.

4.19.   "It is … the policy of this state to secure the rights, constitutional or otherwise, of persons who, because of a non-English-speaking cultural background, are unable to readily understand or communicate in the English language, and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them." RCW 2.43.010. "

4.20.   "'Legal proceeding' means a proceeding in any court in this state, grand jury hearing, or hearing before an inquiry judge, or before an administrative board, commission, agency, or licensing body of the state or any political subdivision thereof." (emphasis added).

FIRST AMENDED COMPLAINT - 27

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

RCW 2.43.020(3). Thus, State law requires the City of SeaTac's City Council meetings, official meetings such as the one the City failed to schedule and host on July 11, 2016, and mobile home park relocation planning process to comply with RCW 2.43.

4.21.    It is undisputed that the City of SeaTac failed to provide certified interpreters and translations of proceedings and written information related to the Firs Mobile Home Park relocation planning process, including at City Council meetings, the Inventory, and the mandated City-hosted relocation "meeting with tenants to inform them of the owner's proposal for the property, the requirements of the mobile home relocation standards, as contained herein, and the proposed timeline for the process" which occurred July 11, 2016. It is further undisputed that none of the SEPA materials were translated. The City knew of its obligations to provide for translation throughout the relocation planning process, especially at official council meetings and the mandated resident relocation meeting because it hired an interpreter for the relocation planning process appeals hearing before the Hearing Examiner on January 19, 2017.

4.22.    It is undisputed that at least one member of the City Council acknowledged the language barrier faced by Firs residents who attended at least the City Council meeting on October 25, 2016 when Councilmember Tony Anderson stated:  "[w]e obviously have language barriers here" which gives rise to an inference of inclusive and effective communication.  At the same meeting, Councilmember Kathryn Campbell seemingly asks the audience to translate the claim that the City Council could not help the residents: "I am sure that somebody will take care of translating that for me. Would you do that for me? Please?"

4.23.    "Lack of English proficiency is [often] used as a proxy for national-origin discrimination." Aghazadeh v. Me. Med. Ctr., No. 98-421-P-C, 1999 U.S. Dist. LEXIS 23538, at *12 (D. Me. July 8, 1999).  "Where inability to speak and understand the English language excludes national origin-minority group children from effective participation in the educational program offered by a school district, the district must take affirmative steps to rectify the language deficiency in order to open its instructional program to these students." Lau v. Nichols, 414 U.S. 563, 568 (1974) abrogated on other grounds by Regents of the Univ. of Cal. v. Bakke,

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

438 U.S. 265, 98 S. Ct. 2733, 57 L. Ed. 2d 750 (1978). Just as the inability to speak and understand the language excludes children from effective participation in the educational program offered by a school district, so too did SeaTac's decision to conduct public discussions of a housing redevelopment process in English-only exclude the Spanish-speaking members of the HOA from effective participation in a public process directly impacting their lives.

4.24.   Whether or not the HOA members have standing to bring a claim for relief under Chapter 2 RCW, the City of SeaTac's failure to affirmatively offer or provide certified Spanish language at City Council meetings, the Inventory, and the July 11, 2016 mandatory relocation meeting "directly or indirectly resulted in a distinction, restriction, discrimination" or withheld from the Hispanic or Latino residents of the Firs their right of admission or presence in the relocation planning process because of their national origin in violation of RCW 49.60.215.

**WLAD CLAIM 8:    The City of SeaTac aided, abetted, encouraged, or incited the commission of an unfair practice in violation of RCW 49.60.220 because it did not require the landlord to provide Spanish-language access throughout the relocation planning process.**

4.25.   Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.26.   The City of SeaTac aided, abetted, encouraged, or incited the commission of an unfair practice in violation of RCW 49.60.220 because it failed to consistently exercise its police power to ensure that the landlord provided the mostly Hispanic or Latino members of the Home Owners Association certified interpreters and translations of proceedings and written information related to the Firs Mobile Home Park relocation planning process.

