UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

FIRS HOME OWNERS ASSOCIATION,

               Plaintiff,

     v.

CITY OF SEATAC,

               Defendants.

No. C19-1130RSL

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

## I.    INTRODUCTION AND RELIEF REQUESTED

Plaintiff Firs Homeowners Association (the "Association") is an organization that was created to oppose the redevelopment of the Firs Mobile Home Park (the "Park"). The Association's members are Latino or Hispanic and nearly all reside in the Park. Many residents have lived in the park for more than a decade and nearly all of them are raising children at home. Because the City of SeaTac refused to use their municipal powers and failed to abide by their obligation to support fair and affordable housing, association members will have to leave the Park no later than June 30, 2020, at which point their homes will be demolished.

Instead of supporting community leaders, nonprofits, and a host of elected officials, the City of SeaTac actively obstructed the Association's efforts to save the Park, and in the process discriminated against the members by facilitating and accelerating the  Park's closure and residents' relocation at the behest of the Park

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 1
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  landowner, Jong Park, governor of the Fife Motel, Inc. The City claims that its conduct

2  does not rise to the level of discrimination, but the City both ignores controlling

3  authority and misconstrues the allegations set forth in the Association's First Amended

4  Complaint ("FAC"). Additionally, the City's arguments that the Association's fair

5  housing claims fail for want of a comparator and a contractual housing relationship fail

6  because the plain language of the Washington's Law Against Discrimination ("WLAD")

7  and the federal Fair Housing Act ("FHA") are applicable to a wide variety of

8  discriminatory housing practices. The Court should deny the City's Rule 12(b)(6)

9  motion because the Association has set forth plausible claims under both laws.

## II.  ALLEGATIONS OF FACT

11      The Firs Homeowners Association filed suit against the City of SeaTac for

12  committing a series of discriminatory acts during the course of issuing a land use

13  decision authorizing the relocation of park residents.  The facts in question include a

14  failure to require translations, depriving residents of the opportunity to a fair process.

15  The City failed to host a relocation meeting mandated by its own laws.  The City

16  Council entertained rabidly racist Washington State Representative Matt Shea and

17  when confronted with an admonition about civil rights laws, ignored them.  The now-

18  fired interim City Manager instructed City staff to conduct a Muslim mapping project

19  and the Council departed from normal procedures to hire said interim City Manager.

20  The City Council and staff illicitly conspired to illegally seize private land in the past.

21  Multiple council members recognized the lack of effective Spanish-language

22  communication at the council meetings, and a key leader of the council derided the

23  residents for their signs, self-advocacy with the support of the Tenants Union, and their

24  purported failure to pay taxes.  *See* FAC at ¶¶ 3.1 – 3.83.

25  ///
    ///

26  ///

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 2
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## III.    AUTHORITY

### A.    Standard of review

In considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in a light most favorable to the non-moving party. *Livid Holdings Ltd. V. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). All well-pleaded facts are accepted as true and the Court draws all reasonable inferences in favor of the Plaintiff. *Wyler Summit Partnership v. Turner Broad. Sys.*, 135 F.3d 685, 661 (9th Cir. 1998). To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Association sufficiently alleges fair housing discrimination claims based on national origin under both the WLAD and FHAA.

### B.    The City of SeaTac Is Subject to Federal and State Civil Rights Laws that Protect Residents from Discrimination

The SeaTac Municipal Code ("SMC") § 15.465.600.H.1 establishes a series of procedures and criteria governing the closure of a mobile home park. The City's implementation and enforcement of these local laws are subject to federal and state civil rights laws. This is because, under the WLAD, Washington residents have a "right to be free from discrimination" in housing and public accommodations. RCW 49.60.010. So too under federal law: "it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. These laws require the City of SeaTac, and those individuals empowered to implement and enforce the City's laws, to ensure that SeaTac residents

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 3
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1 are not discriminated against on the basis of their national origin when the City makes

2 decisions that impact residents' housing.

3 The WLAD expressly protects residents from discrimination because of their

4 race, color, or national origin. RCW 49.60.010. The legislature has determined that

5 discrimination "threatens not only the rights and proper privileges of [Washington's]

6 inhabitants but menaces the institutions and foundation of a free democratic state." *Id.*

7 It is a matter of "state concern" and an "exercise of the police power" to protect the

8 public welfare, health, and peace of the people[.]" *Id.* The Washington Supreme Court

9 has found that the purpose of the WLAD is to "deter and eradicate discrimination in

10 Washington" and that it "embodies a public policy of the 'highest priority.'" *Marquis v.*

11 *City of Spokane*, 130 Wn.2d 97, 109 (1996); *Martini v. Boeing Co.*, 137 Wn.2d 357,

12 365 (1999) (internal citation omitted). While courts may look to federal interpretations

13 of the Fair Housing Act's discrimination provisions to interpret the WLAD, federal cases

14 are not binding. *See Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 491 (2014)

15 (internal citations omitted).

