UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIRS HOME OWNERS ASSOCIATION,

Plaintiff,

v.

CITY OF SEATAC,

Defendant.

NO. C19-1130RSL

ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on "Defendant's Rule 12(b)(6) Motion to Dismiss First Amended Complaint." Dkt. # 36. Plaintiff has asserted twenty separate claims under the Washington Law Against Discrimination ("WLAD") and the Fair Housing Act ("FHA") related to the City of SeaTac's handling of a proposed relocation and closure plan for the Firs Mobile Home Park. Plaintiff, an association made up of individual home owners who lease lots at the Firs Mobile Home Park, alleges, among other things, (a) that defendant intentionally discriminated against its members based on their Latino or Hispanic national origin when it rushed to approve the relocation plan proposed by the property owner and failed to enforce municipal code provisions and policies that would have safeguarded its members' interests and (b) that the closure will have a disparate impact on Latinos or Hispanics. Defendant seeks dismissal of all of plaintiff's claims on the ground that the alleged facts do not state a claim for

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 1

which relief can be granted.[1]

In the context of a motion to dismiss, the Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). Nevertheless, Ninth Circuit authority allows the Court to consider documents referenced extensively in the complaint, documents that form the basis of plaintiff's claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003). The City of SeaTac's mobile home regulations and the decision of the Honorable Leroy McCullough, King County Superior Court Judge, regarding plaintiff's administrative appeal of the City's approval of the relocation plan are extensively cited in the complaint, form the basis of plaintiff's claims, and have been cited by both parties in their memoranda. The Court will therefore consider these documents in determining whether plaintiff has stated a viable cause of action.[2]

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory

---

[1] Defendant did not move for dismissal on ripeness, waiver, or res judicata grounds. Those arguments, which were first raised in the reply memorandum, Dkt. # 43 at 1-3, have not been considered.

[2] The Court has also considered plaintiff's proposed alteration to ¶ 3.5 of the First Amended Complaint and the supporting document, taking as true that there are 531 mobile homes in the City of SeaTac, approximately 104 of which (+/- 79) are inhabited by Latino or Hispanic residents.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 2

allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

*Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded factual allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

Having considered the First Amended Complaint and the memoranda, declarations, and exhibits submitted by the parties, and drawing all reasonable inferences in favor of plaintiff, the Court finds as follows:

**A. Disparate Treatment Claims**

The WLAD and the FHA bar national origin discrimination in housing and real estate transactions. RCW 49.60.222; 42 U.S.C. § 3604. Plaintiff alleges that the City of SeaTac was driven by discriminatory animus against Latino or Hispanic residents when it turned a blind eye to significant procedural problems and approved the land owner's defective relocation plan for the Firs Mobile Home Park. In asserting a disparate treatment claim, plaintiff must raise a plausible inference of discriminatory intent through direct evidence or through the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013); *Scrivener v. Clark*

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 3

*College*, 181 Wn.2d 439, 445 (2014). Although the precise formulation of the tests under state and federal law differs, "direct evidence," such as statements by the decision maker, is relatively rare and, where it exists, little is required to raise a plausible inference of discrimination.

> When plaintiffs rely on the "direct or circumstantial evidence" approach, instead of *McDonnell Douglas*, to survive summary judgment, we turn to the "sensitive" multi-factor inquiry articulated by the Supreme Court in *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 266 (1977), to determine whether the plaintiffs have created a triable issue of fact that the defendant's actions were motivated by discriminatory intent. *See Gay v. Waiters' & Dairy Lunchmen's Union*, 694 F.2d 531, 550 (9th Cir. 1982) (applying *Arlington Heights* ). Under *Arlington Heights*, a court analyzes whether the defendant's actions were motivated by a discriminatory purpose by examining (1) statistics demonstrating a "clear pattern unexplainable on grounds other than" discriminatory ones, (2) "[t]he historical background of the decision," (3) "[t]he specific sequence of events leading up to the challenged decision," (4) the defendant's departures from its normal procedures or substantive conclusions, and (5) relevant "legislative or administrative history." 429 U.S. at 266-68; *see Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009) (applying the *Arlington Heights* factors). These factors are non-exhaustive. *Arlington Heights*, 429 U.S. at 268. When a plaintiff opts to rely on the *Arlington Heights* factors to demonstrate discriminatory intent through direct or circumstantial evidence, the plaintiff need provide "very little such evidence ... to raise a genuine issue of fact ...; any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a fact-finder." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (quoting *Lowe [v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985)].

*Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158-59 (9th Cir. 2013) (footnote omitted).

