# EXHIBIT 1

```
 1                    UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF WASHINGTON

 3

 4    Firs Home Owners Association,        )
                                           )
 5            Plaintiff,                   )
                                           )    NO. 2:19-cv-01130
 6        vs.                              )
                                           )
 7    City of SeaTac, a Municipal          )
      Corporation,                         )
 8                                         )
              Defendant.                   )
 9

10

11     REMOTE VIDEOCONFERENCE 30(b)(6) DEPOSITION UPON ORAL

12                          EXAMINATION

13                  OF MA ANITA BRITO MUNGUIA

14       REPRESENTATIVE OF FIRS HOME OWNERS ASSOCIATION

15

16                         July 21, 2020
                             9:00 a.m.
17                        SeaTac, Washington

18

19

20
              TAKEN AT THE INSTANCE OF THE DEFENDANT
21

22                      CERTIFIED COPY

23

24
      REPORTED BY:
25    PHYLLIS CRAVER LYKKEN, RPR, CCR NO. 2423
```

Firs Home Owners Association vs City of SeaTac

30(b)(6)
Ma Anita Brito 07/21/2020

```
 1   occupation because of the difficulty that people have
 2   been having in finding a place to live in view of the
 3   situation that the country is experiencing.
 4        Q.  Is there a new deadline?
 5        A.  Yes, it's August 30th.
 6        Q.  So will you move out of your space at the Firs
 7   Mobile Home Park by August 30, 2020?
 8        A.  Yes, that's right.
 9        Q.  Have you already found a place to move to?
10        A.  No.
11        Q.  How much do you pay per month for your space at
12   the Firs?
13        A.  Well, rent is 490 and water is a hundred, so
14   it's $590.
15        Q.  That's for Space 28; is that correct?
16            THE INTERPRETER:  Was that 2-8, for the
17   interpreter?  I'm just not sure.
18            MR. PLANT:  Yes.
19            THE INTERPRETER:  Okay.  Thank you.
20        A.  Yes, that's correct.
21        Q.  (By Mr. Plant)  Okay.  And so you have not found
22   a place to move after August 30, 2020, correct?
23        A.  That is correct.
24        Q.  So is it correct that you don't know how much
25   you'll be paying per month after August 30, 2020, for
```



```
 1          Well, you know, there were also, as a matter of
 2   fact, there were people who had just finished paying off
 3   their homes.  Maybe they had bought from people they
 4   knew or from tips, you know, and some of them had only
 5   just finished paying it off within a year.  And then to
 6   have to start again from zero to once again have to
 7   wonder where are they going to live.
 8          Well, as a matter of fact, the owner, property
 9   owner, had sold a mobile home to one of the renters who
10   was a member of the HOA and yet he didn't tell him that
11   in about a year he was going to be selling the park.
12      Q.  Okay.  Ms. Brito, this is my only chance to talk
13   to you, so it's very important for me to understand what
14   the HOA claims are in this lawsuit.  So I'm going to try
15   to summarize what I think you've said and then I'm going
16   to ask you to, you know, correct me or clarify if I have
17   it wrong in any way.  Okay?
18          So the HOA's claims in this lawsuit are really
19   focused on when it went to the city council and asked
20   for help.  And then we have, I think, three ways that
21   the City acted wrongfully.  The first one is that some
22   members of the city --
23          THE INTERPRETER:  Just a second.  Let me
24   interpret that much.
25          Go ahead.
```



Firs Home Owners Association vs City of SeaTac

30(b)(6)
Ma Anita Brito 07/21/2020

```
 1        Q.  The first is the way that some city council-
 2   members spoke to HOA members was disrespectful.
 3        A.  Correct.
 4        Q.  And the second is that the City didn't help the
 5   HOA members by forcing Mr. Park to sell the mobile home
 6   park property to the residents.
 7            And the third one is that the City did not
 8   require --
 9        A.  Correct.
10        Q.  -- the property owner to pay mobile home park
11   residents money in exchange for getting a permit from
12   the City to close the park?
13        A.  Correct.
14        Q.  Would you like to clarify or add to any of those
15   things?  I just want to make sure I understand the
16   claims.
17        A.  Yes, correct.  And the thing is, you know, when
18   we're going there, that we were feeling discriminated
19   against.  And even though it's a very strong word, it is
20   the correct word, because I believe on a personal level
21   that if we'd gone there as people from this country, we
22   would not have been treated that way.
23        Q.  Okay.  Thank you, Ms. Brito.
24            Okay.  I will go through one more topic and then
25   we can take a break.  I think it will take about 15 or
```

```
 1    wrong when the City approved the relocation plan in
 2    October 2016?
 3         A. No.
 4         Q. It didn't.  And how did it not resolve those
 5    items?
 6         A. It's not very clear to me.
 7         Q. Okay.  So does the HOA believe that the King
 8    County Superior Court reached a wrong conclusion in this
 9    order?
10         A. No.
11         Q. I would like, if you could, please, turn to page
12    3 of this order.  And if you would turn to page 3, you
13    should see a paragraph No. 4.
14              THE INTERPRETER:  I'm sorry, could you repeat?
15         Q. If you turn to page 3, you should find a
16    paragraph No. 4.  I'll represent this is Conclusion of
17    Law No. 4 in the court's order.  So do you understand
18    that this is a ruling by the state court?
19         A. Yes.
20         Q. Can you please read Conclusion of Law No. 4?
21              THE INTERPRETER:  Are you speaking to the
22    interpreter or to her?  The interpreter would need to
23    find it.  That's all.
24              MR. PLANT:  Okay.  If you could please read
25    Conclusion of Law No. 4 into the record.
```



