# EXHIBIT 22

FILED
18 AUG 09 AM 10:55

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 18-2-06771-5 KNT

Honorable Chad Allred

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| MARTHA S. ZAMORA and RUTILIO ZAMORA; IRENE CRUZ; EDUARDO VAZQUEZ VITE; MA ANITA BRITO-MUNGUIA; URIEL ZAMORA; NALLELICA ZAMORA;<br><br>Plaintiffs,<br><br>v.<br><br>FIFE MOTEL, INC., a Washington corporation,<br><br>Defendant. | NO. 18-2-06771-5 SEA<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

## I.   INTRODUCTION

Plaintiffs are residents of the Firs Mobile Home Park, a property that is owned and operated by Defendant Fife Motel, Inc.  The Plaintiffs bring this action against the Defendant for unreasonably interfering with their property rights and committing unfair, deceptive, and in some cases outrageous, acts during the course of attempting to remove the Plaintiffs from their homes.

## II.   PARTIES

1.      Plaintiffs Martha and Rutilio Zamora reside at the Firs Mobile Home Park in King County, Washington.  They lease a lot that is located within the mobile home park commonly referred to as "Unit 4."

SECOND AMENDED COMPLAINT- 1
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1      2.     Plaintiff Irene Cruz resides at the Firs Mobile Home Park in King County,

2 Washington.  She leases a lot that is located within the mobile home park commonly

3 referred to as "Unit 8."

4      3.     Plaintiff Nallelica Zamora resides at the Firs Mobile Home Park in King

5 County, Washington.  She leases a lot that is located within the mobile home park

6 commonly referred to as "Unit 14."

7      4.     Plaintiff Eduardo Vazquez Vite resides at the Firs Mobile Home Park in

8 King County, Washington.  He leases a lot that is located within the mobile home park

9 commonly referred to as "Unit 21."

10     5.     Plaintiff Ma Anita Brito-Munguia resides at the Firs Mobile Home Park in

11 King County, Washington.  She leases a lot that is located within the mobile home

12 park commonly referred to as "Unit 28."

13     6.     Plaintiff Uriel Zamora resides at the Firs Mobile Home Park in King

14 County, Washington.  He leases a lot that is located within the mobile home park

15 commonly referred to as "Unit 56."

16     7.     Defendant Fife Motel, Inc., is a Washington for profit corporation residing

17 and doing business in King County, Washington.  Defendant Fife Motel, Inc., does

18 business in King County as the "Firs Mobile Home Park."  The mobile home park is

19 located at 20440 International Boulevard in SeaTac, Washington.

20 **III.    JURISDICTION AND VENUE**

21     8.     This Court has jurisdiction over the parties pursuant to RCW 49.60 *et*

22 *seq.*, RCW 19.86 *et seq.*, and the Washington Constitution.  *See* Const. art. IV, § 6.

23     9.     Venue is proper pursuant to RCW 4.12.025(1)(a)-(d) because at all

24 relevant times Defendant transacted and continues to transact business in King

25 County and Defendant's registered agent is in King County.

26

SECOND AMENDED COMPLAINT- 2
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1

#### IV.   FACTUAL ALLEGATIONS

2       10.    Plaintiffs reside in mobile homes at the Firs Mobile Home Park in

3   SeaTac.

4       11.    Like most of the park's 170 residents, all of the Plaintiffs are Hispanic.

5       12.    Many park residents, like Rutilio and Martha Zamora, Irene Cruz, and Ma

6   Anita Brito-Mungia, have young children living with them at home.

7       13.    The mobile home park is owned and operated by Defendant Fife Motel,

8   Inc. ("Fife").

9       14.    The mobile home park was purchased by Fife in October of 2007.

10       15.    Fife does business in SeaTac as the Firs Mobile Home Park.

11       16.    Fife is presently governed by Jong Soo Park, among others.

12       17.    Plaintiffs rent space for their mobile homes from the Defendant.

