# EXHIBIT 15

# CITY OF SEATAC
# DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT
# 4800 SOUTH 188TH STREET
# 206-973-4750

## STAFF REPORT

**FILE NUMBER:** APL16-0001

**ACTION:** Appeal of an Administrative Decision

**APPELLANT:** Crisanto Medina
20440 International Blvd., Space 62
SeaTac, WA 98198

**REPRESENTED BY:** Vicente Omar Barraza
Barraza Law, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166

**SUBJECT:** Appeal of the decision of the Acting Community and Economic Development Director to approve a Mobile Home Park Relocation Plan for The Firs Mobile Home Park, pursuant to SeaTac Municipal Code 15.465.600.H.2.f.

**PROPERTY LOCATION:** 20440 International Boulevard

**LEGAL DESCRIPTION:** West 178 ft. of Tracts 17 & 24 and that portion of Tract 23 lying easterly of state highway, Homestead Park 5 Acre Tracts

**APPLICANT:** Fife Motel, Inc.
706 Marine Hills Way
Federal Way, WA 98003

**HEARING DATE:** January 5, 2017 at 6:00 PM

1 | Page

FIRSMBL0123

## I. BACKGROUND

Fife Motel, Inc. is the owner of The Firs Mobile Home Park, located at 20440 International Blvd. Pursuant to SeaTac Municipal Code (SMC) 15.465.600.H, a Relocation Plan was prepared and submitted to the Community and Economic Development (CED) Department for review and approval. This is a City requirement that does not supplant the process required by State law (RCW 59.20 and 59.21), which is administered by the Washington State Office of Manufactured Housing, a division of the Department of Commerce.

An environmental checklist was required for this proposed action and a SEPA Determination of Nonsignificance was issued on July 22, 2016. No appeals of the SEPA action were filed.

The Relocation Plan was approved by the Acting CED Director on October 17, 2016.

An appeal of the Director's decision was filed on October 31, 2016, within the 14-day appeal period. Supplemental materials were received on November 18, 2016, within the required 21-day time period.

## II. FINDINGS OF FACT

| | | |
|---|---|---|
| A. | Date draft Relocation Plan received: | May 27, 2016 |
| B. | SEPA Determination issued: | July 22, 2016 |
| C. | Final draft Relocation Plan received: | October 7, 2016 |
| D. | Relocation Plan approved: | October 17, 2016 |
| E. | Notice of approval mailed: | October 17, 2016 |
| F. | Appeal filed: | October 31, 2016 |
| G. | Supplemental materials received: | November 18, 2016 |
| H. | Comprehensive Plan designation: | Commercial High Density |
| I. | Zone classification: | CB-C (Community Business – Urban Center) and UH-900 (Urban High Density) |
| J. | Current Use of Property: | 66 unit mobile home park |

2 | Page

## III. APPLICABLE SEATAC CODE

| | |
|---|---|
| SMC 15.465.600.H | Mobile Home Park Relocation Standards |
| SMC 15.465.600.H.1 | Required Elements of the Mobile Home Park Relocation Plan |
| SMC 15.465.600.H.2 | Required Process |
| SMC 16A.17.030 | Appeal of Administrative Interpretations, Approvals and Project Permit Decisions |

## IV. CONFORMANCE WITH SMC 15.565.600.H.1

SMC 15.465.600.H.1 specifies the required elements of a mobile home park Relocation Plan, hereinafter referred to as "the Plan".

   a. Inventory: Attachments D to the Plan contain confidential information that addresses the park tenants (age and years of residency); the age and condition of individual mobile homes; and costs of pad rental. Staff determined that other personal information listed in (a.iii) was not pertinent to its analysis and the City's role in the mobile home park closure by the owner.

   b. Environmental conditions: An environmental checklist was submitted with the Plan and a Determination of Nonsignificance was issued on July 22, 2016.

   c. Options: Attachment A to the Plan includes a list of other mobile home parks near The Firs. Attachment B to the Plan lists affordable and low-income housing in the area. The initial version of the Plan included listings from well-outside the local area (as far away as Lewis and Whatcom counties); staff directed that the scope be reduced to local listings where the residents could potentially relocate while maintaining their current employment.

