# EXHIBIT 19



# APPEAL OF ADMINISTRATIVE INTERPRETATION OR DECISION

The undersigned, as owner, occupant, applicant, or aggrieved party, hereby files this appeal of the administrative interpretation or administrative decision issued by the City of SeaTac on the __17th__ day of __October__, 20__16__, pertaining to property located at __20440 International Blvd.__ within the City of SeaTac. A copy of the interpretation or decision is attached.

I request a hearing before the City of SeaTac Hearing Examiner on this appeal.
In light of the decision in K&S Developments, please ensure a neutral hearing examiner is selected

I am the ☐ owner ☒ occupant ☐ applicant ☒ aggrieved party (check one). I am an aggrieved party because (explain how the Notice and Order affects you and will cause you injury-in-fact):

I am the President of the Firs Home Owners Association and own and occupy the manufactured home located at space 62 of 20440 International Blvd., in SeaTac, Washington. The decision to approve

will result in my family's forced relocation.

The following is/are the specific reasons I believe the administrative interpretation or decision is wrong and why the interpretation or decision should be reversed or modified: (Attach any necessary information or reports)
The relocation plan was approved under a municipal code which I cannot locate or which does not exist, the relocation plan is based on inadequate or incomplete information, the applicant did not follow proper or reasonable procedures, and the City neglected to fully consider impacts involving third parties and/or the City's own policy priorities. I will submit additional information within 21 days.

The above information and facts or issues are complete to the best of my knowledge.

Signature: *Crisanto Medina*

Print Name: CRISANTO MEDINA

Address: ▮▮▮▮▮▮▮▮▮▮
SeaTac, WA 98198

Phone:(H) ▮▮▮▮▮▮ (W) _____

Email: None

CITY OF SEATAC
RECEIVED
2016
CITY CLERK'S OFFICE

*************************************************************************

## CITY CLERK'S OFFICE USE ONLY

Date and time appeal filed: __10/31/16   12:30 pm__

Attachments: _____

Filing Fee: __$200.00__   Receipt No. __CLK05575__

Received by: *Kristina Gregg*

Z:\CityClerk\CityClerkAdministrativeFile\AppealForms\AdminInterpretationAppealProcessandFormRevised021015.docFebruary 2015

FIRSMBL0134

# CITY OF SEATAC
# PROCESS AND PROCEDURE FOR
# ADMINISTRATIVE INTERPRETATION OR DECISION
# APPEAL HEARINGS

1. To appeal an administrative interpretation or decision made by the City, the attached appeal form must be used.

2. The appeal form must be filled out completely. A complete copy of the interpretation or decision being appealed must be attached to the appeal form or the appeal will not be accepted.

3. The appeal must be filed with the City Clerk within fourteen (14) days of the date of decision or interpretation. Additionally, there is a fee required for filing the appeal, which must be paid at the time of filing. The fee is set in the City's Schedule of License Fees, Permit Fees, Other Fees and Charges for City Services.

4. Any additional reports, arguments, or briefs must be filed with the City Clerk within twenty-one (21) calendar days of filing the appeal.

5. Upon receipt of the appeal, the City will schedule a public appeal hearing before the Hearing Examiner. The hearing may take place 45 to 90 days after the end of the appeal period. Written notice of the date and time of the hearing shall be provided to the appellant at least thirty (30) days before the scheduled hearing date.

6. At least fourteen (14) days before the appeal hearing, the City will file a staff report providing facts and arguments in support of its interpretation or decision.

7. Two weeks prior to the hearing, a Public Hearing Appeal Notice will be posted and published in the newspaper, and adjacent property owners notified if required by City Code.

8. At the hearing, staff will present their findings and recommendations outlined in a staff report, the appellant will present reasons for appealing the decision, and the Hearing Examiner will allow public comment for or against the staff decision.

9. The Hearing Examiner reviews the staff report, appellant's written materials, and any testimony from the hearing, before rendering a decision. The Hearing Examiner's decision will be issued within ten (10) days of the date of the hearing.

10. The Hearing Examiner's decision may be appealed to the King County Superior Court or the City Council depending on the nature of the initial City action. Appeal information will be provided with the Hearing Examiner's decision.