**WLAD CLAIM 9:    The City of SeaTac aided, abetted, encouraged, or incited the commission of an unfair practice in violation of RCW 49.60.220 because it did not intervene to stop the premature closure of the park and related evictions which were prohibited by its own ordinance.**

4.27.   Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

FIRST AMENDED COMPLAINT - 29

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

1

2    4.28.    SeaTac Municipal Code 15.465.600 H.2.g. and SeaTac Municipal Code

3    15.465.600 H.2.k. stayed the closure of the park when the residents appealed to the Superior

4    Court. The landlord subsequently engaged in a concerted campaign of intimidation and coercion

5    by publishing misinformation insisting the park closed on October 31, 2017, posting signs

6    containing misrepresentations and threats of eviction, refusing to accept monthly rental

7    payments, and initiating seven unlawful detainer eviction actions against six HOA members. The

8    City did absolutely nothing to enforce the stay. Although the City admitted on October 30, 2016

9    that an appeal would automatically stay the closure of the Park, the City Attorney's

10   representations to the Superior Court on December 15, 2017 disclaimed any role in the unlawful

11   detainer proceedings. The City's willful failure to enforce the stay aided, abetted, encouraged, or

12   incited the landlord's unlawful intimidation and coercion campaign on the basis of national

13   origin in violation of RCW 49.60.220.

**WLAD CLAIM 10:    The City of SeaTac's Failure to Enforce the Stay Constituted
Retaliation for Exercising their Fair Housing Rights.**

4.29.    Plaintiffs repeat and reallege and incorporate by reference the foregoing

paragraphs.

4.30.    The City violated the Washington Law Against Discrimination at

RCW 49.60.2235 because its failure to enforce the stay contained at SeaTac Municipal Code

15.465.600 H.2.g. by intervening to stop the landlord from prematurely closing the park

constituted coercion, intimidation, a threat, or interference with the Firs residents' exercise or

enjoyment of, or on account of their having exercised or enjoyed, or on account of their having

aided or encouraged themselves in the exercise or enjoyment of their fair housing rights to

appeal the relocation plan. Even assuming *arguendo* the City had no power to stop the ultimate

closure of the park, SeaTac Municipal Code 15.465.600 H.2.g. and SeaTac Municipal Code

15.465.600 H.2.k. conferred upon the City the power to stop the landlord's use of extra-legal

means to achieve the premature closure of the park during the pendency of the appeals process.

The City retaliated against the members of the Association for having exercised their fair

FIRST AMENDED COMPLAINT - 30

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

housing rights because it intentionally declined to exercise its police power to enforce its law preventing the premature and unilateral closure of the park and the unlawful displacement of 60% of SeaTac's Hispanic or Latino mobile home households.

**WLAD CLAIM 11:   The City of SeaTac's Failure to Stop the Premature Closure of the Park Evinced a Discriminatory Intent to Make Unavailable or Deny Dwellings to 60% of SeaTac's Hispanic or Latino mobile home households.**

4.31.   Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.32.   The City violated the Washington Law Against Discrimination at RCW 49.60.222(1)(f) because its failure to enforce the closure stay contained at SeaTac Municipal Code 15.465.600 H.2.g. by intervening to stop the premature closure of the park evinced a discriminatory intent to make "unavailable" or denied dwellings on the basis of national origin because the displaced residents compromised 60% of SeaTac's Hispanic or Latino mobile home households.

**WLAD CLAIM 12:   The City of SeaTac's Failure to Stop the Evictions Evinced a Discriminatory Intent to Constructively Expel 60% of SeaTac's Hispanic or Latino mobile home households.**

4.33.   Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.34.   RCW 49.60.222(1)(i) prevents expelling persons from housing because of their protected class, including national origin. The City of SeaTac evidenced the intent to expel the HOA members from their occupancy of real property because of their Latin or Hispanic origin in violation of RCW 49.60.222(1)(i) because it willfully acceded to the landlord's campaign to prematurely displace 60% of SeaTac's Hispanic or Latino mobile home households through the use of unlawful means.