16 The WLAD "*shall* be construed liberally for the accomplishment of the purposes

17 thereof." RCW 49.60.020 (emphasis added). This is true even in a plain language

18 analysis. *Marquis* 130 Wn.2d at 108-09. Under the WLAD, in fact, courts are "free to

19 adopt those theories and rationale which best further the purposes and mandates of

20 our state statute." *Kumar* 180 Wn.2d at 491 (internal citation omitted). Where the

21 state's highest court has departed from federal precedent, "it has almost always ruled"

22 that the WLAD provides greater protections than its federal counterparts. *Id.* (applying

23 broader protections under the WLAD to employees seeking religious accommodation

24 than federal courts); *see also Taylor v. Burlington N. R.R. Holdings, Inc.*, 193 Wn.2d

25 611 (2019) (determining obesity qualifies as a disability under the WLAD despite

26 federal interpretations of the ADA).

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 4
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

While the City asserts that the Association's "allegations are nonsensical because the mobile home park is still open," consistent with the broad nature of the WLAD, a mere "*attempt* to do any of the unfair practices defined" in Chapter 49.60 RCW is enough to give rise to liability. RCW 49.60.222(1)(k).

## C. Discriminatory Acts under the WLAD and FHA

### 1. The City Approved a Defective Relocation Plan

When the City of SeaTac City Council passed Ordinance 97-1004 amending its mobile home park relocation ordinance, "the City deem[ed] it desirable to have an established process to 1) assess the impacts of a proposed mobile home park closure; 2) provide information about alternative housing options to mobile home park tenants; and 3) increase the certainty of the process for both tenants and owners."[1] "A person aggrieved or adversely affected by the permit decision or action" may appeal a relocation plan decision to the City of SeaTac hearing examiner. SMC § 16A.17.010.B.

The City's decision approving relocation is reviewed by the hearing examiner under the Washington Land Use Protection Act ("LUPA") enumerated at RCW 36.70C.020. LUPA "land use decision" appeals include "[a]n application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used…" RCW 36.70C.020(2)(a). LUPA appeals are narrow and do not encompass claims that the facts and circumstances surrounding the subject of a LUPA appeal violated state or federal civil rights laws. Dkt. 11-2 at 17.

The City clearly violated LUPA when it approved the relocation. The State court judge remanded the relocation plan for correction because it was defective. FAC ¶¶ 3.78 through 3.80. Section H.1. of the City's code requires that the owner conduct an

---

[1] The Association requests the Court to take judicial notice of the Ordinance pursuant to Fed. R. Evid. 201. See contemporaneously filed request for Judicial Notice.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 5
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    inventory of park residents as to their demographics, the status of their units, the costs

2    they pay, and other particulars: "The inventory request form shall clearly state to

3    tenants that disclosure of age, income and housing cost information is voluntary, and

4    that the purpose of requesting the information is to assess the impact of the proposed

5    closure and the applicability of low-income housing assistance programs." SMC §

6    15.465.600.H.1.a.iii. This provision requires the property owner to communicate

7    information to park residents, a requirement that is meaningless if the park residents

8    cannot understand the information that is being communicated to them. Although the

9    majority of park residents speak Spanish, they did not receive the inventory request in

10   the language they understand.  The City knew that these requests were not distributed

11   in Spanish and did nothing to ensure residents received this communication in a

12   manner they could understand. (FAC ¶ 3.80).

13       Another provision requires that the property owner prepare a list of relocation

14   options for park residents, including a list of vacant mobile home and low-cost

15   apartment options in the area, and information from banks and from King County about

16   home buyer and relocation options. SMC § 15.465.600.H.1.c. This list too was

17   distributed only in English. And again, the City failed to ensure that residents received

18   this important information in a form they could readily understand. (FAC ¶ 3.32).

19       Finally, another provision requires that the property owner gather "[a] statement

20   of housing preference, based on the available options, . . . from each mobile tenant."

21   SMC § 15.465.600.H.1.d. The property owner made no effort to canvass the park

22   residents to determine their preferences in Spanish. Again, this means that many

23   residents were not queried in a language they could readily understand. The City was

24   aware of these deficiencies, but it failed to ensure City's ordinances were enforced in a

25   way that would be meaningful and effective to the Park residents. This is critical

26   because the cost of not doing so to the Park residents is immense: they faced the total

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 6
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

loss of their single most valuable asset, their homes. The City's failure to ensure Park residents understood the process supported the State court's decision that the City had not complied with LUPA.