Plaintiff's overarching theory seems to be that the City of SeaTac, let by the City Council, came to believe that it had too many immigrant residents, so when the owner of the Firs Mobile

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 4

Home Park announced his intention to close the park, displacing more than 60 Latino or Hispanic families, the City did what it could to fast-track the closure. More particularly, plaintiff alleges that the City gave assistance to the property owner while failing to ensure that the relocation planning process was administered fairly, and that the City Council chose not to intervene to correct fairly obvious procedural defects because it harbored discriminatory animus toward Latinos and Hispanics. Plaintiff identifies a number of deficiencies in the process, most notably that relevant communications from the property owner and the City were not translated into Spanish, that the City took no steps to protect plaintiff's members when the property owner began eviction proceedings in violation of the automatic stay provision of the governing code, and that the inventory report that formed the foundation for the relocation plan was incomplete in a number of respects. Plaintiff alleges that all but one of its members (and approximately 85% of the residents at Firs Mobile Home Park) are Latino or Hispanic and has raised a plausible inference that the City's actions in reviewing and approving the property owner's plan to close the mobile home park and relocate its residents relate to a real estate transfer and the availability of housing options to plaintiff's members.[3] The issue is whether the allegations of the First Amended Complaint give rise to a plausible inference that the City's actions were "because of" the residents' national origin.

        Plaintiff has not alleged that the Planning Manager who made the decision to approve the

---

[3] RCW 49.60.222(1)(b) and 42 U.S.C. § 3604(b) both prohibit national origin discrimination in the provision/furnishing of services in connection with a real estate transaction. RCW 49.60.222(1)(f) prohibits making a dwelling unavailable to a person because of his or her national origin. RCW 49.60.2235 and 42 U.S.C. § 3617 make it unlawful to interfere with the rights regarding real estate transactions secured by the WLAD or the FHA, respectively. For the reasons discussed in the text, these claims may proceed. Plaintiff has not, however, alleged facts giving rise to a plausible inference that the City, as opposed to the property owner, expelled or took steps to expel plaintiffs from the mobile home park for purposes of RCW 49.60.222(1)(i).

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 5

relocation plan or the Hearing Examiner who affirmed the approval harbored discriminatory animus toward Latinos or Hispanics. Rather, plaintiff alleges that the discriminatory intent of the City Council was made manifest and informed the decisionmakers' handling and resolution of this matter. Plaintiff alleges that at a Town Hall meeting held less than two weeks before the Planning Manager approved the property owner's plan, Deputy Mayor Pam Fernald (who was also a Council member) directed a "hostile" question at residents of the Firs Mobile Home Park when she asked how many people at the meeting spoke English and asserted that the residents at the park do not pay taxes. Dkt. # 25 at ¶ 3.31. Despite exhibiting an awareness that the community interested in the mobile home park closure was predominantly Spanish-speaking and might be facing a language barrier, the City did not provide interpreters at the meetings where this matter was discussed or translations of key documents.[4] The Council denied plaintiff's request for an extension of time in which to file its administrative appeal and subsequently thwarted four out of five efforts the residents of Firs Mobile Home Park made to bring the closure/relocation issue before the City Council for further discussion.[5] Deputy Mayor Fernald advised plaintiff's members that they were getting bad advice, requested that they not tell the Council that it was up to them to do something about the closure, and indicated further protests

---

[4] The City did require the property owner to obtain a Spanish-language translation of the relocation plan for distribution to the residents, but ultimately translated the document itself to improve its accuracy. In plaintiff's view, this was a gift to the property owner (who should have been required to bear the expense of re-translating the document) provided to expedite the process and safeguard the targeted October 2017 closure date.

[5] The Council rejected the request for an extension on the ground that it had no role to play in the review of relocation plans or the appeal. As alleged by plaintiff (and as actually occurred in this case), the task of evaluating a mobile home park relocation plan is assigned to SeaTac's Department of Community and Economic Development, and the administrative appeal is handled by the City's Hearing Examiner.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 6

and sign-waving would be fruitless: "We get it, but there's nothing we can do." Dkt. # 25 at ¶ 3.41. The Council subsequently declined to hold a special session to discuss the impacts of the proposed closure and made no effort to assist in the community's effort to purchase the park even after the state allocated $2.5 million to the cause. On January 19, 2018, Mayor Erin Sitterley (who is also a Council member) retweeted on her private Twitter account that "We will not negotiate the status of unlawful immigrants while Democrats hold our lawful citizens hostage over their reckless demands" (Dkt. # 25 at ¶ 3.73), apparently in reference to the DREAMER controversy that had spilled into congressional budget talks. And finally, in September 2018, the City Council approved plans to sell a City-owned mall which will effectively displace "over 60 immigrant businesses." Dkt. # 25 at ¶ 3.81.[6]

In plaintiff's view, the Council indicated through word and deed that the Latino or Hispanic residents of Firs Mobil Home Park were not valued and that their concerns would not be addressed. The administrative apparatus of the City internalized this information, overlooking significant and obvious flaws in the relocation process (as found by the Honorable Leroy McCullough, King County Superior Court Judge, in the related Land Use Petition Act case) and permitting the property owner to violate the governing code in an effort to streamline the closure process. While this is not the only inference arising from the allegations of the First Amended