1  beginning, then it would not have been so difficult.  It
2  would have been not, it was very difficult to not
3  understand what was happening.
4     Q.  I'm trying to understand that how the claims in
5  the two lawsuits are different or how they're the same.
6       MS. HENRY:  I'm going to stop for a second.
7  Again, she can testify to the facts.  She's already
8  testified as to reasons why she's brought the lawsuit.
9  It sounds to me like you were asking her to testify as a
10 lawyer as to legal claims and why there is one lawsuit
11 or another?
12    A.  The City did not help us in terms of translation
13 in reference to the closure of the park.
14    Q.  The City -- okay.  And that's, that's the claim
15 in both the current lawsuit and the state court appeal?
16    A.  Yes.
17    Q.  Okay.  It's the same problem raised in both
18 lawsuits; is that correct?
19       MS. HENRY:  Objection to the extent you're again
20 asking her about legal claims.
21       You can answer the facts to the best of your
22 ability.
23    A.  Right.
24       MR. PLANT:  It's almost 1:00.  How about we
25 take, what do you say, ten-minute break?



```
1        Q.  And I think we've talked about what some of
2    those statements were early in the deposition.  Do you
3    remember that?
4        A.  A little.
5        Q.  Okay.  So beyond making those statements, did
6    the city council or any member of the city council
7    threaten the HOA in any way?
8        A.  We were not threatened.
9        Q.  Okay.  Did anyone on the city council or did the
10   city council or mayor try to coerce or force the HOA to
11   do anything?
12       A.  What are you referring to in terms of that they
13   tried to force?
14       Q.  I understand that the HOA is claiming that some
15   of the statements made by the councilmembers were
16   offensive or hostile, but did the city council or the
17   mayor or the City try to make them do anything or coerce
18   them or force them to do anything?
19       A.  No.
20       Q.  And did the mayor or any member of the city
21   council or the City try to intimidate the HOA or its
22   members?
23       A.  No.
24       Q.  Okay.  Now, I know that at these meetings, and
25   maybe at other meetings as well, HOA members were
```

```
 1   accompanied by Helena Benedict or Monica Mendoza-
 2   Castrejon from the Tenants Union of Washington; is that
 3   correct?
 4         A.  That is correct.
 5         Q.  All right.  And so did the mayor or the city
 6   council or the City try to, I guess, you know, interfere
 7   with Ms. Benedict or Ms. Mendoza-Castrejon's ability to
 8   work with the HOA and Firs residents?
 9         A.  Yes, at one point they said that they were, all
10   they were doing was manipulating us.  Several times they
11   made us feel like we were incapable of thinking for
12   ourselves in terms of what we were doing.
13         Q.  Who said, who said that?  I understand that what
14   you just said is that somebody said that the Tenants
15   Union of Washington was manipulating the HOA.  Did I
16   catch that correctly?
17         A.  Yes.  I don't recall exactly who was it that
18   said that, but they did say it.
19         Q.  And that was sort of -- but I guess beyond that
20   statement, did the City or city council members or mayor
21   do anything beyond sort of making that statement?
22         A.  No, I can't recall at this time.
23         Q.  And do you recall who made that statement?
24         A.  No.  Again, I don't remember.
25         Q.  Was it a city councilmember?
```



| | |
|---|---|
| Firs Home Owners Association vs City of SeaTac | 30(b)(6)<br>Ma Anita Brito 07/21/2020 |

```
 1          A. Yes.
 2          Q. Do you have any knowledge that other city
 3   council members agreed with that statement?
 4          A. Well, nobody raised any objections to that
 5   having been said.
 6          Q. Okay.  So it's a statement by one city
 7   councilmember; is that correct?
 8          A. That's correct.
 9          Q. And did, after that statement was made, did the
10   Tenants Union of Washington continue to work with the
11   HOA?
12          A. Yes.  They're, even to this date, they're still
13   with us.
14          Q. I want to ask you, just before we took our lunch
15   break, I'll loop back around, you had mentioned that,
16   I'd asked you if the HOA members were ever disinvited
17   from any counsel meetings.  Do you remember that
18   question?
19          A. Yes.
20          Q. And I think you testified that at a city council
21   meeting somebody pulled a sign-in sheet away from an HOA
22   member.  Do you remember that?
23          A. Yes, that's correct.
24          Q. Okay.  If we could go to Exhibit No. 3, please.
25          A. Yes, I have it.
```