13       18.    They pay a monthly rent for their space.

14       19.    The rent varies by household but ranges between $450 and $500.

15       20.    Each lot is subject to a written lease that either identifies a Plaintiff as the

16   homeowner or was assigned to a Plaintiff that is the homeowner.

17       21.    Each lease contains substantively identical provisions that purport to

18   absolve the Defendant of certain duties and waive Plaintiffs' rights to due process.

19       22.    For instance, after the initial one-year rental term, Plaintiffs' leases

20   purport to convert the rental term into a month-to-month tenancy.

21       23.    The leases also purport to waive the Defendant's obligation to offer

22   Plaintiffs a new lease term annually.

23       24.    These provisions are invalid under the Mobile Home Landlord Tenant

24   Act, Chapter 59.20 RCW and *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs.*, LLC,

25   134 Wn. App. 210 (2006).

26

SECOND AMENDED COMPLAINT- 3
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

25.     Most of the leases at issue also obligate the Defendant to pay for Plaintiffs' water and sewer charges.

26.     But the Defendant breached these lease terms and for the last several years has billed Plaintiffs for water and sewer charges.

27.     Even though the Defendant was not allowed to impose these charges, Plaintiffs believed they had to pay them and did so.

28.     The Defendant also increased Plaintiffs' monthly rent without providing the required three-months' notice under RCW 59.20.090(2).

29.     Their rents were raised in the middle of their lease terms contrary to RCW 59.20.090(2).

30.     Since acquiring the park, the Defendant has failed to fulfill other statutory duties under the MHLTA, including maintaining and protecting homeowners' utility connections as required under RCW 59.20.130(6).

31.     For instance, after receiving notification that there were issues with electrical connections in common areas through no fault of the homeowners, Defendant refused to repair electrical breakers and other equipment for which the Defendant was responsible.

32.     On one occasion, Defendant's inaction resulted in Plaintiff Nallelica Zamora losing power for more than two weeks.

33.     Additionally, after receiving notification that there were issues with sewer connections and pipes in common areas through no fault of the homeowners, Defendant forced Plaintiff Eduardo Vazquez Vite to repair utility lines for which the Defendant was responsible.

34.     Also, after receiving notification that there was damage to electrical connections to Plaintiff Uriel Zamora's unit, Defendant told Plaintiff that he would

SECOND AMENDED COMPLAINT- 4
(NO. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   receive free rent if he fixed it himself, but after Plaintiff did so, Defendant reneged and

2   then pledged to sue Plaintiff if he did not keep his rent current.

3          35.    In these cases, and others, the Defendant refused to repair utilities for

4   which it was responsible, told Plaintiffs to fix the problem, and then refused to credit

5   their contributions to their rent or otherwise.

6          36.    Defendant's inaction on these and other utility issues despite its

7   knowledge of them has caused Plaintiffs injury and damages.

8          37.    When Plaintiffs and other homeowners have raised issue with third party

9   utility providers, they have been told that problems involved issues with utilities in

10  common areas for which the Defendant is responsible.

11         38.    Defendant has also failed to maintain roads within the mobile home park

12  in good condition as required by RCW 59.20.130(9) and failed to maintain common

13  premises to prevent the accumulation of stagnant water under RCW 59.20.130(2).

14         39.    Drainage in common areas is not functional and causes large pools of

15  water to develop, impairing ingress and egress.

16         40.    Defendant's inaction has resulted in the occasional overflow of sewage

17  and wastewater into common areas and beyond.

18         41.    Defendant has also failed to ensure the park is adequately protected

19  from fires and other damage.

20         42.    For instance, Defendant has refused to implement and install basic fire

21  safety protection, including a water source within the park.

22         43.    Defendant's failure to implement and install basic fire safety protections

23  has created significant risk to Plaintiffs and their property.

24         44.    Defendant has also refused to maintain trees and other vegetation and

25  growth in common areas.