   Also included in Attachment B of the Plan is information regarding Washington State Housing Authorities, as is contact information for local resources such as the Seattle Housing Authority, El Centro de la Raza, etc. and a listing of financial institutions and programs that provide assistance to lower income and first-time homebuyers and information regarding the State of Washington's Office of Manufactured Housing's program, in both English and Spanish.

> This park is not located in an area impacted by the Port of Seattle, so the Plan does not address information regarding Port noise mitigation funds and "advisory assistance."
>
> d. Choices: Page 8 of the Plan notes that "at the open house and in individual meetings, residents indicated the areas they would be willing to relocate." Staff determined this to be sufficient to meet the purpose of this standard.
>
> e. Anticipated Timing: The park owner indicated intent to close the park by mid-2017. The official date is established when the park owner notifies the State Office of Manufactured Housing; this occurred on October 31, 2016, which means the park cannot close prior to October 31, 2017.
>
> f. Coordination Plans or Actions: The Plan includes information and forms regarding the State of Washington's process for relocation assistance; indicates the park owner's relocation specialist will assist with "filling out and submitting apartment and low-income and affordable housing paperwork"; help connect tenants with mobile home movers or demolition companies; and identifies the relocation specialist (Ms. Kerry Lynch) and provides contact information.

## V. RESPONSE TO BASIS OF APPEAL

On November 17, 2016, the appellant timely provided supplemental materials to the appeal initially filed on October 31, 2016. The following addresses the issues raised in that letter.

A. Incorrect Notice of Approval.

> The appellant states that the October 17, 2016 Notice of Approval cites a non-existent SeaTac Municipal Code reference.
>
> **Response:** It is true that there was a scrivener's error contained in the notice of approval dated October 17, 2016, the Certificate of Approval dated October 17, 2016 and the Relocation Report and Plan, in that they cite SMC 15.464.600.H.2.f, instead of SMC 15.465.600.H.2.f.
>
> The first time this scrivener's error was brought to the City's attention was when this appeal was filed. It is important to note that the existence of this scrivener's error did not prejudice the appellant in any manner whatsoever.
>
> Specifically, the appellant has been able to accurately cite the applicable code provision throughout his appeal documentation.

4 | Page

B. Inadequate Plan.

1. *Misleading or Incomplete Information About Reimbursement.*

    a. The appellant alleges that the State cannot reimburse expenses to individual mobile homeowners that exceed "the amount allotted for either the move or demolition of the home."

    **Response:** The Plan states "if there is still money left in the amount allotted for either the move or demolition of the home, it is available to the homeowner based upon receipts provided to the State that document the expenditures."

    Attachment F to the Plan contains a list of allowable expenses that may be reimbursed by the Washington State Office of Manufactured Housing, pursuant to WAC 365-212-060.

    b. *The appellant also alleges that the Plan "does not make clear whether households living in RVs that are also park models will receive relocation assistance."*

    **Response:** On Page 3, under Section 2.b, the Plan notes that the "Washington State Attorney General has determined that the following homes do not qualify for state assistance: travel trailers, *recreational vehicles*, buses or *park models* and stick homes." (emphasis added)

    c. *The appellant also states that the language contained on Page 3, paragraph 2a is "vague" regarding the amount of relocation funding the owners of homes with tip-outs may receive.*

    **Response:** On Page 3, Section 2.a, the Plan indicates these homeowners are eligible for up to $12,000 in assistance.

    [Note: SeaTac Municipal Code does not require the Relocation Plan to address the State of Washington's financial assistance program. Therefore, these issues are outside the scope of this appeal.]

2. *Inadequate Service of Revised Relocation Plan.*

    The appellant states that "the owners neglected to (1) hand deliver the Relocation Plan to all residents; or (2) properly serve the Plan in accordance with the requirements of RCW 59.21.030."