Z:\CityClerk\CityClerkAdministrativeFile\AppealForms\AdminInterpretationAppealProcessandFormRevised021015.docFebruary 2015

FIRSMBL0135

Crisanto Medina

SeaTac, WA 98198

CITY OF SEATAC
RECEIVED

November 17, 2016

2016

10:55 am

City of SeaTac Hearing Examiner
C/O Steve Pilcher, Planning Manager
4800 S. 188th St
SeaTac, WA 98188-8605

Re: **Appeal of Revised Relocation Report and Plan for the Firs Mobile Home Park.**

On October 17, 2016, the City of SeaTac approved the Revised Relocation Report and Plan (dated October 7, 2016) ("Revised Relocation Plan") for the Firs Mobile Home Park. Please accept this supplemental correspondence in support of my pending appeal of the Revised Relocation Plan.

### I. Bases of Appeal

#### A. Incorrect Notice of Approval

The Notice of Approval dated October 17, 2016 cites a municipal code that does not exist. See Exhibit A.

#### B. Inadequate Plan

1. Misleading or Incomplete Information About Reimbursement

The paragraph at the top of page five of the Relocation Plan (as well as the Spanish-language version of the Plan) gives a false impression because it implies that the homeowner may retain the difference between what it costs to move the home and the maximum reimbursement allowed by the State. This is not true. Although the State may reimburse certain items beyond the moving costs, the State will not allow the homeowners to retain any unused funds. The Relocation Plan must be rewritten to provide accurate information to the homeowners, showing items the homeowner can cover with any balance of funds and stressing that the homeowner simply cannot pocket the balance – this paragraph, as written, is very misleading. See Exhibit B.

The third paragraph of page five of the Relocation Plan starting with the phrase "Other qualifying expenses" lacks clarity. For example, what does "Also costs of security and credit checks are hooking-up utilities" mean given that this phrase constitutes an incomplete sentence? See Exhibit B.

The Plan does not make clear whether households living in RVs that are also park models will receive relocation assistance.

Supplemental Submission in Support of Appeal of City of SeaTac, WA Approval of
Revised Relocation Plan for Firs Mobile Home Park – Page 1

Crisanto Medina

SeaTac, WA 98198

Page three, paragraph 2a regarding the 21 households with tip-outs is vague. How much relocation funding can these homeowners expect?

2. Inadequate Service of Revised Relocation Plan

Page six, paragraph three, states that "when the official 12-month notice of park closure is provided to all residents, it will be sent by registered mail and also hand-delivered to *all residents*" (emphasis added). Upon information and belief, the owner neglected to (1) hand-deliver the Relocation Plan to *all* residents; or (2) properly serve the Plan in accordance with the requirements of RCW 59.21.030. See Exhibit B.

Since June of 2016, there have been a number of break-ins in the mail room and many residents have lost their mail. SeaTac Police report C16058190 details damages to the mail boxes reported on November 14, 2016 and report C16057407 details damages to the mail boxes reported on November 9, 2016.

3. Accelerated Timeline

Page eight, paragraph six, states the Park "will close within 12 months." However, RCW 59.20.080 provides that "the landlord shall give the tenants twelve months' notice in advance of the effective date of such change." Thus, the tenants are entitled to at least 12 months of notice prior to closure. The phrasing of the Relocation Plan unlawfully accelerates the closure timeline and implies that the families should move before the end of the twelve-month period. See Exhibit B.

The landlord's attempts to accelerate the twelve-month timeline are evident in the May 8, 2016 letter (English only) from the landlord indicating a June 2017 closure date. The landlord's unlawful timeline created unnecessary anxiety and prompted some families to forfeit their rights and move out prior to the approval of the plan. The unlawful timelines published by the landlord appear to be designed to intimidate tenants and deprive them of their rights.

4. Inadequate and Incomplete Inventory

I believe that the landlord failed to comply with SMC 15.465.600 H.1.a. when he sought information to prepare the required inventory because he failed to disclose the purpose of the inventory pursuant to SMC 15.465.600 H.1.a.

The information collection instrument failed to provide the proper disclosures in English and should have been translated into Spanish given the demographics of the park.

Many of the families living in the different homes are related and share child care and other household functions. The forced relocation of the Firs families will shatter these family networks that these low-income families rely on to manage their lives. I believe that the City should require the owner to obtain data on the familial networks, if any,

Supplemental Submission in Support of Appeal of City of SeaTac, WA Approval of
Revised Relocation Plan for Firs Mobile Home Park – Page 2

FIRSMBL0138

Crisanto Medina

SeaTac, WA 98198

between the homeowners to properly gauge the impact of the relocation on these families and the community.

Finally, the Plan asserts that the landlord's relocation agent met with all of the families individually. The families dispute that the relocation representative met with each family and the inventory and demographic data provided by the landlord is compromised because of the failure to meet with each family.