///

///

///

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

**B.      FAIR HOUSING ACT ("FHA") CLAIMS**

**FHA CLAIM 1:      The Landlord Violated 42 U.S.C. § 3604(b) by Treating the Korean Landlord More Favorably Than the Hispanic or Latino HOA Members.**

4.35.    Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.36.    The City of SeaTac discriminated against the mostly Hispanic or Latino members of the Home Owners Association in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith in violation of 42 U.S.C. § 3604(b) when it gifted the landlord free translation services because it failed to act neutrally when it violated State law to favorably assist their Korean landlord to expedite the closure and dislocation of their predominantly Hispanic or Latino housing community

**FHA CLAIM 2:      The City Deprived the HOA Members of an Equitable Opportunity to Use and Enjoy Their Housing Because It Failed to Control the Mandatory July 11, 2016 Relocation Meeting in Violation of 42 U.S.C. § 3604(b).**

4.37.    Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.38.    Judge McCullough held that the City was obligated to sponsor the July 11, 2016 relocation meeting required by the City's Ordinance. According to Judge McCullough: "The code itself, therefore, mandates that the City schedule a meeting and provide from its -- and I believe the idea was it's a neutral perspective, and a neutral objective source, information about the standards to be complied with. This was not done. And the City conceded the same at the hearing examiner level, but dismisses this as a technicality, as do some of the other parties, but this Court -- in this Court's opinion it's much more than a technicality." The July 11, 2016 was a "facility" or "service" related to housing occupied by the members of the HOA. The City's failure to host an official meeting pursuant to its own Ordinance violated 42 U.S.C. § 3604(b) because it provided deprived the Firs residents of a City-required "facility" or "service" in the

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

form of a neutral process which provided maximally effective Spanish language access services in connection with their housing.

**FHA CLAIM 3:** **The City of SeaTac Engaged in Coercion, Intimidation, Threats, or Interference Against the HOA Members for Exercising their Fair Housing Rights in Violation of 42 U.S.C. § 3617 by Trying to Fracture the HOA's Cooperation with the Tenants Union.**

4.39.    Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.40.    The Tenants Union of Washington assisted the HOA members to organize to defend their right to fair housing and affordable housing. The City of SeaTac violated 42 U.S.C. § 3617 when Mayor Sietkes and then Deputy Mayor Fernald coerced, intimidated, threatened, or interfered with the Firs residents' exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged themselves in the exercise or enjoyment of, their fair housing rights because, on October 25, 2016, they admonished the mostly Hispanic or Latino residents of the Firs that they were receiving bad information or advice about their rights to advocate to save their housing. The clear implication was that the City was accusing the Tenants Union of lying to the residents to pit the HOA members against their advocates and fracture their cooperation.

**FHA CLAIM 4:** **The City of SeaTac Engaged in Coercion, Intimidation, Threats, or Interference Against the HOA Members for Exercising their Fair Housing Rights in Violation of 42 U.SC. § 3617 by Disinviting them to Council Meetings.**

4.41.    Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.42.    The City of SeaTac violated 42 U.S.C. §3617 when Deputy Mayor Fernald coerced, intimidated, threatened, or interfered with the Firs residents' exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged themselves in the exercise or enjoyment of, their fair housing rights because on

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

October 25, 2016, Fernald admonished the Hispanic or Latino residents not come with "your signs and things. We get it, but there's nothing we can do."

**FHA CLAIM 5:     The City of SeaTac Denied the HOA Residents Equal Housing Rights Because of their National Origin in Violation of 42 U.S.C. § 3604(b) because it failed to offer or provide equal Spanish language access "services" throughout the relocation planning process.**

4.43.    Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.44.    Nearly all the homeowners comprising the Firs Home Owners Association constitute persons whose primary language is Spanish.

4.45.    The City of SeaTac signed a contract with King County obligating it to comply with federal Limited English Proficiency ("LEP") police and procedures, including Title VI of the Civil Rights Act of 1964, which obligates the City of SeaTac to provide Spanish language interpretation and translation.

4.46.    According to the US Department of Housing and Urban Development, pursuant to Title VI: "Federally assisted recipients are required to make reasonable efforts to provide language assistance to ensure meaningful access for LEP persons to the recipient's programs and activities. To do this, the recipient should: (1) Conduct the four-factor analysis; (2) *develop a Language Access Plan (LAP)*; and (3) provide appropriate language assistance." U.S. Dep't of Housing & Urban Dev., <u>Final Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons</u>, 72 Fed. Reg. 2732, 2751 (Jan. 22, 2007) (emphasis added). There is no evidence that SeaTac developed a language access plan pursuant to Title VI.