### 2. The City Acted with Intention

Although the City insists it is "essentially powerless to affect" a mobile home park closure, the existence of the ordinance itself contravenes this argument. Indeed, the City now admits it possesses authority to impose conditions on the sale of mobile home parks. Brief at 14.[2] This admission contrasts sharply with the City's exhaustive efforts in the past to unlawfully seize private property. The City's efforts in these other cases provides another example of the City choosing to utilize its code in some instances, but intentionally refusing to use the Code to help residents of Latino or Hispanic heritage here. Intent can be inferred from the circumstances here.

State and federal fair housing laws constrain landlords and municipal governments. The requirements of the broad protections set forth in these statutes are unquestionably known to the City Council in the wake of the presentation given to the Council by state Rep. Matt Shea (R–Spokane Valley) in February 2016. Rep. Shea is a right-wing extremist. FAC ¶ 3.16.Then-Mayor Rick Forschler invited Rep. Shea to address the City Council in order to explain that it should not accept federal funds to construct a new park, because local governments accepting such funds are required to show that they are working to "affirmatively further fair housing." The City Council subsequently voted to accept federal funds and build the park. *Id.* The City now moves this court to dismiss all of the claims in the FAC by claiming that the residents of the Firs Home Owners Association cannot state a cause of action under the very state and

---

[2] The Plaintiff notes that the Supreme Court's November 19, 2019 decision in *Yim et al. v. City of Seattle*, No. 95813-1, effectively overturns *Manufactured Housing Communities of Wash. v. State*, 142 Wn.2d 347, 361-62, 13 P.3d 183 (2000) (two United States Supreme Court cases decided after *Manufactured Housing* establish that the federal legal underpinnings of our precedent have disappeared).

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 7
(No. C19-1130RSL)

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  federal fair housing laws which were discussed with the City then and now give rise to

2  the City's contractual, statutory, and regulatory duty to affirmatively further fair housing.

3      **3.    Although the Association offered a comparator, it is *not* required to
            identify a comparator to establish disparate treatment under the
4           WLAD or the Fair Housing Act**

5      **a.    The Association Offered a Valid Comparator**

6      The City claims that the Association failed to plead a *prima facie* case of

7  disparate treatment under the WLAD and the FHAA because the Association has not

8  established that its members were treated differently than a similarly situated

9  individual.  Motion at 9-11. However, the City is wrong.  The Association's members

10 and the park owner are similarly situated because the City of SeaTac's mobile home

11 relocation ordinance treats mobile home park owners and tenants similarly; they both

12 possess alienable legal interests in the same real property.  The City ordinance

13 contemplates this area of tension by accommodating the interests of both parties.  The

14 stated purpose is to increase the certainty of the relocation process for both the mobile

15 home park tenants and the owner. As discussed below, a comparator is not necessary

16 for the Plaintiff to prove discriminatory intent, but there is no reason the Association

17 cannot contrast efforts undertaken on behalf of the park owner with those undertaken

18 on behalf of the residents.  The benefits given to the park owner had the effect of

19 expediting park closure at the expense of the Hispanic or Latino tenants, who were

20 deprived the right to a fair process.

21     **b.    The Association Does Not Need a Comparator to Prove Housing
22          Discrimination if it Proves Discriminatory Animus**

23     The City's reliance on the *McDonnell Douglas* standard alone is wrong.[3] Indeed,

24 in the absence of a *McDonnell Douglas* direct comparator, a plaintiff may state a cause

25 _____

26 3 *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 8
(No. C19-1130RSL)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  of action under the WLAD by presenting direct evidence of illegal discrimination.

2  *Scrivener v. Clark College*, 334 P. 3d 541 (2014).  Alternatively, a plaintiff may avoid

3  summary judgment by presenting circumstantial evidence that discrimination was a

4  *substantial factor* motivating the decision notwithstanding the articulation of a legitimate

5  reason for the decision. *Id.*

6  Similarly, under federal law, when plaintiffs proffer "direct *or* circumstantial

7  evidence" of discriminatory disparate treatment, *McDonnell Douglas's* need for a

8  comparator is irrelevant. *Pac. Shores Properties, LLC v. City of Newport Beach*, 730

9  F.3d 1142, 1158 (9th Cir. 2013) ("Proving the existence of a similarly situated entity is

10  only *one* way to survive summary judgment on a disparate treatment claim. A plaintiff

11  does not, however, have to rely on the *McDonnell Douglas* approach to create a triable

12  issue of fact regarding discriminatory intent in a disparate treatment case.") (emphasis

13  in original) (internal citations omitted).

14  In *Avenue 6E Investments, LLC v. City of Yuma, Ariz.*, a company with a

15  reputation as a developer of Hispanic neighborhoods sued the City of Yuma for

16  housing discrimination after it denied a request to rezone 42 acres to construct housing

17  that might have been affordable by significant numbers of members of minority groups.