---

[6] In support of their disparate treatment claim, plaintiff also alleges that the Korean property owner was treated more favorably than the predominantly Latino or Hispanic tenants (WLAD Claim 1 and FHA Claim 1). Other than the fact that both the land owner's and the tenants' rights and actions were governed by the municipal code related to the closure of mobile home parks, they are not similarly-situated but rather have distinct and, in some ways, opposite roles in the process. WLAD Claim 1 and FHA Claim 1 fail to state a viable claim for relief.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 7

Complaint, the Court finds that it is a plausible inference.[7]

**B. Disparate Impact Claim (FHA Claim 8)**

Defendant argues that, despite the direct and adverse impact the approval of the relocation plan will have on Latino or Hispanic residents of the park, "the City cannot be liable merely because statistical evidence may show that a disproportionate number of mobile home park residents are of Latino or Hispanic national origin," citing *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, __ U.S. __, 135 S. Ct. 2507 (2015). Dkt. # 43 at 8. The issue in that case was whether disparate impact claims are cognizable under the FHA. *Id.* at 2513. After reviewing the development of disparate impact claims under Title VII and the Age Discrimination in Employment Act, the Supreme Court found that the FHA contained similar language that focused on the consequences of defendant's actions and not simply its motivation. *Id.* at 2518-19. The Court noted that disparate impact claims are consistent with and will forward the FHA's purposes, not only by invalidating zoning and other housing restrictions that unfairly and arbitrarily exclude minorities from housing options, but also by "uncovering discriminatory intent: It permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment. In this way disparate-impact liability may prevent segregated housing patterns that might otherwise result from covert and illicit stereotyping." *Id.* at 2522.

The Court warned, however, that a disparate impact claim under the FHA requires a robust showing of causation linking defendant's policy to a statistically significant disparity. *Id.*

---

[7] To the extent the City is arguing that plaintiff has not alleged a cognizable injury because its members voluntarily agreed to relocate, the argument is unsupported by the allegations of the complaint and is not particularly persuasive given the residents' reasonable interest in mitigating their losses through this process.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 8

at 2523. Assuming, for purposes of this motion, that plaintiff may maintain a disparate impact claim based on a one-time decision (as opposed to a policy), plaintiff must allege sufficient facts to give rise to a plausible inference that defendant has imposed "artificial, arbitrary, and unnecessary barriers" to housing opportunities, unjustified by competing legal requirements or the multiple legitimate factors that go into zoning and regulatory decisions. *Id.* at 2523-24. This "robust causality requirement" is deemed essential to protect "defendants from being held liable for racial disparities they did not create" and to allow governmental entities to achieve legitimate objectives and priorities, such as ensuring compliance with health and safety codes, even in the face of a disparate impact. *Id.* In this case, that Firs Mobile Home Park is home to over 60 Latino or Hispanic families is a neutral fact unrelated to any alleged conduct on the part of the City. The property owner's decision to close the park was not caused or encouraged by the City. The Court finds that plaintiff has not alleged a robust causal connection between the feared adverse impact on existing residents and a City policy, instead simply relying on the number of Latino or Hispanic families that will be impacted by the closure of the Firs Mobile Home Park. This is not, under *Inclusive Communities*, enough.

**C. Discrimination in Public Accommodation or Assemblage**

Plaintiff alleges that the City distinguished, restricted, and discriminated against its members at public meetings by not providing interpreters and attempting to limit their ability to address the Council. WLAD Claims 6 and 7. Defendant's only response to these claims is to assert that they fail for the same reasons as plaintiff's FHA claims. There is no comparable accommodation claim asserted under the FHA, however. To the extent defendant is relying on its argument that plaintiff has failed to raise a plausible inference of discriminatory animus, the argument fails for the reasons discussed in section A of this Order.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 9

**D. Aiding and Abetting**

RCW 49.60.220 makes it an unfair practice "to aid, abet, encourage, or incite" a violation of the WLAD. Plaintiff has settled its claims against the property owner. Because the First Amended Complaint does not allege facts sufficient to show that he violated the WLAD, it cannot support a claim that the City aided, abetted, or encouraged the unpled violation.

For all of the foregoing reasons, defendant's motion to dismiss is GRANTED in part: plaintiff's WLAD Claims 1, 8, 9, and 12 and FHA Claims 1 and 8 are dismissed for a failure to state a claim upon which relief may be granted. Because this matter continues, leave to amend will not be blindly granted. If plaintiff believes it can, consistent with its Rule 11 obligations, amend the complaint to remedy the pleading and/or legal deficiencies identified above, it may file a motion to amend and attach a proposed pleading for the Court's consideration pursuant to LCR 15.

Dated this 23rd day of March, 2020.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 10