Firs Home Owners Association vs City of SeaTac

30(b)(6)
Ma Anita Brito 07/21/2020

```
 1            The Firs Mobile Home Park property, who, who
 2   owned that in 2016 and 2017?
 3       A.   As far as I know, Mr. Jong Park.
 4       Q.   Okay.  The City did not own that property, did
 5   it?
 6       A.   No.
 7       Q.   Did the City ever sell or offer to sell any
 8   property to the HOA?
 9       A.   At no time at all.
10       Q.   Okay.  Did the City ever buy or offer to buy any
11   real property from the HOA?
12       A.   No, at no time.
13       Q.   Did the HOA ever want to buy any property from
14   the City?
15       A.   Well, it's a little bit tough to say, because we
16   came to learn that the City owned the space, I believe
17   it's over on the street, the 200 Street, but there was
18   never an offer made.
19       Q.   Okay.  The City didn't refuse to sell that
20   property to the HOA, the HOA didn't offer to buy it; is
21   that right?
22       A.   Well, I'm in agreement with that.  The HOA
23   didn't make an offer.  We thought that perhaps the City
24   would offer and, you know, when it, when the relocation
25   plan was instituted, maybe to have us staying in an area
```

```
 1   maybe in one of those areas.  Although we were aware
 2   that space was not large enough to accommodate all of
 3   the families at first.
 4        Q.  Okay.  Did the City ever rent or offer to rent
 5   any property to the HOA?
 6        A.  No, at no time at all.
 7        Q.  And the City did not rent or offer to rent any
 8   property from the HOA; is that true?
 9        A.  That's correct.
10        Q.  In fact, at no time was there any sort of real
11   estate dealings between the City and the HOA; is that
12   fair?
13        A.  That's correct.
14        MR. PLANT:  Well, let's go off the record for
15   just a second.
16              (AN OFF-THE-RECORD DISCUSSION WAS
17              HELD.)
18        MR. PLANT:  Back on the record.
19        Q.  (By Mr. Plant)  Let's go to Exhibit 3, please,
20   page 39, paragraph 5.1.
21        THE INTERPRETER:  What was the paragraph again?
22        MR. PLANT:  5.1.
23        MS. HENRY:  5.21?
24        MR. PLANT:  5.1.
25        Q.  (By Mr. Plant)  Are you there, Ms. Brito?
```

```
 1            MR. BARRAZA:  And that money was granted out and
 2     some of the families, and possibly even Ms. Brito, are
 3     actually taking advantage of that money now.  So that is
 4     part of the confusion.
 5            MS. HENRY:  I have my 4:00.
 6            MR. PLANT:  Okay.  I know we agreed to take a
 7     break at 4:00.
 8        Q.  (By Mr. Plant)  I just want to be very clear on
 9     the record that the HOA did not submit a formal
10     application to the Department of Commerce for the $2.5
11     million allocated for the purchase of the Firs Mobile
12     Home Park.
13        A.  Yes, that's correct.
14            MR. PLANT:  Let's take a 15-minute break so we
15     can get our phone call done.  I have one more issue.  I
16     think it will take about ten minutes, so we should be
17     done before 4:30.
18                  (A SHORT RECESS WAS HAD.)
19            MR. PLANT:  Back on.
20        Q.  (By Mr. Plant)  Okay.  Ms. Brito, are you with
21     us?
22        A.  Yes.
23        Q.  I can't see you.  There you are.
24            Okay.  Earlier we talked about an allegation
25     that a Firs Mobile Home Park, an HOA member attended a
```



Firs Home Owners Association vs City of SeaTac

30(b)(6)
Ma Anita Brito 07/21/2020

```
 1                    C E R T I F I C A T E
 2    STATE OF WASHINGTON )
                          ) ss.
 3    COUNTY OF YAKIMA    )
 4
 5        This is to certify that I, Phyllis Craver Lykken,
 6    Certified Court Reporter in and for the State of
 7    Washington, residing at Yakima, reported the within and
 8    foregoing deposition; said deposition being taken
 9    remotely before me on the date herein set forth; that
10    pursuant to RCW 5.28.010 the witness was first by me
11    duly sworn; that said examination was taken by me in
12    shorthand and thereafter under my supervision
13    transcribed, and that same is a full, true and correct
14    record of the testimony of said witness, including all
15    questions, answers and objections, if any, of counsel.
16        I further certify that I am not a relative or
17    employee or attorney or counsel of any of the parties,
18    nor am I financially interested in the outcome of the
19    cause.
20        IN WITNESS WHEREOF I have set my hand this 31st
21    day of July, 2020.
22
23
24                    PHYLLIS CRAVER LYKKEN, RPR,
                      CCR NO. 2423
25
```