26

SECOND AMENDED COMPLAINT- 5
(No. 18-2-06771-5 SEA)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

45.    Defendant's inaction has required Plaintiffs and other homeowners to trim, prune, and remove trees and other vegetation in common areas.

46.    Defendant has also failed to maintain the security of common areas containing Plaintiffs' mailboxes.

47.    Defendant has refused to repair windows surrounding Plaintiffs' mailboxes and refused to repair broken mailboxes, permitting easy access to unauthorized third parties.

48.    Some residents have had their mail stolen and others do not use them at all.

49.    Defendant has also failed to exterminate or make reasonable efforts to exterminate rodents, vermin, and other pests in common areas and throughout the park that are dangerous to the health and safety of Plaintiffs.

50.    Defendant's inaction has limited Plaintiffs' ability to use common areas and caused them to fear for the health and safety of their children going to and from school.

51.    Mr. Park publicly admitted to *The Seattle Times* in an article published on or about March 10, 2018, that he has abdicated fundamental duties under the MHLTA: "It [the park] is too old and not safe."

52.    Despite the Defendant's abdication of its statutory duties, Plaintiffs have invested considerable resources in their mobile homes and their mobile home park community.

53.    Plaintiffs, like most park residents, work in the service sector and some own small businesses.

54.    Many work multiple jobs for long hours to make sure they keep their bills paid, rent current, and children cared for.

SECOND AMENDED COMPLAINT- 6
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

55.     Through hard work and dedication, homeowners purchased their homes and made significant improvements to the interior and exterior.

56.     For instance, Plaintiffs added fixtures to the property like porches, garages, and storage sheds.

57.     But in 2016, to Plaintiffs' surprise, Defendant began its efforts to demolish the mobile home park and claimed that it would erect a hotel and apartments on the site.

58.     The Defendant filed an application for approval to relocate park residents with the City of SeaTac on May 27, 2016.

59.     SeaTac's Municipal Code, under § 15.465.600(H)(1)(c), required the Defendant's plan to include a list of relocation options in King and Pierce counties, a description of those options, low-cost apartment options in King County, information from banks concerning first-time buyer programs, information about options from King County or nonprofit entities, and information about mitigation funds from the Port of Seattle.

60.     A relocation plan must be delivered to all homeowners "prior to or coincident with the minimum twelve (12) month notice of intent to close the park." SMC § 15.465.600(H)(2)(h).

61.     The applicant must also provide the City of SeaTac with a monthly report indicating which homeowners remain in the park, which spaces have been vacated together with a description of the destination of vacating homeowners and housing obtained.  SMC § 15.465.600(H)(2)(j).

62.     The ordinance also states that mobile home park "shall not be closed" prior to the issuance of a certificate of satisfactory completion from the City of SeaTac. SMC § 15.465.600(H)(2)k).

SECOND AMENDED COMPLAINT- 7
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

63.     Under this provision, a relocation plan will be deemed satisfactorily implemented only when the plan's stated actions have been implemented and when all homeowners have relocated.

64.     On October 17, 2016, the City of SeaTac approved Defendant's relocation plan subject to the city's code.

65.     Contrary to the code's requirements, however, the Defendant attempted to close the park prior to the issuance of a certificate of satisfactory completion.

66.     The Defendant took actions to secure the removal of all residents from the mobile home park and to demolish their homes, improvements, and equity.

67.     The Defendant posted a public notice in the park indicating that it would no longer accept monthly lease payments and that it would no longer manage the park.

68.     The Defendant also allegedly posted and mailed notices to homeowners indicating that their leases would terminate the following year, on October 31, 2017.

69.     Although the MHLTA requires personal service, RCW 59.20.150(1)(a), the Defendant did not personally serve many residents of the park.

70.     The MHLTA allows alternative service only if the homeowner is "absent."

71.     Some park residents, including Plaintiff Martha Zamora was not "absent" when the Defendant alleged personal service was attempted.