    **Response:** The appellant appears to be confusing the City of SeaTac's process with that required by the State of Washington (note that RCW 59.21.030 is cited).

5 | Page

SMC 15.465.600.H.2.h requires the Plan to be delivered "prior to or coincident with the minimum twelve (12) month notice of intent to close the park." According to an affidavit received from the park owner's attorney after approval of the Plan, a representative of the owners attempted to deliver a copy of the approved Plan to all residents between October 25 and 30, 2016 (see Exhibit 3). Since this service and/or attempted service date occurred subsequent to the approval of the Plan, it was not possible for the Acting CED Director to ascertain compliance with this process question at that time. This timing issue renders this issue outside the scope of the appeal.

3. *Accelerated Timeline.*

The appellant states that the Relocation Plan "unlawfully accelerates the closure timeline and implies that families should move before the end of the twelve-month period."

**Response:** As in #2, above, the appellant appears to be mingling the State of Washington requirements with those of the City of SeaTac, citing RCW 59.20.080 as a basis for this complaint. The referenced May 8, 2016 letter (see Exhibit 4) does not constitute an official notice per State law and is not part of the Relocation Plan. Therefore, this issue is outside the scope of this appeal.

4. *Inadequate and Incomplete Inventory.*

a. The appellant states that "the landlord failed to comply with SMC 15.465.600.H.1.a when he sought information to prepare the required inventory because he failed to disclose the purpose of the inventory."

**Response:** While the forms used by the owner's representative did not include a declaration of intention to close the park, they did include a section to rate the mobility of the home in terms of relocation, a clear indication of the intention to proceed with a park closure.

b. The appellant alleges a failure to translate the form into Spanish. This is not required by the SeaTac Municipal Code. The Code does not require the owner to obtain data on the familial networks.

c. The appellant also alleges the landlord's relocation agent did not meet with each family. Pursuant to the Plan, the landlord's relocation agent did meet with each family. The City is not in possession of any evidence to the contrary.

FIRSMBL0128

5. *Inadequate Relocation Options.*

   The appellant makes a variety of statements regarding the usefulness of the information provided, given the largely Hispanic population of the park and the rents currently being charged.

   **Response:** The Plan provides a listing of various housing options within the area and at other locations, as required. This listing is a reflection of the information that was current at the time the Plan was written. It is inevitable that the information will likely change over time.

6. *Inadequate Housing and Relocation Choices.*

   The appellant states that the landlord did not request or obtain accurate information about the tenant's preference for future housing per SMC 15.465.600.H.1.d.

   **Response:** Page 5 of the Plan outlines relocation assistance that the landlord's relocation agent will be providing to tenants. On page 8, the Plan notes that "at the open house and in the individual meetings, residents indicated the areas they would be willing to relocate." Staff determined this was sufficient to meet the intent of SMC 15.465.600.H.1.d, as it provides the information to the appropriate party (the relocation agent).

7. *Age of Housing Stock.*

   The appellant expresses concern that the Plan "fails to consider the age of the homes in Firs MHP and fails to quantify the impacts on the net worth of the affected families."

   **Response:** The age of the units was collected as part of the Attachment D – Housing Information Sheets and is also readily available on the King County Assessor's website. City code does not require an analysis of the impact of park closure on the "net worth of affected families."

8. *Inadequate and Incomplete Communications in the Primary Language of the Majority of Households Residing at Firs MHP.*

   The appellant expressed concern that the landlord "has failed to provide certified interpreters and translators." Concern is also expressed about the Spanish-language version of the Plan (which was provided at the direction of staff), "lacks the completeness, specificity and precision of the English-language version."

FIRSMBL0129

**Response:** The City was not obligated to ensure a Spanish-language version of the Plan. However, in recognition of Spanish being the primary language of the majority of park residents, the owner was directed by City staff to provide a translated version. Staff then had that translation checked by a 3rd party translator, who then provided a retranslation from the original English version. This 3rd party retranslation version was sent to Ms. Lynch, who incorporated it in the final Plan. This retranslation version is the same version attached to Mr. Medina's appeal.