5. Inadequate Relocation Options

The list of relocation options considered pursuant to SMC 15.465.600 H.1.c. was incomplete because it failed to take into account the market's handling of housing applications from persons of Hispanic descent who in some cases may lack a government-issued social security number.

In addition, some of the communities listed have rents far in excess of the $590/month currently being paid by Firs' homeowners. For instance, the rents at Kloshe Illahee in Federal Way are over $900/month. Just listing manufactured housing communities without giving any information about the number of possible vacancies they have, or the lot rent they charge, renders the list worthless.

In the list of communities, only Bonel will provide guaranteed security of tenure since it is owned by a non-profit. The landlord failed to make it clear to the residents that moving into any of the other communities could result in the homeowners getting a 12-month notice of closure the very next day!

In addition, why does the Relocation Plan provide the HUD income guidelines for Thurston, Kitsap, and Whatcom counties? It is highly unlikely that any of the homeowners from the Firs would choose to move tat far away from employment, schools, family and friends.

6. Inadequate Housing and Relocation Choices

I do not believe the landlord requested or obtained accurate information about tenant preferences pursuant to SMC 15.465.600 H.1.d.

I do not believe I received in writing in Spanish anything regarding the requirements of the mobile home relocation standards or the proposed timeline for the process.

7. Age of Housing Stock

The Plan approved by the City failed to fully consider the impacts of the park's closure. Many of the mobile homes in this park are grandfathered under preexisting codes and will not be accepted by other parks. Moreover, there are few, if any, spaces available to move to assuming the homes can be moved. Thus, the closure of this park will destroy

Supplemental Submission in Support of Appeal of City of SeaTac, WA Approval of Revised Relocation Plan for Firs Mobile Home Park – Page 3

FIRSMBL0139

Crisanto Medina

SeaTac, WA 98198

significant accumulated net worth of the families. I believe the Relocation Plan fails to consider the age of the homes in Firs MHP and fails to quantify the impact on the net worth of the affected families.

8.   Inadequate and Incomplete Communication in the Primary Language of the Majority of Households Residing at Firs MHP

Throughout this process, the landlord has failed to provide certified interpreters and translators. In those instances when the landlord utilized interpreters or translators, those interpreters and translators failed to attest to the accuracy of their interpretations and translations. For example, the June 11, 2016 meeting hosted by the landlord to discuss relocation utilized the services of a young woman with limited Spanish language proficiency.

The young woman apparently hired by the landlord, aside from lacking any known certification, did not adequately translate the verbal and/or written information conveyed by the landlord and the relocation team hired by the landlord.

The landlord provided the residents with a copy of the Relocation Plan in English. Although the landlord also provided a version of the Plan translated into Spanish, the Spanish-language translation lacks the completeness, specificity, and precision of the English-language version.

Additionally, the formatting of the Spanish-language version of the Plan is inferior to that of the English-language Plan, including lacking the legibility of the English-language Plan. Significantly, the Spanish-language Plan lacks the full content provided by the English-language Plan because many of the pages are oriented incorrectly and cut off the translated text.

The landlord translated only some of the informational notices served on us between May and October of 2016. Specifically, the letters dated May 8, 2016 and July 7, 2016 were not translated into Spanish. I believe that the selective translation of some but not all relocation-related documents necessitates that the landlord start the notification process over to ensure that the affected families received adequate information throughout the relocation process.

The relocation plan indicates that the landlord provides a hotline for the affected residents. Again, Alma Raymundo does not appear to possess any certifications to translate or interpret and any assistance provided by her constitutes disparate treatment.

Finally, many of the appendices to the Plan lack Spanish language translation.

To the extent that the City of SeaTac paid for the translation of the Relocation Plan, the City must start over by translating it correctly and into a legible format.

Supplemental Submission in Support of Appeal of City of SeaTac, WA Approval of Revised Relocation Plan for Firs Mobile Home Park – Page 4

Crisanto Medina

SeaTac, WA 98198

9.  School Funding

I understand that the Madrona Elementary School receives Title I funds in part because of the diverse population of persons residing at the Firs Mobile Home Park. Indeed, 53.7% of Madrona Elementary students are Hispanic/Latino compared to 37.9% of the district overall. See Exhibit C. It is my contention that the Relocation Plan fails to adequately consider and quantify the impacts on the operations and funding of the Madrona Elementary School.

10. LEP Obligations

Title VI of the Civil Rights Act of 1964 obligates the City of SeaTac to provide Spanish language interpretation and translation. To-date, none of the City's correspondence or meetings were translated or interpreted.

The City failed to provide the Relocation Approval letter in Spanish.

The City failed to provide SEPA related materials pertinent to the approval of the Revised Relocation Plan in Spanish to the residents.