4.47.    Moreover, according to HUD:

> Subrecipients and state grant recipients are likewise covered when federal funds are passed to them through the grantee. For example, Entitlement Community Development Block Grant, State Community Development Block Grant, and HOME Investment Partnership Program recipients' subrecipients are covered. ***Coverage extends to a recipient's***

FIRST AMENDED COMPLAINT - 34

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

***entire program or activity, i.e., to all parts of a recipient's operations.*** This is true even if only one part of the recipient receives federal assistance. For example, HUD provides assistance to a state government's Department of Community Development, which provides funds to a local government to improve a particular public facility. All of the operations of the entire state Department of Community Development—not just the particular community and/or facility—are covered. Emphasis added. Id. at 2739-40.

4.48.    It is undisputed that the City of SeaTac failed to provide certified interpreters and translations of proceedings and written information related to the Firs Mobile Home Park relocation planning process, including at City Council meetings, the Inventory, and the mandated City-hosted relocation "meeting with tenants to inform them of the owner's proposal for the property, the requirements of the mobile home relocation standards, as contained herein, and the proposed timeline for the process" which occurred July 11, 2016. The City knew of its obligations to provide for language access because it published an ADA Transition Plan in April of 2018 that proffered language access services to persons whose disabilities impede their communication, although it appears to have never prepared a similar plan pursuant to Title VI regulatory requirements.

4.49.    It is undisputed that at least one member of the City Council acknowledged the language barrier faced by Firs residents who attended at least the City Council meeting on October 25, 2016 when Councilmember Tony Anderson stated:  "[w]e obviously have language barriers here" which gives rise to an inference of inclusive and effective communication.  At the same meeting, Councilmember Kathryn Campbell seemingly asks the audience to translate the claim that the City Council could not help the residents: "I am sure that somebody will take care of translating that for me. Would you do that for me? Please?"

4.50.    If a housing provider is required to provide housing-related language assistance services to LEP persons under federal, state or local law, or by contract, and the housing provider fails to comply with that requirement, this too may constitute intentional discrimination. See Almendares v. Palmer, 284 F. Supp. 2d 799, 808 (N.D. Ohio 2003) (finding that one could

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

"logically infer" discriminatory intent where the defendant "chose to continue a policy of failing to ensure bilingual services" as required by Title VI "knowing that Spanish-speaking applicants and recipients . . . were being harmed as the consequence").

4.51.   Whether or not the HOA members wish or have standing to bring a claim for relief under Title VI, the City of SeaTac violated the Fair Housing Act at 42 U.S.C. § 3604(b) by denying to the HOA members Spanish language access services to the City Council, the mandatory Inventory, and at the mandatory July 11, 2016 relocation meeting because the City knowingly and intentionally breached its contract with King County and flouted HUD regulation by failing to develop a language access plan and refusing to undertake any reasonable efforts to provide the HOA members Spanish language assistance to the City's activities related to their housing. A discriminatory breach of language access rights gives rise to a claim of discriminatory terms and conditions of housing when the deprivation impedes equal use and enjoyment of housing.

**FHA CLAIM 6:**     **The City of SeaTac's Failure to Stop the Premature Closure of the Park Constituted Retaliation Against the Association Members for Exercising their Fair Housing Rights.**

4.52.   Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.53.   The City violated the Fair Housing Act at 42 U.S.C. § 3617 because its failure to enforce the stay contained at SeaTac Municipal Code 15.465.600 H.2.g. by intervening to stop the landlord from prematurely closing the park constituted coercion, intimidation, a threat, or interference with the Firs residents' exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged themselves in the exercise or enjoyment of their fair housing rights to appeal the relocation plan. Even assuming *arguendo* the City had no power to stop the ultimate closure of the park, SeaTac Municipal Code 15.465.600 H.2.g. and SeaTac Municipal Code 15.465.600 H.2.k. conferred upon the City the power to stop the landlord's use of extra-legal means to achieve the premature closure of the park during the pendency of the appeals process. The City retaliated against the members of the

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

Association in violation of the Fair Housing Act for having exercised their fair housing rights because it intentionally declined to exercise its police power to enforce its law preventing the premature and unilateral closure of the park and the unlawful displacement of 60% of SeaTac's Hispanic or Latino mobile home households.