18  *Avenue 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493 (2016). While the

19  trial court dismissed all of the developer's claims of intentional and disparate impact

20  discrimination against Hispanics based on allegations that Yuma's decision made

21  unavailable or denied housing to protected individuals and disproportionately deprived

22  Hispanic residents of housing opportunities and perpetuated segregation, the Ninth

23  Circuit reversed and remanded the dismissal of the developer's disparate treatment

24  and disparate impact claims related to deprivation of housing opportunities and

25  articulated clear standards for assessing disparate treatment and impact claims. *Id.*

26  With respect to disparate impact claims, the Ninth Circuit held:

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 9
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

> *Arlington Heights* governs our inquiry whether it is plausible that, in violation of the FHA and the Equal Protection Clause, an 'invidious discriminatory purpose was a motivating factor' behind the City's decision to deny the zoning application. Under *Arlington Heights*, a plaintiff must 'simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely that not motivated' the defendant and that the defendant's actions adversely affected the plaintiff in some way.' 'A plaintiff does not have to prove that the discriminatory purpose was the sole purpose of the challenged action, but only that it was a 'motivating factor.'
>
> The court analyzes whether a discriminatory purpose motivated the defendant by **examining the events leading up to the challenged decision and the legislative history behind it, the defendant's departure from normal procedures or substantive conclusions, and the historical background of the decision and whether it creates a disparate impact**. These elements are non-exhaustive, and a plaintiff need not establish any particular element in order to prevail. *Id*. at 504 (2016) (emphasis added) (internal citations omitted).

Thus, *Avenue 6E Investments, LLC* stands for the proposition that the Association need only present direct or circumstantial evidence that invidious discriminatory purpose was a *motivating factor* rather than sole factor behind the City's adverse land use decision.

    **c.**    **The Complaint Alleges A Series of Discriminatory Acts**

    Here, the Association's complaint paints a vivid picture of racist animus because it articulates facts which show that the City Council entertained rabidly racist Washington State Representative Matt Shea (FAC ¶ 3.16), the now-fired interim City Manager engaged in a Muslim mapping project (FAC ¶ 3.17), the City Council departed from normal procedures to hire said interim City Manager (FAC ¶ 3.17), the City Council and staff illicitly conspired to illegally seize private land (FAC ¶ 3.27), the

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 10
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

City's staff's failed to exercise basic logic to ensure the provision of effective Spanish-language communications with directly-impacted stakeholders to facilitate their essential participation throughout the relocation and inventory process (FAC ¶ 3.79), the City's staff failed to host a relocation meeting mandated by its own ordinance (FAC ¶ 3.78), multiple council members recognized the lack of effective Spanish-language communication at the council meetings (FAC ¶¶ 3.40 and 4.49), and a key leader of the council derided the residents for their signs, self-advocacy with the support of the Tenants Union, and their purported failure to pay taxes (FAC ¶ 3.31).

Moreover, the City staff and Council ignored the City's contractual (FAC ¶ 4.45), policy, and regulatory commitments to increase language access (FAC ¶ ¶ 4.46 and 4.47) affirmatively further fair housing, endeavor to create and maintain affordable housing, and avoid the loss of its precious supply of affordable mobile home housing by expediting the closure of the park despite the clear disparate impact that the park's closure will wreak by depriving a substantial proportion of its Latino and Hispanic mobile home households of affordable housing. The City's expressed impotence and hostile communications with the Latino and Hispanic families residing at the Firs Mobile Home Park directed at the Firs community evinces a clear racial animus when considered against this contemporaneous historical backdrop.

The City further asserts that the City Council cannot be held liable for housing discrimination because the "City Council plays no role in the administrative review of a mobile home park relocation plan or an appeal from the director's decision to approve, deny, or require the modification of a mobile home relocation plan." Motion at 3 and 20. Contrary to the City Council's assertions that they play no role in the administrative review of a mobile home park relocation plan or an appeal from the director's decision to approve, deny, or require the modification of a mobile home relocation plan (Motion at 3 and 20), the City can in fact be held liable for housing discrimination. To the extent

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  that animus against a protected group was a significant factor in the position taken by

2  those to whom the decision-makers were knowingly responsive, the City can be held

3  liable. *Avenue 6E Investments, LLC*, 818 F.3d at 504-505 (Plaintiff alleging a

4  disparate-treatment claim under the FHAA "can establish a *prima facie* case by

5  showing that animus against the protected group was a significant factor in the position

6  taken by the municipal decision-makers themselves or by those to whom the decision-

7  makers were knowingly responsive." (internal quotation marks omitted)).

8       In other words, the discriminatory conduct of staff can create liability for the City

9  Council to the extent that the decision of the Director of SeaTac's Department of

10  Community and Economic Development to expedite or approve the plan, or the

11  decision of the staff and police chief to remove sign-in sheets at public meetings at

12  which Association residents attended, reflected the discriminatory position of the City

13  Council to whom they ultimately answered. Here, Acting City Manager Report Jose

14  Scorcio testified at the October 25, 2016 Council Meeting and was present when

15  members of the City Council made clear their disdain for and unwillingness to

16  communicate with the residents of the Firs Mobile Home Park in Spanish.