72.     She recalls seeing people walking around with a video camera and thought it was strange.

73.     In other cases, the Defendant failed to effectuate alternative service under RCW 59.20.150(1)(b).

74.     For instance, the Defendant did not effectuate alternative service upon Plaintiffs Eduardo Vazquez Vite or Uriel Zamora.

SECOND AMENDED COMPLAINT- 8
(No. 18-2-06771-5 SEA)

75.     Defendant also failed to provide Plaintiffs with notice that it did not intend to renew their leases one month prior to the expiration of their rental agreements as required under RCW 59.20.090(3).

76.     When Plaintiffs and other residents of the mobile home park were informed that the Defendant intended to close the park down, they feared that removal from the site would force them and their families into homelessness.

77.     Relocating their mobile homes is not an option because the cost of moving a mobile home to a new location exceeds its fair market value.  A mobile home is a manufactured home that generally is moved only once:  From the factory to the initial site, where it is installed, connected to utilities, and becomes a fixture on the land.  Mr. Park's proposed closure had the immediate practical effect of reducing or eliminating the value of the homes located in the Firs Mobile Home Park, since potential homebuyers would be unwilling to purchase a mobile home in a mobile home park slated for closure.   Mr. Park's intent to close the Firs Mobile Home Park destroyed the Firs Homeowners investment and home equity.

78.     Facing a total loss of their homes and community, Plaintiffs organized with other Firs residents and established the Firs Home Owners Association ("HOA").

79.     The HOA's members challenged the Defendant's relocation plan and appealed the City of SeaTac's decision approving the relocation plan.

80.     The appeal was denied by the SeaTac Hearing Examiner on February 22, 2017.

81.     The HOA then petitioned for review under the Land Use Petition Act, Chapter 36.70C RCW ("LUPA").

82.     In June, King County Superior Court Judge LeRoy McCollough heard oral argument in the LUPA action and reversed the Hearing Examiner's decision.

SECOND AMENDED COMPLAINT- 9
(No. 18-2-06771-5 SEA)

BRESKIN ╏ JOHNSON ╏ TOWNSEND ᴾᴸᴸᶜ
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

83.     While the LUPA action was pending, Defendant attempted to coerce and intimidate Plaintiffs and other park residents into agreeing to a relocation plan that paid each household $2,000 and released and waived any and all federal, state, or local claims that any member of the household could bring against the landlord.

84.     The Defendant threatened to retaliate against park residents who were involved in the HOA and participating in the LUPA case by promising to evict them immediately unless they entered into the relocation plan that would waive their claims under LUPA.

85.     The Defendant's threat to evict homeowners immediately did not acknowledge that self-help is illegal in Washington.

86.     The Defendant's threat to evict homeowners immediately also did not acknowledge that a court order granting restitution of the premises to the landlord is a pre-condition to repossession of property.

87.     On November 21, 2017, Defendant filed unlawful detainer actions against several homeowners, including Plaintiff Uriel Zamora and Plaintiff Nallelica Zamora.

88.     Uriel Zamora and Nallelica Zamora are members of the HOA and are involved in the LUPA action.

89.     Defendant initiated these actions in the middle of the Plaintiffs' lease terms in violation of RCW 59.20.050(1), 59.20.060(2)(d), RCW 59.20.090(1).

90.     On December 1, 2017, Defendant posted another notice in the mobile home park.

91.     The notice stated that to avoid an eviction, residents "must sign the relocation agreement (will get $2,000)."

SECOND AMENDED COMPLAINT- 10
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

92.     The notice indicated that if residents signed the relocation agreement, and agreed to waive and release any and all claims against the landlord, they could remain living in the mobile home park until March 31, 2018.

93.     However, if residents refused to sign the relocation agreement, they would "be evicted right away."

94.     A copy of the relocation agreement was also posted.

95.     The agreement made clear that residents must release and waive any and all claims against the landlord under federal, state and local law.