9. *School funding.*

    The appellant states concerns of loss of Title 1 funds to Madrona Elementary School due to a potential loss of Hispanic/Latino students.

    **Response:** Addressing this concern is beyond the required scope of the Relocation Plan. Therefore, this issue is outside the scope of this appeal.

10. *LEP Obligations.*

    Appellant alleges in his appeal that Title VI of the Civil Rights Act of 1964 obligates the City to provide Spanish language interpretation. Specifically, Appellant alleges that the City failed to provide the Relocation Approval Letter in Spanish, the City failed to provide SEPA related materials pertinent to the approval of the Relocation Plan in Spanish, and that the City failed to provide Spanish language interpreters at City Council meetings.

    **Response:** The applicability of Title VI of the Civil Rights Act of 1964 to the particular matter is unclear. Notwithstanding, although the approval letter was not submitted in Spanish, there was no obligation per City code to do so.

11. *Due Process.*

    The appellant states residents' due process rights were violated due to: (a) the SeaTac City Council's refusal to extend the appeal deadline and (b) that "many families did not receive notice of the approval of the Relocation Plan on or about October 25, 2016."

    **Response:** (a) The City Council does not have the authority to waive an appeal deadline on a case-by-case basis. (b) The Relocation Plan was approved on October 17, 2016 and notice was mailed to each address in the park on the same day. A few notices were returned as undeliverable, but the majority were presumably delivered on either October 18th or 19th. SMC 15.465.600.H.2.f is

silent as to whether the Director's decision to approve a Relocation Plan needs to be mailed to all park residents.

It should further be noted that a lack of extension of the appeal period did not prejudice the rights of the appellant. The appellant timely filed this appeal and timely filed the supplemental documents pertaining to this appeal.

## 12. *Approval of the Relocation Plan conflicts with the Comprehensive Plan.*

(a) The appellant makes numerous statements concerning the SEPA process. (b) The appellant also cites various policy statements from the City's Comprehensive Plan and also states that the City "may have approved a rezone" of the mobile home park in the last two years.

**Response:** (a) The time period for appealing the environmental determination made under SEPA expired in early August without an appeal being filed. Therefore, questions regarding SEPA compliance cannot be considered as part of this appeal action. (b) As noted, the City's Comprehensive Plan Land Use Map designates the entire Firs Mobile Home Park site as Commercial High Density, which supports the current split CB-C Community Business – Urban Center and UH-900 Urban High Density zoning. The proper venue for resolving questions regarding consistency of development regulations and comprehensive plans is the Growth Management Hearings Board, not the Hearing Examiner.

Housing and Human Services Goal 3.9 does not prevent a mobile home park from being closed. The intent of this goal and its subsidiary policies are met by and through the Relocation Plan process that has been followed. This goal does not address questions of notification as mentioned by the appellant.

## VI. Response to Conclusion Statement

The appellant requests the Examiner to overturn the City's approval of the Relocation Plan and also to overturn the SEPA determination. While the former action could be taken by the Examiner, since the appellant did not file an appeal of the SEPA determination, the second requested action is not possible.

FIRSMBL0131

## VII. Exhibits

1. Appeal received October 31, 2016
2. Supplemental Appeal packet dated November 17, 2016 (note: this includes the City's October 17, 2016 Certificate of Approval of the Firs Mobile Home Park Relocation Plan; October 17, 2016 transmittal letter; and a copy of the approved Relocation Plan dated October 17, 2016; *separate copies are not being provided*).
3. Declaration of Service/Posting of Relocation Plan dated November 22, 2016
4. Letter of May 8, 2016 from Ed Kim, Managing Partner, Fife Motel, Inc. to residents of Firs Mobile Home Park.
5. Amended Notice of Appearance from Vicente Omar Barraza dated December 19, 2016
6. Location Map

FIRSMBL0132