The City failed to provide Spanish-language interpreters at City Council meetings attended by the Firs MHP residents.

Both the owner and the City failed to provide residents with information in Spanish about their right to appeal the City's approval of the Revised Relocation Plan.
I believe the processes and actions undertaken by the City related to the approval of the Relocation Plan fail to comply with Title VI because the City failed to translate written materials or provide Spanish language interpreters at meetings related to the relocation.

As noted above, to the extent that the City of SeaTac paid for the translation of the Relocation Plan, the City must start over by translating it correctly and into a legible format.

11. Due Process

On October 25, 2016, homeowners residing in the Firs Mobile Home Park attended the SeaTac City Council Meeting and requested an extension of the October 31st deadline to appeal the city's approval of the Mobile Home Park Relocation Plan for the Firs.

The City Council's refusal to extend the appeal deadline as requested at the meeting on October 25, 2016 violated Due Process because many of the families did not receive notice of the approval of the relocation plan until on or about October 25, 2016, well into the appeal period. Given the inferior Spanish language version of the Revised Relocation Plan and its service late into the appeal period, Firs MHP residents were

Supplemental Submission in Support of Appeal of City of SeaTac, WA Approval of
Revised Relocation Plan for Firs Mobile Home Park – Page 5

Crisanto Medina

SeaTac, WA 98198

deprived of the ability to determine whether they wanted to appeal the City's adverse decision.

12.  Approval of the Relocation Conflicts with the Comprehensive Plan

The approval of the Relocation Plan contravenes the City of SeaTac's Comprehensive Plan.

The State Environmental Policy Act ("SEPA") determination of non-significance issued by the City of SeaTac on July 22, 2016 concluded that the Mobile Home Park Relocation Plan for the Firs Mobile Home Park "will facilitate future development of the site with projects consistent with the City's Comprehensive Plan." See Exhibit D. In other words, the SEPA concluded that the Relocation Plan submitted by Fife Motel Inc. for the Firs MHP demonstrated consistency with the City's Comprehensive Plan.

The SEPA approved the initial relocation plan, not the Revised Relocation Plan approved October 17, 2016. The SEPA must be redone to reflect the Revised Relocation Plan.

The residents of the Firs Mobile Home Park did not have an opportunity to appeal the SEPA determination non-significance because the City of SeaTac neglected to provide information about the SEPA to the residents in Spanish.

The Housing and Human Services Element commits to increasing housing options, but the approval of the SEPA and Relocation Plan conflicts with the City's own goals under the Comprehensive Plan. See Exhibit E.

Moreover, the City's Comprehensive Plan commits it to supporting the maintenance of SeaTac's existing mobile home parks as a source of affordable housing. The approval of the SEPA and initial and Revised Relocation Plan violates the City's own Comprehensive Plan.

The untimely provision of the Relocation Plan conflicts with Comprehensive Plan Goal 3.9. The process should be reinitiated because the tenants did not receive sufficient notice pursuant to Goal 3.9.

Development regulations, such as zoning, must be consistent with local comprehensive plans. RCW 36.70A.070. I understand that the City of SeaTac may have approved a rezone of the Firs MHP in the two years prior to the relocation announcement. To the extent that the City approved a rezone, that rezone undermined the City's Comprehensive Plan Goals of preserving the Firs MHP.

Supplemental Submission in Support of Appeal of City of SeaTac, WA Approval of Revised Relocation Plan for Firs Mobile Home Park – Page 6

Crisanto Medina

SeaTac, WA 98198

## II.  CONCLUSION

For the foregoing reasons, I request that the Hearing Examiner overturn the City of SeaTac's October 17, 2016 approval of the Revised Relocation Report and Plan for the Firs Mobile Home Park dated October 7, 2016. I request that the Hearing Examiner require the City and Owner to start over and provide all written and spoken information in Spanish and ensure that all interpretations and translations be performed by a certified-Spanish language interpreter and translator.

I also request that the Hearing Examiner overturn the SEPA determination of non-significance issued by the City of SeaTac on July 22, 2016 because of its inconsistency with the City's Comprehensive Plan; the SEPA and related materials were not translated into Spanish, and because the SEPA approved the initial relocation plan rather than the Revised Relocation Plan approved October 17, 2016.

DATED this _18_ day of November 2016.

Crisanto Medina

Crisanto Medina, President of the Firs Home Owners Association

Supplemental Submission in Support of Appeal of City of SeaTac, WA Approval of Revised Relocation Plan for Firs Mobile Home Park – Page 7

FIRSMBL0143