**FHA CLAIM 7:      The City of SeaTac's Failure to Stop the Premature Closure of the Park Evinced a Discriminatory Intent to Make Unavailable or Deny Dwellings to 60% of SeaTac's Hispanic or Latino mobile home households.**

4.54.    Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.55.    The City violated 42 U.S.C. § 3604(a) because its failure to enforce the closure stay contained at SeaTac Municipal Code 15.465.600 H.2.g. by intervening to stop the premature closure of the park evinced a discriminatory intent to make "unavailable" or denied dwellings on the basis of national origin because the displaced residents compromised 60% of SeaTac's Hispanic or Latino mobile home households.

**FHA CLAIM 8:      The City of SeaTac's Affirmative Efforts on Behalf of the Landlord Expedited the Closure of the Community and Cause a Disparate Impact on the Hispanic or Latino Mobile Home Households of SeaTac.**

4.56.    Plaintiffs repeat and reallege and incorporate by reference the foregoing paragraphs.

4.57.    The City of SeaTac affirmatively favored the Korean landlord at every stage of the relocation planning process, including by paying to translate documents he produced. In the course of the relocation planning process, the City of SeaTac did in fact have an affirmative duty, but one that ran more to the benefit of the Hispanic or Latino tenants than the Korean landlord because 42 U.S.C. § 3608(d) requires that "all executive departments and agencies [to] administer their programs and activities relating to housing and urban development (including any Federal agency having regulatory or supervisory authority over financial institutions) in a

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

1    manner affirmatively to further the purposes of this subchapter...” The § 3608 requirement has

2    become known as the duty to affirmatively further fair housing.

3        4.58.   The City of SeaTac’s contract with King County, and status as an direct or

4    indirect recipient of federal housing funding, require it to affirmatively further fair housing.

5    According to HUD, “affirmatively furthering fair housing means taking meaningful actions that,

6    taken together, address significant disparities in housing needs and in access to opportunity,

7    replacing segregated living patterns with truly integrated and balanced living patterns,

8    transforming racially and ethnically concentrated areas of poverty into areas of opportunity, and

9    fostering and maintaining compliance with civil rights and fair housing laws. The duty to

10   affirmatively further fair housing extends to all of a program participant's activities and programs

11   relating to housing and urban development.” 24 C.F.R. § 5.152 Moreover, “a program

12   participant's strategies and actions must affirmatively further fair housing and may include

13   various activities, such as developing affordable housing”…24 C.F.R. § 5.150.

14       4.59.   Discrimination under the Fair Housing Act (and equal protection claims) can be

15   shown not just by showing overt discrimination, but also by “practices that are fair in form, but

16   discriminatory in operation.” Griggs v. Duke Power Co., 401 U.S. 424 (1971) (holding that an

17   employment practice which operates to exclude Black folks cannot be shown to be related to job

18   performance, the practice is prohibited). See also 24 CFR § 100.500. This discrimination is

19   commonly referred to as disparate impact liability. A policy that may be challenged under

20   disparate impact is “a practice has a discriminatory effect where it actually or predictably results

21   in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates

22   segregated housing patterns because of race, color, religion, sex, handicap, familial status, or

23   national origin.” 24 C.F.R. § 100.500(a) (2016).

24       4.60.   SeaTac, pursuant to the State Growth Management Act, adopted a Comprehensive

Plan in 2015 and again in 2017. The Comprehensive Plans commit SeaTac to increasing housing

options in SeaTac, maintaining SeaTac’s existing mobile home parks as a source of affordable

housing, and minimizing the impacts of mobile home relocation on low and moderate income

FIRST AMENDED COMPLAINT - 38

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

residents. The approval of the Firs Relocation Plan conflicts with SeaTac's own policies and obligations to affirmatively further fair housing.

4.61.    The City of SeaTac's affirmative efforts on behalf of the landlord to expedite the closure of the Firs Mobile Home Park in violation of the Fair Housing Act because the closure of the park will have a disparate impact on the predominantly Latino/Hispanic, non-English-speaking members of the Firs Home Owners Association and the community at large. The City's efforts to expedite the relocation proves and perfunctorily and unlawfully approve the relocation plan to facilitate the park's closure will displace 60% of SeaTac's Hispanic or Latino mobile home households.