17       Notwithstanding the City's insistence to the contrary, the Association plausibly

18  asserted that comments made by the members of the City Council were motivated by

19  discriminatory animus against the Spanish-speaking residents of Firs and that those

20  comments conveyed messages to the staff of the City of SeaTac who then acted to

21  move the plan approval along, refrained from exercising discretion to impose logical

22  requirements for effective language communication in the relocation planning process,

23  and failed to enforce the stay when the landlord began to intimidate, harass, and evict

24  the residents to expedite the closure of their park. It is clear from the complaint that

25  City staff got the Council's messages when they used City funds to translate a private

26  document and when they removed the sign-up list for public comment when they

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 12
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

observed Association members arrive at the council budget workshop (FAC ¶ 3.44)

and took the sign-in sheet from Association member Erasmo Martinez as he was trying

to sign up to speak at a Council meeting. (FAC ¶ 3.62)

Not only does the Ninth Circuit's holding in *Avenue 6E Investments* allow the

Association to prove its case through direct or circumstantial evidence without relying

on *McDonnell Douglas*, it also eviscerates the City's insistence that the absence of a

contractual relationship between the Association and the City fails to state a claim

upon which relief can be granted because it clearly shows that municipal land use

decisions which implicate housing are covered by the FHAA and WLAD.

### 4. The WLAD and the FHA apply to discriminatory land use decisions that cause injury to members of a protected class

The City asserts that the Association's claims fail in the absence of a contractual

real estate transaction between the City and the Association.  Motion at 16-18.  But the

City's reading of the WLAD, FHA, and the Plaintiff's claims is unduly narrow because:

(1) municipal land use decisions which implicate housing are covered by the FHA and

WLAD; (2) the city's mobile home relocation regulatory scheme constitutes a real

estate transaction; and (3) the Association's claims, on their face, do not require a real

estate transaction.

### a. It cannot be disputed with a straight face that the state and federal fair housing laws reach land use decisions.

It cannot be disputed that the fair housing laws, including the WLAD, prohibit

land use decisions which discriminate against Latinos or Hispanics. *Avenue 6E*

*Investments, LLC*, 818 F.3d at 502; citing *Arlington Heights v. Metro. Hous. Corp.,* 429

U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (noting, in the context of a

zoning challenge, that "[w]hen there is a proof that a discriminatory purpose has been

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

a motivating factor" in a government decision, judicial deference to that decision is not justified under the Equal Protection Clause).

In a fair housing challenge alleging a City of Bellevue ordinance restricting group home occupancy illegally discriminated on the basis of disability and familial status, the court concluded, without discussion, that "the claims based on 42 U.S.C. §§ 3604(a) (to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny on the basis of familial status) and 3604(f)(1) (discriminate in the sale or rental, or to otherwise make unavailable or deny housing on the basis of disability) apply equally to the claims arising under the Washington Law Against Discrimination, RCW 49.60.222." *Children's Alliance v. City of Bellevue*, 950 F. Supp. 1491, 1495 n.3 (1997). Just as the lack of a direct housing transaction between the Children's Alliance and the City of Bellevue did not shield Bellevue from claims of housing discrimination under the WLAD or FHAA, the Association's claims of housing discrimination under the WLAD or FHAA involving the application of SeaTac's municipal mobile home relocation ordinance do not turn on a contractual relationship between the Association and the City. This is particularly true in the case of the Plaintiff's **eleventh WLAD claim** under RCW 49.60.222(1)(f) and **seventh FHAA claim** under 42 U.S.C. § 3604(a), which, like *Children's Alliance*, rest on the allegation that the application of a municipal land use regulatory scheme made housing ***unavailable*** to the Association members because of their national origin.[4]

The City appears to be making a standing argument and on the facts here, the law clearly supports the Association's allegations.  For instance, the phrase "otherwise make unavailable" has been interpreted to reach "a wide variety of discriminatory housing practices[.]" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2nd Cir. 1995)

---

[4] The Association notes WLAD Claim 11 alleges disparate treatment, not disparate impact.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 14
(No. C19-1130RSL)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  (internal citations omitted).  Standing under the FHA exists where "any person" claims

2  to have been injured by a discriminatory housing practice or believes that he or she

3  "will be" injured by a housing practice that has yet to occur.  *Id.* (citing 42 U.S.C.

4  §3613(a)(1)(A).