96.     Mr. Park also harassed, intimidated, and bullied residents who refused to sign the Defendant's relocation agreement.

97.     On December 5, Mr. Park sent a text message to residents stating that to "avoid eviction you have to sign the relocation agreement by December 10[.]"

98.     On December 7, residents who refused to sign the relocation agreement received a letter from Defendant stating that "I have no choice but to begin the eviction process.  To avoid eviction you have to sign the Relocation Agreement."

99.     The letter stated that if the resident signed the relocation agreement, "You will be allowed to stay until March 31, 2018 and if the closing date delayed in certain situation, you can stay until new closing date."

100.    The letter continued, "We have taken all necessary legal steps and the Firs Mobile Home Park will close eventually regardless of what your attorney says or does….  Once you receive the eviction notice from my attorney, you will be evicted and have to pay all the legal fees and expenses according to the lease agreement."

101.    The Defendant targeted specific residents it knew were involved in the homeowners association and active in the LUPA case.

102.    For instance, Plaintiff Martha Zamora was approached by Mr. Park in December.

SECOND AMENDED COMPLAINT- 11
(NO. 18-2-06771-5 SEA)

BRESKIN ¦ JOHNSON ¦ TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    103.   Martha Zamora is married to Rutilio Zamora, a member of the HOA
2    board and active in the LUPA litigation.

3    104.   Mr. Park demanded that Martha Zamora sign the Defendant's proposed
4    relocation plan.

5    105.   When Mrs. Zamora refused, Mr. Park told Mrs. Zamora, "I am going to
6    evict your ass."

7    106.   This threat was made in front of Mrs. Zamora's daughter.

8    107.   Plaintiff Ma Anita Brito-Munguia was also approached by Mr. Park.

9    108.   Mr. Park stated that if she did not sign the relocation agreement, he
10   would have the sheriff out in two days to forcibly remove her from the property.

11   109.   Mr. Park had not in fact even sued Ms. Brito-Munguia yet.

12   110.   But two days later, on or about December 14, 2017, Defendant filed a
13   lawsuit against her.

14   111.   Mr. Park attempted to pressure other Plaintiffs by showing up at their
15   doors late in the evening and demanding they agree to the proposed relocation plan.

16   112.   For instance, Mr. Park showed up at the homes of Mr. Vazquez Vite and
17   Ms. Cruz late one evening in December and attempted to intimidate them into signing
18   his relocation plan.

19   113.   When they refused, Mr. Park threatened them.

20   114.   He told Mr. Vazquez Vite that he had made a "bad choice."

21   115.   The Defendant then brought unlawful detainer actions against Mr.
22   Vazquez Vite, Irene Cruz, and Martha and Rutilio Zamora

23   116.   Each of the lawsuits named not only those members of the HOA and
24   individuals that were participating in the LUPA action, but they targeted the HOA's
25   governance and leadership structure.

26   117.   Rutilio Zamora is the board vice president.

SECOND AMENDED COMPLAINT- 12
(NO. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

118.   Ma Anita Brito-Munguia is the treasurer.

119.   Irene Cruz is a member of one of the board's committees.

120.   Other Plaintiffs are related to members of the HOA's governance and leadership structure.

121.   Defendant initiated these actions in the middle of the Plaintiffs' lease terms in violation of RCW 59.20.050(1), 59.20.060(2)(d), RCW 59.20.090(1).

122.   Even after filing suit, Defendant continued threatening and intimidating park residents.

123.   On December 17, the Defendant sent another letter to park residents.

124.   This letter contained the same threats as those in the previous correspondence.

125.   The eviction lawsuits were retaliatory for Plaintiffs' participation in a homeowners association and filing and prosecuting a Land Use Petition Act lawsuit in violation of RCW 59.20.070(5).

126.   The Defendant also retaliated against Plaintiffs by sporadically shutting off their access to water within the park.