4.62.    The City refused to dialogue with the members of the HOA as they explored options for buying or relocating the park. The City did not engage in affirmative efforts to mitigate the park's closure or explore alternatives to the loss of housing for 60% of the City's Hispanic or Latino mobile home households.

## V.    DAMAGES

5.1.    As a result of the forgoing, the Plaintiff has suffered injury, economic loss, and emotional distress.  Economic damages include diversion of the homeowner's association's organizational resources, future incremental housing costs of relocated residents, the loss of $1 million in Legislature-designated resources, membership fees, and miscellaneous costs.

## VI.    REQUEST FOR RELIEF

6.1.    Defendant's wrongful conduct described above has caused the Plaintiffs damages for which Plaintiffs seek judgment against Defendant awarding Plaintiffs the following forms of relief:

1.    An award of all general and special damages that are established at trial;

2.    Compensation for emotional distress;

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

3.      An award of actual and reasonable attorneys' fees and litigation expenses as provided by law, including the WLAD, Chapter 49.60 RCW ("WLAD") and the Fair Housing Act;

4.      Out-of-pocket and investigative expenses;

5.      Injunctive relief under the Fair Housing Act and WLAD, RCW 49.60.030(2), to enjoin further violations, including but not limited to, precluding Defendant from discriminating against residents who are seeking access to housing within the City of SeaTac because of their race, color, or national origin;

6.      Pre-judgment interest on all amounts awarded as allowed by law;

7.      Post judgment interest;

8.      A supplemental award to cover any adverse tax consequences of the judgment; and

9.      Such other equitable, legal, or additional relief as may be appropriate and just.


## VII.   JURY DEMAND

Plaintiff requests a jury trial.

//
//
//
//
//
//
//
//
//
//
//

FIRST AMENDED COMPLAINT - 40

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX

DATED:  October 21, 2019.

BRESKIN JOHNSON TOWNSEND, PLLC

By: ___s/Brendan W. Donckers_____
    Brendan W. Donckers, WSBA #39406
    1000 Second Avenue, Suite 3670
    Seattle, WA 98104
    Tel: (206) 652-8660
    bdonckers@bjtlegal.com


BARRAZA LAW, PLLC

By: ___s/Vicente Omar Barraza_____
    Vicente Omar Barraza, WSBA #43589
    10728 16th Ave SW
    Seattle, WA 98146
    Tel:  (206) 933-7861
    omar@barrazalaw.com


HENRY & DEGRAAFF, P.S.

By: ___s/Christina L. Henry___
    Christina L. Henry, WSBA #31273
    787 Maynard Avenue South
    Seattle, WA 98104
    Tel:  (206) 330-0595
    chenry@hdm-legal.com


*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Kenneth W Harper, WSBA 25578
MENKE JACKSON BEYER LLP
807 N 39th Ave
Yakima, WA 98902
509-575-0313
kharper@mjbe.com

Quinn N Plant, WSBA 31339
MENKE JACKSON BEYER LLP
807 N 39th Ave
Yakima, WA 98902
509-575-0313
qplant@mjbe.com

Mark Sterling Johnsen
CITY OF SEATAC
4800 S. 188th Street
SeaTac, WA 98188-8605
425-255-8678
425-255-8678 (fax)
mjohnsen@ci.seatac.wa.us

Mary Elizabeth Mirante Bartolo
CITY OF SEATAC
4800 S. 188th Street
SeaTac, WA 98188-8605
 (206) 973-4640
(206) 838-7223 (fax)
mmbartolo@ci.seatac.wa.us

*Attorneys for Defendant*
*City of SeaTac*

DATED October 21, 2019, at Seattle, Washington.

*s/ Vicente Omar Barraza*
Vicente Omar Barraza, WSBA #43589

FIRST AMENDED COMPLAINT - 42

(No. C19-1130RSL)

BARRAZA LAW, PLLC
10728 16TH AVE SW
SEATTLE, WA 98146
(206) 933-7861 (206) 933-7863 FAX