   **b.    A municipal land use regulatory scheme constitutes a housing
5          transaction under state and federal law.**

6          The City's relocation ordinance regulates mobile home park real estate

7  transactions by establishing a process to prevent the cessation of such transactions

8  absent an assessment of the impacts of a proposed mobile home park closure and the

9  provision of information about alternative housing options to tenants in order to

10  increase the certainty of the relocation process for both the mobile home park tenants

11  and the owner.

12         A "'[r]eal estate transaction' ***includes*** the sale, appraisal, brokering, exchange,

13  purchase, rental, or lease of real property, transacting or applying for a real estate

14  loan, or the provision of brokerage services." (emphasis added). RCW 49.60.040(21).

15  Similarly, "'[r]eal property' includes buildings, structures, dwellings, real estate, lands,

16  tenements, leaseholds, interests in real estate cooperatives, condominiums, and

17  hereditaments, corporeal and incorporeal, or any interest therein." RCW 49.60.040(22).

18  While the parties agree that the members of the Firs Home Owners Association do not

19  rent or lease real property *from* the City, nothing in the definition of a "real estate

20  transaction" limits the scope of the protections against housing discrimination to only

21  transactions between landlords and tenants or sellers and buyers. *See McFadden v.*

22  *Elma Country Club*, 26 Wn. App. 195, 201, 613 P.2d 146 (1980) ("Th[e] definition [of

23  'real estate transaction'] is illustrative, but not exclusive").

24         Thus, consistent with a liberal interpretation of the WLAD and the non-exclusive

25  definition of a "real estate transaction," the City's mobile home ordinance constitutes a

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 15
(No. C19-1130RSL)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

real estate transaction because it directly regulates real property transactions between owners and tenants within its jurisdiction. The federal and state fair housing laws unambiguously apply to any discriminatory conduct in which the City might engage in the course of regulating the mobile home relocation process.

### c. The Association's Claims do not require the City and Association to engage in a contractual real estate transaction.

The City of SeaTac misstates the nature of the Plaintiff's claims in its insistence that the parties did not engage in a real estate transaction because the WLAD on its face reaches conducted *related* to real estate transactions. The Plaintiff's **first three WLAD claims** under RCW 49.60.222(1)(b) and **first, second, and fifth FHAA claims** under 42 U.S.C. § 3604(b) do not require contractual privity between the City and the Association because the WLAD prohibits discrimination "against a person in the terms, conditions, or privileges of a real estate transaction *or in the furnishing of facilities or services in connection therewith*." RCW 49.60.222(1)(b).  Similarly, the Fair Housing Act prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, *or in the provision of services or facilities in connection therewith*, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

It is black letter law that "[w]hen the term 'or' is used it is presumed to be used in the disjunctive sense, unless the legislative intent is clearly contrary...We have said 'or' does not mean 'and.'" *Childers v. Childers*, 89 Wn.2d 592, 596, 575 P.2d 201 (1978). Thus, while 42 U.S.C. § 3604(b) and RCW 49.60.222(1)(b) provides two alternatives for claiming discrimination in the terms and conditions of housing, the Association alleges discrimination based on both prongs: the City of SeaTac discriminated against the Association and its members because of their national origin in the terms and conditions of the mobile relocation transaction regulated by the City and in the

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 16
(No. C19-1130RSL)

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   furnishing of facilities or services in connection with their contractual real estate

2   transaction with the owner of their mobile home park.

3       Similarly, the Association's **fourth, fifth and tenth WLAD** claims of

4   discrimination under RCW 49.60.2235 do not require contractual privity between the

5   City and the Association because the WLAD prohibits coercion, intimidation, threats, or

6   interference with any person in the exercise or enjoyment of, or on account of his or

7   her having exercised or enjoyed, or on account of his or her having aided or

8   encouraged any other person in the exercise or enjoyment of, rights *regarding real*

9   *estate transactions*…(emphasis added). RCW 49.60.2235.

10       Similarly, the Association's **third, fourth, and sixth FHAA claims** under 42

11   U.S.C. § 3617 do not turn on a contractual relationship between the parties because

12   42 U.S.C. § 3617 prohibits municipalities from taking otherwise legal actions, like

13   "zealous enforcement of local zoning ordinances" to "coerce, intimidate, threaten, or

14   interfere with residents in the exercise or enjoyment of . . . any right granted or

15   protected" by the Act. *United States v. Audubon*, 797 F. Supp. 353, 360-361 (1991).