127.   For instance, between December and February, Plaintiffs estimate the water being shut off on approximately four occasions.

128.   On each of these occasions, water was shut off without providing Plaintiffs' notice.

129.   On each of these occasions, the water was shut off for three to six hours.

130.   Mr. Park also blocked off the doors and windows of the home in which Mr. Vazquez Vite's mother was living.

131.   He claimed it was necessary to effectuate relocation.

SECOND AMENDED COMPLAINT- 13
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

132.   Plaintiffs have suffered and continue to suffer injury and damages as a result of Defendant's conduct, including distress, anguish, anxiety, annoyance, irritation, discomfort, and fear.

133.   Defendant's conduct deprived Plaintiffs' of the right to due process and the opportunity to negotiate new lease terms.

134.   Defendant's conduct unreasonably interfered with Plaintiffs' use and enjoyment of real property.

135.   Defendant's conduct impaired Plaintiffs' ability to work and/or operate their businesses.

136.   Defendant's conduct also prejudices Plaintiffs' ability to relocate in the future.

137.   Defendant's conduct makes relocation more expensive for Plaintiffs by requiring them to submit more rental applications and associated fees to prospective landlords and many landlords will not consider a new tenant's application if that tenant was a defendant in an unlawful detainer / eviction action in the past.

138.   Defendant's conduct makes relocation more expensive for Plaintiffs by requiring them to submit increased sums for a deposit or security.

139.   Plaintiffs continue to suffer distress, anguish, anxiety, annoyance, irritation, discomfort, and fear.

## V.      CLAIMS

**A.      Cause of Action I: Violations of Washington Law Against Discrimination**

140.   The allegations set forth above are incorporated herein.

141.   On December 20, 2017, an attorney for Martha Zamora sent a letter to Defendant's counsel asking that the Defendant reasonably accommodate her disability.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

142.   Mrs. Zamora was trying to recover from a recent procedure on her kidneys.

143.   The letter requested accommodation by dismissing the unlawful detainer action against her without prejudice.

144.   In February 21, 2018, an attorney for Brito Munguia sent letters to Defendant's counsel asking the Defendant reasonably accommodate her sons' disabilities.

145.   Ms. Brito Munguia's sons, Bryan and Angel, both suffer from autism.

146.   The letter requested accommodation by dismissing the unlawful detainer actions against her without prejudice.

147.   In both cases, the Defendant was provided with notice and proof of the disability.

148.   However, in both cases, the Defendant refused to engage in an interactive process with anyone.

149.   The Defendant did not discuss whether a reasonable accommodation could be achieved.

150.   The Defendant also refused to offer any alternatives or otherwise propose potential accommodations to the disabilities identified.

151.   The Defendant's conduct caused significant emotional distress, anguish, anxiety, and fear to Mrs. Zamora and Ms. Brito Munguia's sons.

152.   The Defendant's conduct impaired Mrs. Zamora's recovery from kidney surgery.

153.   The Defendant's conduct worsened and increased the symptoms from autism suffered by Ms. Brito-Munguia's sons.

SECOND AMENDED COMPLAINT- 15
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

154.    Defendant violated the Washington Law Against Discrimination ("WLAD"), Chapter 49.60 RCW et seq., by discriminating against Mrs. Zamora and Ms. Brito-Mungia's sons based on their disabilities.

155.    Defendant violated the WLAD by refusing to take steps reasonably necessary to accommodate the disability of Martha Zamora and Ms. Brito-Munguia's sons.

156.    Defendant violated the WLAD by refusing to engage in the interactive process with Martha Zamora and Ms. Brito-Munguia.

157.    Defendant also violated the WLAD by refusing to negotiate with Plaintiffs and other members of the HOA regarding a purchase of the mobile home park.

158.    Plaintiffs and other members of the HOA have requested the Defendant negotiate in good faith regarding a purchase of the mobile home park.