16       The Plaintiffs **eighth and ninth** WLAD claims also do not require a housing

17   transaction. "Any person who aids, abets, encourages, or incites an unfair practice

18   under the WLAD has himself engaged in an unfair practice under the act. Mere

19   knowledge of harassing or discriminatory behavior is not sufficient to create liability for

20   aiding and abetting, however. What is required is proof that the defendant has

21   engaged in actions for the purpose of encouraging or assisting another to

22   discriminate." *Yousefi v. Delta Elec. Motors, Inc.*, 2014 U.S. Dist. LEXIS 124220 at 8-9,

23   2014 WL 4384068. Irrespective of a contractual housing transaction with the tenants,

24   the City of SeaTac could be found liable for housing discrimination if it engaged in

25   actions for the purpose of encouraging or assisting the owner of the mobile home park

26   to discriminate against the residents because of their Hispanic or Latino national origin.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 17
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Here, the City of SeaTac admitted to the trial court that it knew the landlord was evicting the tenants and knew that its relocation ordinance stayed the park closure but affirmatively claimed it could do nothing to stop the landlord.  Yet the City had a duty to enforce its ordinance and its failure to act accordingly aided and abetted the landlord in the commission of unlawful housing discrimination. To the extent that the Plaintiff did not more clearly allege that the landlord unlawfully pressured his tenants to move because of their Hispanic or Latino origin, it seeks leave to amend.

The Plaintiff also does not need to prove a contractual real estate relationship with the City to state a claim of housing discrimination under RCW 49.60.222(1)(i) (**WLAD Claim 12**) if the Association plausibly alleges that the City, acting for itself or another, expelled or attempted to expel the members of the Association from the park because of their national origin.[5] Here, the Association plausibly alleged that the City, through its efforts to expedite the approval of the defective relocation plan and failure to enforce the stay expelled or attempted to expel the members of the Association from the park because of their national origin.

5. **The Association States Plausible Claims for Discrimination in Public Accommodations Based on National Origin**

With respect to stating a cause of action under **WLAD claims six and seven** for public accommodations discrimination the City of SeaTac asserts that a plaintiff must plead "particularized treatment, consciously motivated by race." Here, the Association pled facts that give rise to a claim that the City of SeaTac deprived its members of the full enjoyment of public accommodations because they are Hispanic or Latino.

"'Full enjoyment of' … accommodations, advantages, facilities, or privileges of any place of public … accommodation, assemblage… without acts directly or indirectly

---

[5] The Association notes WLAD Claim 12 alleges disparate treatment, not disparate impact.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 18
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  causing persons of any particular … national origin … **to be treated as not welcome,**

2  **accepted, desired, or solicited**." RCW 49.60.040(14). Here, the Association plausibly

3  alleges that the City Council members treated the Association members as not

4  welcome, accepted, desired, or solicited because of their national origin when its

5  members acknowledged but doing nothing to address the lack of effective

6  communication in the City Council meetings, admonished the residents not to come

7  back with their signs, and claimed "they" did not pay taxes. The words used by the City

8  Council members could not have more clearly conveyed to the Association's members

9  that they were neither welcomed, accepted, or desired at the City Council meetings.

10      Similarly, the City's staff treated the Association members as not welcome,

11 accepted, desired, or solicited because of their national origin when it neglected to

12 exercise its to discretion to require the landlord to afford effective language

13 communication in the relocation planning process, when the acting City Manager

14 informed the Council that nothing could be done for them, when it failed to host and

15 provide certified interpreters and document translations at the mandatory meeting, and

16 when they removed sign in sheets at the City council meetings. A functional

17 democracy demands that residents of the community be able to seek redress from

18 elected officials and rely on government officials to affirmatively engage stakeholders

19 directly impacted by land use decisions in a language to ensure "maximum

20 effectiveness." Despite enacting a relocation process designed to assess the impacts

21 of a proposed mobile home park closure, provide information about alternative housing

22 options to mobile home park tenants, and increase the certainty of the process for both

23 tenants and owners, SeaTac officials effectively excluded the residents from the

24 publicly mandated relocation planning process by failing to provide (at the mandatory

25 meeting) or require that the landlord provide effective Spanish language interpreters

26 and translations throughout the process because of their national origin.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 19
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**6.      The Association Plausibly Alleges National Origin Disparate Impact Discrimination**

The Association asserts one claim of disparate impact discrimination in violation of the Fair Housing Act (Claim 8). FAC ¶¶ 4.56 through 4.62. The Plaintiff seeks leave to amend its eighth FHAA claim to the extent that ¶¶ 4.56 through 4.62 of the FAC do not expressly articulate that the Association alleges that the City of SeaTac made "housing unavailable" in violation of 42 U.S.C. § 3604(a) because of the national origin of the Association's members when it facilitated the closure of the mobile home park.

Unfortunately, the statistics articulated at paragraph 3.5 omitted the phrase "mobile home" between "104" and "householders." The Plaintiff requests leave to amend paragraph 3.5 to state: "The 2013-2017 American Community Survey 5-Year Estimates indicates that SeaTac contains 531 mobile home structures, 104 of whom are headed by persons of Hispanic or Latino origin.[6] In other words, approximately 20% of SeaTac's mobile households are Hispanic or Latino." The Association plausibly alleges a disparate impact from the closure of the Firs Mobile Home Park because it will result in the displacement of an estimated 62 of the 104 - or 60% - of the Latino or Hispanic mobile home households residing in SeaTac.