159.    Plaintiffs and other members of the HOA have obtained support from various local and state public entities to facilitate a potential purchase of the mobile home park.

160.    Support from various local and state public entities include an allocation from the Legislature in the form of a grant up to $2.5 million.

161.    Under the SeaTac Municipal Code, the Defendant must give Plaintiffs and their neighbors the right of first refusal in purchasing the property.    *See* 15.465.600(H)(2)(i).

162.    Nonetheless, Defendant refuses to negotiate with Plaintiffs and other members of the HOA because they are Hispanic and/or are from Latin American countries.

SECOND AMENDED COMPLAINT- 16
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

163.    As a direct and proximate cause of Defendant's practices, Plaintiffs suffered injury and damages in an amount to be proven at trial.

**B.    Cause of Action II: Violations of the Consumer Protection Act**

164.    The allegations set forth above are incorporated herein.

165.    Defendant's conduct as set forth above violates the Mobile Home Landlord-Tenant Act, Chapter 59.20 RCW et seq.

166.    Defendant's acts and practices were not performed in good faith under the Mobile Home Landlord-Tenant Act, Chapter 59.20 RCW et seq.  RCW 59.20.020.

167.    Defendant's rights were not enforced in good faith under the Mobile Home Landlord-Tenant Act, Chapter 59.20 RCW et seq.  RCW 59.20.020.

168.    Defendant's failure to perform acts in good faith precludes relief under the Mobile Home Landlord-Tenant Act, Chapter 59.20 RCW, et seq.  RCW 59.20.020.

169.    Defendant's failure to comply with provisions under the MHLTA, Chapter 59.20 RCW, may form the basis of an unfair and deceptive practices claim under the Consumer Protection Act, Chapter 19.86 RCW.

170.    Defendant's failure to comply with provisions under the WLAD, Chapter 49.60 RCW, including the duty to reasonably accommodate and engage in the interactive process, may form the basis of an unfair and deceptive practices claim under the Consumer Protection Act, Chapter 19.86 RCW.

171.    Defendant's failure to comply with the SeaTac Municipal Code and the Defendant's own relocation plan was unfair and deceptive under the Consumer Protection Act, Chapter 19.86 RCW.

172.    Defendant's acts and practices as set forth in this complaint were unfair and deceptive under the Consumer Protection Act, Chapter 19.86 RCW.

173.   Defendant's acts and practices occurred in the conduct of Defendant's trade or commerce.

174.   Defendant's acts and practices adversely impact the public interest and have injured Plaintiffs and have the capacity to injure other persons.

175.   Defendant's acts and practices proximately caused injury to Plaintiffs.

176.   As a direct and proximate result of Defendant's acts and practices, Plaintiffs suffered injuries and seek damages in an amount to be proved at the time of trial.

## C.   Cause of Action III: Intentional Infliction of Emotional Distress

177.   The allegations set forth above are incorporated herein.

178.   Defendant's conduct goes beyond all bounds of decency and is otherwise intolerable in a civilized society.

179.   As a direct and proximate cause of Defendant's practices, Plaintiffs suffered severe emotional distress, injury, and damages in an amount to be proven at trial.

## D.   Cause of Action IV: Nuisance

180.   The allegations set forth above are incorporated herein.

181.   Defendant's conduct violated Chapter 7.48 RCW by causing injury to Plaintiffs' health, offending their senses, obstructing their free use of property, and interfering with Plaintiffs' use and enjoyment of life and property.

## E.   Cause of Action V: Joint Venture and Dissolution

182.   The allegations set forth above are incorporated herein.

183.   A joint venture requires an express or implied contract; a common purpose; a community of interest; and equal right to a voice, accompanied by an equal right to control.

SECOND AMENDED COMPLAINT- 18
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

184.   Plaintiffs and Defendant have an implied contract to protect their own property interests through tenancy.

185.   To protect and effectuate each other's rights, Plaintiffs, their homeowner neighbors, and Defendant are required to communicate, negotiate in good faith, and cooperate.