The City insists that it cannot be held liable for disparate impact discrimination because it is not responsible for the closure of the park and the racial composition of the park is not attributable to the City. Motion at 15. But discriminatory zoning practices violate the Fair Housing Act and may give rise to a claim of disparate impact "even if they only *contribute* to making unavailable or denying housing to protected individuals." *Avenue 6E Investments, LLC*, 818 F.3d at 509 (2016) (emphasis in original) (internal citations omitted).

---

[6] The Association requests the Court to take judicial notice of the Ordinance pursuant to Fed. R. Evid. 201. See contemporaneously filed request for Judicial Notice.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

…[T]he Supreme Court recently reaffirmed [that] the [Fair Housing Act] FHA also encompasses a second distinct claim of discrimination, disparate impact, that forbids actions by private or governmental bodies that create a discriminatory effect upon a protected class or perpetuate housing segregation without any concomitant legitimate reason. Disparate impact provides a remedy in two situations that disparate treatment may not reach. First, "[i]t permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification." (citing *Huntington Branch, N.A.A.C.P. v. Huntington,* 844 F.2d 926, 935 (2d Cir.1988) which noted that "clever men may easily conceal their motivations" and that disparate-impact analysis is needed because "[o]ften, such [facially neutral] rules bear no relation to discrimination upon passage, but develop into powerful discriminatory mechanisms when applied"). Second, disparate impact not only serves to uncover unconscious or consciously hidden biases, but also targets "artificial, arbitrary, and unnecessary barriers" to minority housing and integration that can occur through unthinking, even if not malignant, policies of developers and governmental entities. In this way, disparate impact "recognize[s] that the ***arbitrary quality of thoughtlessness can be as disastrous and unfair to private rights and the public interest as the perversity of a willful scheme***." *Avenue 6E Investments, LLC*, 818 F.3d at 503 (2016) (emphasis added) (internal citations omitted).

Here, then, the Association need only allege that the decisions of the City to support and expedite the park's closure will contribute to disproportionately deprive a protected group and that the national origin of the Association members were a significant factor in motivating the City's actions. In other words, even if the owner otherwise had the legal right to close the park, the City is liable if discriminatory animus toward the Hispanic or Latino residents was a motivating factor in its efforts to help the landlord achieve his otherwise legal right. Moreover, *Avenue 6E Investments, LLC* stands for the proposition that the application of a land use ordinance to a specific real estate transaction may give rise to disparate impact discrimination.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

City of SeaTac, including its staff and members of the City Council made decisions that contributed to the acceleration of the closure of the Firs Mobile Home Park which will indisputably make housing unavailable to 60% of SeaTac's Hispanic or Latino households. The FAC is replete with evidence that the decisions were motivated by racial animus because of the historical conduct of the City Council and staff, comments made by City Council members, the City's utter thoughtless about ensuring effective language communications with the residents (which the state court judge recognized this when he remanded the relocation plan for correction), and the City's utter thoughtless about analyzing the impact of the park's closure on its affordable and fair housing commitments contained within its Comprehensive Plan (FAC ¶ 3.10) and Consolidated Plan (FAC ¶ ¶ 3.9 and 3.11). The Association plausibly alleges that the national origin of the Association members was a significant factor in the position taken by the City staff and the City Council members to whom the staff were knowingly responsive because it articulated a pattern of historical and contemporaneous racial animus against minority residents of SeaTac throughout the FAC.

**D.     The Association Seeks Leave to Amend**

To the extent the Court believes the Association's claims require further detail, the Association seeks leave to amend pursuant to Rule 15.

DATED:  November 18, 2019.

BRESKIN JOHNSON TOWNSEND, PLLC

By:___*s/Brendan W. Donckers*_____
Brendan W. Donckers, WSBA #39406
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660
bdonckers@bjtlegal.com

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 22
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

BARRAZA LAW, PLLC

By: _s/Vicente Omar Barraza_
       Vicente Omar Barraza, WSBA #43589
       10728 16th Ave SW
       Seattle, WA 98146
       Tel: (206) 933-7861
       omar@barrazalaw.com


HENRY & DEGRAAFF, P.S.

By: _s/Christina L. Henry_
       Christina L. Henry, WSBA #31273
       787 Maynard Avenue South
       Seattle, WA 98104
       Tel: (206) 330-0595
       chenry@hdm-legal.com


*Attorneys for Plaintiffs*

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 23
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Kenneth W. Harper
Quinn N. Plant
MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902

*Attorneys for Defendant*
*City of SeaTac*

DATED November 18, 2019, at Seattle, Washington.

s/ Vicente Omar Barraza
V. Omar Barraza, WSSBA 43589

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS - 24
(No. C19-1130RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660