186.   The Defendant's failure to communicate, negotiate in good faith, and cooperate with Plaintiffs and their homeowner neighbors is an abdication of its duties.

187.   In refusing to accept further lease payments after October 31, 2017, the Defendant breached its duties under law and dissolved the joint venture between the homeowners and the landowner of the park.

188.   To avoid dissolution of the joint venture, the Plaintiffs intend to seek relief that will allow them to exercise rights under Washington law that may include assuming management of the mobile home park, terminating Defendant for substantial failure to performing its duties, and purchase the mobile home park.  *See* Chapter 25.05 *et seq.* and *Malnar v. Carlson*, 128 Wn.2d 521 (1996).

## VI.   DAMAGES

189.   As a result of the forgoing, the Plaintiff has suffered injury and damages, including economic loss and emotional distress.

## VII.   REQUEST FOR RELIEF

190.   Defendant's wrongful conduct described above has caused the Plaintiffs damages for which Plaintiffs seek judgment against Defendant awarding Plaintiffs the following forms of relief:

(a)   An injunction under the Consumer Protection Act that precludes the Defendant from committing further unfair and deceptive acts against Plaintiffs and their neighbors in the Firs Mobile Home Park Community

SECOND AMENDED COMPLAINT- 19
(No. 18-2-06771-5 SEA)

1    (b)    An award of all actual, general, and special damages that are
2    established at trial;

3    (c)    An abatement of rental amounts paid in excess of the diminished
4    rental value of mobile home spaces as well as compensation for all amounts paid
5    contrary to statute and/or Plaintiffs' leases;

6    (d)    Treble damages pursuant to the Consumer Protection Act
7    ("CPA"), Chapter 19.86 RCW;

8    (e)    Compensation for emotional distress;

9    (f)    An award of costs, including actual and reasonable attorneys' fees
10    and litigation expenses as provided by law under the WLAD, Chapter 49.60 RCW
11    ("WLAD") and the CPA, Chapter 19.86 RCW;

12    (g)    Out-of-pocket and investigative expenses;

13    (h)    Pre-judgment interest on all amounts awarded as allowed by law;

14    (i)    Post-judgment interest;

15    (j)    A supplemental award to cover any adverse tax consequences of
16    the judgment; and

17    (k)    Such other equitable, legal, or additional relief as may be
18    appropriate and just.

19    DATED:  August 9, 2018.

20    BRESKIN JOHNSON TOWNSEND, PLLC

21    By:___*/s/ Brendan W. Donckers*
22    Brendan W. Donckers, WSBA #39406
      Roger M. Townsend, WSBA #25525
23    1000 Second Avenue, Suite 3670
      Seattle, WA 98104
24    Tel:  (206)652-8660
      Fax: (206)652-8290
25    bdonckers@bjtlegal.com
      rtownsend@bjtlegal.com
26    *Attorneys for Plaintiffs*

SECOND AMENDED COMPLAINT- 20
(No. 18-2-06771-5 SEA)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury under the laws of the State of Washington that on this date I filed the foregoing document with the Clerk of the Court using the court's efiling system and had it served on the following counsel of record, in the manner indicated:

Francis S. Floyd                                    *Via Email by agreement*
Thomas W. Stone
FLOYD, PFLUEGER & RINGER, P.S.
ffloyd@floyd-ringer.com
tstone@floyd-ringer.com

                                                   *Via Email by agreement*
Walter H. Olsen, Jr.
B. Tony Branson
Olsen Law Firm PLLC
walt@olsenlawfirm.com
tony@olsenlawfirm.com

Dated August 9, 2018, at Seattle, Washington.


                                   *s/Leslie Boston*
                                   Leslie Boston, Legal Assistant

SECOND AMENDED COMPLAINT- 21
(No. 18-2-06771-5 SEA)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660