# EXHIBIT 21

## OFFICE OF THE HEARING EXAMINER

## CITY OF SEATAC

## REPORT AND DECISION

**CASE NO.:** APL 16-0001
**Appeal of an Administrative Decision**
**The Firs Mobile Home Park Relocation Plan**

**APPLICANT:** Fife Motel, Inc.
706 Marine Hills Way
Federal Way, WA 98003

**ATTORNEY:** Olsen Law Firm PLLC
Attn: Walter H. Olsen, Jr.
205 South Meridian
Puyallup, WA 98371

**APPELLANT:** Chrisanto Medina
20440 International Boulevard, Space 62
SeaTac, WA 98198

**ATTORNEY:** Barraza Law, PLLC
Attn: Vincente Omar Barraza
14245-F Ambaum Boulevard S.W.
Burien, WA 98166

**CITY ATTORNEY:** City of SeaTac
Attn: Mary Mirante Bartolo, City Attorney
4800 South 188th Street
SeaTac, WA 98188-4236

**PLANNER:** Steve Pilcher, Planning Manager

**SUMMARY OF DECISION:** Appeals Denied.

**PUBLIC HEARING:**

After reviewing Department of Planning and Community Development Staff Report and examining available information on file with the application, the Examiner conducted a public hearing on the request as follows:

1X

The hearing was opened on January 19, 2017 at 6:03 p.m.

Parties wishing to testify were sworn in by the Examiner.

The following exhibits were submitted and made a part of the record as follows:

| | | |
|---|---|---|
| **EXHIBIT "1"** | - | **Department of Community and Economic Development Staff Report with Attachments 1-6** |
| **EXHIBIT "2"** | - | **Barraza Law Reply to Staff Report** |
| **EXHIBIT "3"** | - | **Declaration of Mailing Relocation Report and Plan** |
| **EXHIBIT "4"** | - | **Letter from Ed Kim dated May 8, 2016 (same as Ex 4 and Ex B, Att. C to SR)** |
| **EXHIBIT "5"** | - | **Letter from Jong Park dated July 7, 2016 (same as Att. C to Ex B in SR)** |
| **EXHIBIT "6"** | - | **Letter from Steve Pilcher dated October 17 (same as Ex A to SR)** |
| **EXHIBIT "7"** | - | **Determination of Nonsignificance dated July 22, 2016 (same as Ex D in SR)** |
| **EXHIBIT "8"** | - | **Tenants Union of Washington dated January 19, 2016 (7)** |
| **EXHIBIT "9"** | - | **Amended Notice of Appearance from Barraza Law dated December 19, 2016** |
| **EXHIBIT "10"** | - | **Notice of Appearance on Behalf of Respondent/Applicant from Olsen Law Firm dated December 19, 2016** |
| **EXHIBIT "11"** | - | **Order on Prehearing Conference dated December 20, 2016** |
| **EXHIBIT "12"** | - | **Respondent's Joinder in City's Response to Basis of Appeal dated January 4, 2017, from Olsen Law Firm** |
| **EXHIBIT "13"** | - | **Walt Olsen email dated January 26, 2017** |
| **EXHIBIT "14"** | - | **Public Comment Letters Received Subsequent to Close of Hearing** |
| **EXHIBIT "15"** | - | **Omar Barraza email dated January 26, 2017** |
| **EXHIBIT "16"** | - | **Memorandum from Examiner dated January 26, 2017** |
| **EXHIBIT "17"** | - | **Supplemental Briefing by City of SeaTac** |
| **EXHIBIT "18"** | - | **Closing Statement from Barraza Law** |
| **EXHIBIT "19"** | - | **Respondent's Brief from Olsen Law Firm** |

**The Minutes of the Public Hearing set forth below are not the official record and are provided for the convenience of the parties. The official record is the recording of the hearing that can be transcribed for purposes of appeal.**

The Spanish interpreter, SAMUEL A. POTTS, was sworn in by the Examiner.

MARY MIRANTE BARTOLO, SeaTac city attorney, appeared and introduced Exhibit 3, a declaration and testified that Fife Motel is the owner of The Firs Mobile Home Park. The owner desires to close the mobile home park and redevelop it pursuant to SMC 15.465H. The owner submitted a Relocation Plan to the City in October, 2016. On October 27,

2X

2016, appellant appealed the Relocation Plan. The City's approval of the plan is the sole issue for consideration in this appeal. Issues regarding closure of the park are irrelevant. The issue is whether or not the City followed its code in approving the Relocation Plan. The burden of proof is on the appellant to show that the City did not follow its code.

STEVE PILCHER, planning manager, appeared and testified that staff has been working with the Relocation Plan and has worked with the appellants. The City concluded that the plan met the requirements of the SeaTac Municipal Code. He is the author of the Staff Report together with the legal department. The Staff Report is accurate and shows how staff came to the conclusion that the plan is consistent with the SMC. Upon questioning by WALTER OLSEN, attorney at law representing Fife Motel, MR. PILCHER responded that the SMC sets forth the required elements of the Relocation Plan that includes an inventory. They did provide an inventory of the names, ages, incomes, etc. They also included the ages and conditions of the mobile homes and the cost of the pad rentals, etc. Fife Motel submitted a SEPA checklist that was completed by The Firs. They also include a housing inventory of low cost housing opportunities and information regarding first time home buyers. They also included a statement of the timing of closure. Upon questioning by MR. OMAR BARRAZA, attorney at law representing appellants, MR. PILCHER testified that he believes he submitted the data for all households, but it was difficult in getting some information from tenants. He identified Exhibit 4, a May 8, 2016, letter. The SMC requires advance notice and he considered the Exhibit 4 letter adequate to provide such notice. He did not independently verify that all tenants received the letter. Receipt of the letter was sufficient to satisfy the code. He does not know if The Firs translated the letter into Spanish. The SMC requires a scheduled meeting with tenants. He did not schedule the meeting, but attended a meeting with the mobile home park owner in early July. He doesn't recall seeing the July 7 letter that was introduced as Exhibit 5. It refers to a July 11, 2016 meeting. A Spanish language interpreter was present at the meeting, but the City did not pay for the interpreter. The July 7 letter was not translated and the City did not require its translation. He understands that an open house occurred on May 14, 2016. The first Relocation Plan was submitted to the City on May 27, 2016. He did not question whether the owner could obtain an inventory in approximately 14 days. The letter also referred to one on one meetings between May 14 and May 27. He also did not verify whether such meetings in fact occurred. The City issued a DNS and provided notice. However, the City did not translate the notice and did not serve it on each resident. The City approved the letter marked Exhibit 6, but did not translate it. Citing the code as Section 15.464.600 was a scrivener's error. The incorrect code was also cited in the letter. It was personally mailed to the list of residents provided in the Relocation Report. He asked per the owner's agreement to translate the main portion of the Relocation Plan, but not the attachments. The owner paid for the original translation. He felt that the main portion was important, but that the supporting documents were not. The code provides no requirement to translate. Upon questioning by MS. BARTOLO, MR. PILCHER testified that translation is not required by the code, but he voluntarily asked the owner to translate the plan and the owner complied. Staff asked for the owner's agreement for the translation. Upon receipt the City hired a third party to verify the accuracy of the translation. The City then opted to have the plan retranslated

3X

more accurately. The City's translation is the version in the final plan.

CRISANTO MEDINA, appellant, appeared and testified that he is the president of The Firs Mobile Home Park Homeowners Association and referred to the May 8 letter. He attended the May 14 meeting, but did not understand the May 8 letter because it was in English. He knew of the meeting because someone posted papers on his door. He was informed of it. He didn't understand the Exhibit 5 letter. Exhibit 7, the DNS, was left in front of his house and he does not know when or where it was delivered. He does not know what it says. He did not know about the 14 day appeal period. At the May 14 meeting they were asked to complete an inventory, but the form was not in Spanish. People did not complete the inventory, at least as many as 30. No one informed them that the inventory was to assess the impacts of closing the park. It was in writing on the inventory form, but only in English. No one verbally told them of the reason for the inventory or that it was voluntary or confidential. He received the letter of October 16, 2016, closing the park, but it was not in Spanish. There was no interpreter present at the May 14 meeting, but there was at the July 11 meeting. However, she was not interpreting well and he was confused at to what she was saying. He was not the only one that felt that way. He did not receive a copy of the Relocation Plan in the October 17 letter. He did not understand the Spanish translation of the plan. He had trouble understanding everything. Upon questioning by MS. BARTOLO, MR. MEDINA stated that he could not understand because it was not well written.

HELENA BENEDICT appeared and presented Exhibit 8, a letter from the Tenants Association.

IRENE CRUZ appeared and testified that she did not understand any of the letters written in English. Her son read them to her, but could not explain them because he is young and couldn't understand. She is very concerned about having to move because right now they are close to many services, schools, jobs, and can receive help from older people. She has an autistic child and it is very difficult to find a clinic and therapy. If she moves, she will find it difficult to find another clinic or find work. She will end up out of work.

LUIS MORENO appeared and testified that he received the Relocation Plan and attended the open house at the hotel. At no time did he receive a paper asking for information about his mobile home. The Relocation Plan arrived between November 1 and November 3 and had an appeal date of October 31 which had expired. He was not notified. When they came to deliver his copy they just taped it to the door and didn't even knock. It was also in the previous owner's name. He bought a mobile home from Mr. Park about three and a half to four years ago. Mr. Park knew when he sold him the mobile home that it couldn't be moved. The home had been destroyed and he spent $20,000.00 repairing it and only recently finished with the repairs and now they will have to move.

MARTHA ZAMORA appeared and testified that she did not completely understand the Relocation Plan as the majority was in English. Two meetings were held, but insufficient and unclear information was provided. The interpreter was not that good. They didn't

4X

inform her of an inventory and did not tell her she had a right to appeal the plan. No one asked where she wanted to live or how moving would impact their lives. The majority of the residents are families and they support each other. Thanks to the support of family members, her children can continue to reside with her. They live near a school and her son sleeps in a safe place. No consideration was given to her situation.

LETICIA VIDALES appeared and testified that at the May 14, 2016, open house she was given a paper and told to mark down their attendance. At no time was she informed it was for relocation. Personally, her family is affected, as several children live in the house and go to school. If she moves, her job and a school will be far away. Her youngest daughter will have to start over. One is in the last year of high school and after graduation will go to the university. If they have to move, it will depend on the distance as to whether she can complete high school. She is confused about financial assistance and a lot of confusion remains about the relocation. She was not given correct information as it was in English and she doesn't speak the language. The children do speak it, but cannot translate. No one came to her to give the correct information regarding the relocation and what it means.

ROSA ISELA DELGADO appeared and testified that she resides in the park. The notice affects all residents, their finances, and their inability to relocate. The first notice was given in Spanish, but she could not understand the owners plan. Her daughter refuses to change school and leave her teacher and friends. They are invested in their home.

SAUL GARCIA appeared and has the same concerns previously expressed. He didn't receive any letters, and mail has been destroyed and stolen at the mobile home park. The only letter he received was left in front of his house. He is very concerned as closure would take away his house, not just move it. The $7,500.00 or $12,000.00 the State will provide will be used to demolish the mobile home.

PATSY WARE appeared and testified that she has resided at the mobile home park for 46 years. She last worked at Madrona Elementary and has seen how new schools affect students. A fire occurred on July 29 and some lost many possessions and had to start over. All tenants are low income residents and some are disabled, but they have pride in home ownership and spend their funds to improve their homes. Concerning relocation, the rents provided are $900.00 for a one bedroom apartment that can't accommodate families. Many of the mobile homes have asbestos. Residents are proud of their homes, have well adjusted families, and the children are happy in their school. They will have very few options and homelessness is foremost in their mind. SeaTac does not have housing to accommodate the residents. Many residents work and shop locally. No mobile home parks are available in the area. The City did not notify anyone of the zoning change nor did the Planning Department. She has met many of the families in the park and they are hard working and generous. Moving will damage and destroy what personal property they have.

MARIA ANITA BRITO appeared and thanked everyone for the opportunity to speak. The problems affect all of the residents. The eviction from the park is unfair and unjust. She has lived here now for more than ten years and has invested her capital over the past

5X

years so that she could better her condition and her children's health. The owner has no idea of the problems this closure will cause to include a lot of stress to all residents. They are desperate, where will they live? They are hard working, but they have insufficient assets to move. The rents are too high and for older people it would be very difficult. They will not have sufficient help to survive elsewhere. Children attend Madrona Elementary near their homes. The situation creates problems for them. It will not be easy to incorporate their children in another school. They also have their activities and work nearby, but this will end if they move to another area. Her husband doesn't drive and works in Seattle. He uses the light rail to go to and from work, and that makes their lives better. They don't worry about public transportation.

GUADALUPE RODRIGUEZ appeared and testified that a letter arrived at her home, but he did not understand it as it was in English. Just she and her husband live there and neither understand English. The documents were received by mail, but many times their mail is opened. No one pays attention to the parking lot and cars are stolen. The owner pays no attention. In the parking lot a hole in the pavement is not filled, and when it rains one cannot get by. The children have to jump over puddles to get to school because the owner has not paid attention. Even so, they want to stay in the park and are happy to live there. They want consideration as to how they feel.

MARIA DEL R. RODRIGUEZ appeared and testified that after she picked up her daughter from school she saw a car parked in the middle of the mobile home street. She also saw someone with a camera and tripod and another with papers in hand. She found papers stuck to her door. They thought it was advertising and not important. They now realize the papers were the Relocation Plan. They thought they would be relocated to another space within the park. They looked at the papers closely, but could only interpret about 30 percent. Only about 30 percent was understandable. The plan is not functional. They spoke about it and feel it is racist on Mr. Park's part and on SeaTac's part. They are not respecting the rights of those who live there. People should start thinking about what they would do if they received such a notice. They are people of low income and many have only one salary. What will they do and where will they live? The children are their main concern. They are at a young age and where will they live? She has a six year old daughter and seven year old step daughter. Their Christmas wish was that no one takes their home away. Her daughter is saving quarters so they can afford a new place to live. She is worried about her school as she is now in special ed. She cannot get the special ed at another school. Her 15 year old son made plans with a teacher for the next two years. The plans include college. If they move, he cannot get the help he needs and will miss the opportunity for college. Please take into consideration their situation and help with the Relocation Plan. Put yourself in their shoes.

HUGO ZAMORA appeared and testified that he, like all residents, is worried. Since the beginning, all the information was in English. Many don't speak English and there has been a lot of confusion. There is talk about $7,000.00 and $12,000.00 reimbursement and he is unsure where the money comes from or what it can be used for. The State provides $7,000.00 for demolition, and then a $2,000.00 offer comes from the owners.

6X

SEA-0025

When he heard that he felt they were making fun of him. A home costs much more and they have invested in remodeling their present homes. He didn't spend just $5,000.00 to $6,000.00 on his home, but spent more than $15,000.00 to $20,000.00. The $2,000.00 amount is a slap in the face, makes fun of them, and is ridiculous. The Relocation Plan is not clear. He was told that possibly they could be sent outside the city or county. Nothing is clear in Spanish. The previous information was in English.

EARL GIPSON appeared and testified that he has appeared before the Examiner a number of times where he was against the City. The City has nothing to do with racism. The allegation is not appropriate in this venue and should not be put in the record in any manner. He has disagreed with the City in the past, but the City is definitely not racist.

STEPHANIE RUIZ appeared and testified that she has resided in the mobile home park for 11 years with her two daughters. She received the notice taped to her door. She attended the meeting. She was advised that they would contact her for a one on one meeting, but that has not happened to date. Neither the City nor the owner have provided any information regarding the plan. Nothing was presented at that meeting. They felt the meeting was for the purpose of asking questions regarding the relocation. She only attended the May 14 meeting, not the July 16 meeting. She was only made aware today that the July meeting was held. She can understand why everyone had a hard time understanding at the May meeting. The Spanish interpreter was not that good. Her daughter attends Madrona and she is a single mom. It is difficult to find a home near a neighbor that will help her with childcare. Here, she has sufficient help.

MR. BARRAZA and MS. BARTOLO then presented closing arguments.

No one spoke further in this matter. The Examiner left the record open for one week for residents to provide comment letters and a second week for the submittal of legal briefs. He then took the matter under advisement. The hearing concluded at 8:53 p.m.

**NOTE:** A complete record of this hearing is available in the office of City of SeaTac Department of Planning and Community Development.

## FINDINGS, CONCLUSIONS, AND DECISION:

### FINDINGS:

1. The Hearing Examiner has admitted documentary evidence into the record, heard testimony, and taken this matter under advisement.

2. The City of SeaTac responsible official issued a threshold Determination of Nonsignificance following review pursuant to the State Environmental Policy Act (SEPA) on July 22, 2016. No appeals were timely filed.

3. The City provided proper notice of this appeal hearing pursuant to the SeaTac

7X

Municipal Code.

4. Crisanto Medina and The Firs Mobile Home Park Homeowners Association appeal a decision of the City of SeaTac Acting Community and Economic Development Director to approve a Mobile Home Park Relocation Plan for The Firs Mobile Home Park located at 20440 International Boulevard with the City of SeaTac. Section 1.20.100 of the SeaTac Municipal Code (SMC) authorizes the Examiner to conduct a public hearing and issue a decision on:

   H. Appeals from administrative decisions or determinations by City officials where the governing ordinance provides for an appeal to the Examiner.

   Section 15.465.600(H)(2)(g) SMC authorizes an appeal of a decision of the Director of Community and Economic Development's approving a mobile home park relocation plan. Section 1.20.100 SMC provides that Examiner decisions on such appeals are "final and conclusive" and not appealable to the SeaTac City Council. For the reasons set forth hereinafter, the City has established by a preponderance of the evidence that The Firs Mobile Home Park Relocation Plan satisfies all criteria set forth in SMC 15.465.600(H)(1)(a-f).

5. Appellants also appeal the issuance of the threshold DNS by the City of SeaTac responsible official following SEPA review of the environmental impacts of closure of the mobile home park. The responsible official issued the DNS on July 22, 2016, and the Notice of Issuance advised that the appeal period for the DNS expired at 5:00 p.m., August 15, 2016. Appellants did not attempt to submit an appeal of the DNS until November 18, 2016. Section 16A.23.160 SMC requires that an appeal of a SEPA threshold determination must be filed with the City Clerk in writing within ten days of the date of issuance of said DNS, and that additional written documentation in support of the appeal must be submitted within 14 days of filing the initial appeal. Furthermore, SMC 16A.23.170 requires full payment of the filing fee upon filing of the appeal. In the present case appellants neither filed their environmental appeal nor paid the filing fee within the required time limits. Therefore, the Examiner has no jurisdiction to consider the environmental appeal, and it is deemed denied.

6. The owner of The Firs Mobile Home Park (owner) has decided to close its mobile home park and redevelop it with another use in accordance with the City's zoning code set forth in Title 15 SMC. Appellants, Mr. Medina and residents of the park, object to its closure based upon the extreme financial hardships, job related issues, family related issues, loss of support of friends and relatives, relocation of school children into new schools, and for other reasons. Appellants also argue that the City improperly approved owner's Relocation Plan, asserting numerous deficiencies.

SEA-0027

7. Residents of the mobile home park presented compelling testimony regarding the hardships involved in relocation of their homes to include, finding a vacant space in a mobile home park, disruption of their children's education in having to change schools, loss of community support, and loss of convenient transit service. Appellants also assert that the owner and City should have provided accurate Spanish translation of all written documents associated with the closure of the mobile home park to include, the SEPA evaluation, the Relocation Plan, and attachments thereto, and all correspondence from owner and the City since more than 50 percent of park residents speak Spanish exclusively. Appellants also assert that owner should have provided qualified Spanish translators at community meetings.

8. Both the Washington State Legislature and SeaTac City Council have recognized the hardships experienced by tenants of a mobile home park proposed for closure. Both legislative bodies have provided significantly greater protection for mobile home tenants than for tenants of apartment buildings slated for closure (a 20 day notice without a lease). Legislative Findings for the 2008 Amendments to the Manufactured/Mobile Home Landlord-Tenant Act set forth in RCW 59.20 includes the following:

   (a) Manufactured/mobile home communities provide a significant source of homeownership opportunities for Washington residents. However, the increasing closure and conversion of manufactured/mobile home communities to other uses, combined with increasing mobile home lot rents, low vacancy rates in existing manufactured/mobile home communities, and the extremely high cost of moving homes when manufactured/mobile home communities close, increasingly make manufactured/mobile home community living insecure for manufactured/mobile home tenants.

   (b) Many tenants who reside in manufactured/mobile home communities are low-income households and senior citizens and are, therefore, those residents most in need of reasonable security in the siting of their manufactured/mobile homes because of the adverse impacts on the health, safety, and welfare of tenants forced to move due to closure, change of use, or discontinuance of manufactured/mobile home communities....(See Findings-Intent-2008c116 following RCWA59.20.300)

   In response to said Findings, the State Legislature adopted RCW 59.20.080 that in Subsection (1)(e) provides that when a landlord decides to convert a manufactured/mobile home park to a different use, the landlord "shall" provide a 12 month notice to tenants in advance of the effective date of the conversion. Furthermore, RCW 59.20.300 requires a landlord/owner to provide by certified mail or personal delivery a written notice of the sale of the mobile home park and other

9X

information that must be included in the notice. In RCW Chapter 59.21, entitled "Mobile Home Relocation Assistance", our Legislature provides financial assistance for relocating mobile homes and waives modern code requirements for existing, older mobile homes that provide affordable housing. RCW 59.21.105 prohibits cities and counties from imposing applicable fire, safety, or construction codes to such relocated homes. Our Legislature also adopted RCW Chapter 59.22 that recognizes that the "turnover in ownership" of mobile home development has caused housing to become unaffordable for the low-income, elderly, poor, and infirmed, thereby resulting in increased numbers of homeless persons and persons who look to public housing and public programs (see RCW 59.22.010(1)(a).). Chapter 59.22 RCW provides financial assistance for converting ownership of mobile home parks to the tenants. Residents of The Firs Mobile Home Park confirmed and amplified the Legislature's Findings.

9. The SeaTac City Council has also recognized the significant impacts to mobile home park residents upon conversion of a park to a different use. In addition to the State's criteria, the City Council has adopted additional requirements that an owner must meet before closing its mobile home park. Section 15.465.600(H) SMC sets forth closure requirements that include preparation of a mobile home park relocation plan, analysis of environmental factors to include preparation of a SEPA analysis, timing and preparation dates for the mobile home relocation plan, and approval of a relocation agreement with tenants where possible.

10. Section 15.465.600(H)(1) SMC sets forth the "Required Elements of the Mobile Home Park Relocation Plan". Subsection (H)(2) sets forth the timing and preparation requirements for the relocation plan and also provides standards for such plan. Subsection (A)(2) requires in part:

(e) The department shall review the relocation plan to ensure compliance with the requirements of subsection (H)(1) of this section. If it is determined that the requirements have not been met, the department shall notify the mobile home park owner in writing of the identified deficiencies. The owner shall revise the plan to correct all of the identified deficiencies before resubmitting it to the City.

(f) Once it is determined that the requirements of subsection (A) [no subsection (A) exists and it is obvious from the context of paragraphs (e) and (f) that the correct subsection is (H)(1)] of this section have been met, the Director of the department shall issue a decision on the relocation plan based on the impacts of the proposed action…If the relocation plan is approved, the Director shall issue a certificate of approval.

(g) The decision of the Director is appealable to the Hearing Examiner…If the decision is appealed, the relocation plan process

10X

as set forth herein shall automatically be stayed until the appeal is resolved.

11. The office of Hearing Examiner position was created by the SeaTac City Council and has only the authority granted by the Council (see SMC 1.20.020). In the present case, the City Council has authorized the Examiner to consider those SEPA appeals timely filed, and an appeal of the Director's decision to approve a mobile home park's owner's relocation plan (See Subsections (f) and (g), supra). The City Council has not authorized appeals to the Examiner of other issues associated with a relocation plan. Furthermore, our Washington courts have ruled that examiners do not have authority to consider equitable remedies (Chaussee v Snohomish County Council, 38 Wn. App. 630 (1984)). Our courts have also ruled that examiners have no authority to decide constitutional issues or to declare ordinances illegal (Yakima County Clean Air Authority v Glascam Builders, Inc., 85 Wn. 2d 255 (1975). The City of SeaTac examiner likewise has no authority to require a park owner to "start over" and provide all notices, letters, and plans to the tenants in Spanish as neither the RCW nor the SMC require such. Thus, in accordance with the SMC, this Decision is limited to whether or not the Director properly approved owner's relocation plan and properly issued a certificate of approval.

12. Section 15.465.600(H)(1)(a-f) SMC sets forth the "Required Elements of the Mobile Home Park Relocation Plan". Findings on whether owner's plan meets all required elements set forth therein are hereby made as follows:

   a. Subparagraph (a) requires owner to prepare an inventory of park tenants and their mobile homes for the purpose of providing data for the SEPA checklist and SEPA analysis of the environmental impacts of mobile home park closure. The inventory also establishes a basis for identifying relocation/mitigation options. The inventory "shall" include tenants' age, income, and number of years in the park; the age and conditions of tenants' mobile homes; and the cost of pad rental, utility fees, personal utilities, insurance, personal property taxes, and "mobile home security interests". The inventory form must clearly advise tenants that the disclosure is voluntary and that the purpose is to assess the impact of the proposed closure and applicability of low-income housing assistance programs. In the present case appellants argue that owner should have advised park tenants in Spanish of the purpose of the information, and because it did not do so, the inventory was meaningless. However, the Relocation Plan reflects that inventory sheets were completed with residents at an open house and in subsequent individual meetings. The plan reflects the number of residents, households residing in single-wide homes, the number of homes having tip-outs or additional living spaces, the number of double-wide homes, and the fact that four households are not eligible for State assistance. Thus, the inventory meets the requirements of this subsection.

11X

SEA-0030

b.  Paragraph (b) requires an analysis of environmental conditions of the park. The owner submitted an environmental checklist and the City responsible official issued a DNS following SEPA review. No appeal was filed and the SEPA analysis is final. Appellants argue that owner should have provided the checklist and other environmental documents in Spanish, neither the RCW nor SMC require such.

c.  Paragraph (c) requires a list of relocation options. Attachment (B) to the Relocation Plan provides many pages of affordable and low-income housing opportunities in the area. While it is true that many such opportunities are not located within the City of SeaTac and may be more expensive than the current rental, the owner has provided a substantial list of such facilities in the south King County area. The list also includes vacant mobile home spaces in King and Pierce Counties, a list of low-cost apartments or low-cost housing options in King County, information from banks concerning first time home buyer programs, information from County and non-profit entities concerning relocation park options. No information from the Port of Seattle regarding noise mitigation funds was provided, as such is not relevant.

d.  Owner will comply with paragraph (d) during the implementation of the plan by gathering information from each tenant as to the tenant's preference for housing options. Owner will then coordinate each tenant's preferences with others in the park.

e.  Paragraph 6 of the Relocation Plan sets forth a statement of the anticipated timing of closure, i.e., 12 months from service of an official closure notice in compliance with paragraph (e).

f.  Paragraph 2 of the Plan sets forth numerous methods to minimize the impacts of park closure on the tenants to include assistance with obtaining relocation funding, assistance with State paperwork, assistance with housing paperwork, provision of a hotline available to all residents, monthly information updates provided to each household, a list of movers/demolition companies, provision of a relocation contact specialist, and provision of a relocation assistance schedule.

The City has shown that the Relocation Plan satisfies the required elements of a Mobile Home Park Relocation Plan in accordance with the SMC.

13. A chronology of events leading up to the present appeals is as follows:

    A.  Owner hand-delivered a letter to all 66 tenants in The Firs Mobile Home

Park advising of an open house meeting scheduled for Saturday, May 14, 2016, from 11:00 a.m. to 5:00 p.m. at a hotel adjacent to the park. The letter is dated May 8, 2016, and signed by owner's managing partner. The letter advises tenants that owner will close the mobile home park and that a relocation specialist will attend the meeting to work with them. The letter advises those who could not attend the meeting of the opportunity to schedule an individual meeting.

B.  The City received a draft Relocation Plan on May 27, 2016.

C.  By letter dated July 7, 2016, owner advised residents of a second meeting on July 11, 2016, and that Mr. Steve Pilcher, Planning Manager, City of SeaTac, would attend and answer questions about the relocation process. The relocation specialist, an interpreter, and a social worker also attended the meeting. The letter also advised residents that they would receive a copy of the Relocation Report and Plan following its approval by the City.

D.  The meeting occurred on July 11, and was attended by Mr. Pilcher. An interpreter was provided because tenants of 49 mobile homes speak Spanish and limited English. Individual meetings within tenants' homes occurred between the two meetings.

E.  On July 22, 2016, the responsible official issued the SEPA threshold DNS.

F.  August 30, 2016, owner submitted a revised Relocation Plan in response to the City's review.

G.  On October 7, 2016, owner submitted its final draft of the Relocation Plan.

H.  On October 17, 2016, the City approved the Relocation Plan and issued a Certificate of Approval. Notice of the approval was mailed to all tenants the same day.

I.  On October 31, 2016, appellant Medina timely filed an appeal of the approval of the Relocation Plan.

14. Appellants raise a number of issues concerning the adequacy of the Relocation Plan. Findings on relevant issues are hereby made as follows:

A.  Appellant correctly asserts that the City's notice of approval letter, dated October 17, 2016, the Relocation Plan, and the Certificate of Approval refer to SMC 15.464.600(H)(2)(f), a non-existent SMC code section. The correct citation is SMC 15.465.600(H)(2)(f). The incorrect citation is in the nature of a scrivener's error and appellants have presented no evidence that any of the mobile home park tenants were mislead. As noted above, the SMC

13X

itself has incorrect internal citations, and appellant raised no confusion or misleading issues. The appellants timely filed their appeal of the Relocation Plan approval.

B. Appellants assert that the Relocation Plan contains misleading or incomplete information regarding reimbursement from the Washington State Office of Manufactured Housing. First, SMC Relocation Plan criteria do not require an owner to address the State Financial Assistance Program. Second, the State is responsible for administering said program, and will determine the documentation necessary for obtaining reimbursement, and will also determine whether recreational vehicles, park models, or "tip-outs" are eligible.

C. Appellants assert that owner did not provide adequate service of the final, approved Relocation Plan. However, owner presented declarations setting forth attempts to deliver a copy of the Relocation Plan to all tenants between October 25 and 30, 2016. Tenant testimony at the hearing confirms people attaching paperwork to doors and a camera on a tripod recording the activity. According to the RCW, owner cannot close the park for 12 months following service of the notice of intent to close. Again, appellants timely filed their appeal.

D. Appellants assert that the Relocation Plan "unlawfully accelerates the closure timeline and implies that families should move before the end of the 12 month period". Owner's initial notice of the closure to residents does not constitute the official notice required by State law, nor is it part of the Relocation Plan. Furthermore, the May 8, 2016 letter clearly states that owner would close the park and redevelop the site beginning June, 2017, and tenants would receive a 12 month notice prior to closure. Any erroneous understanding could have been corrected at either the May or July tenants meeting, especially in July when owner provided an interpreter, or in individual one-on-one meetings.

E. Appellants assert that owner failed to provide a proper inventory because it failed to disclose the purpose of the inventory; failed to translate the inventory form into Spanish; and that owner's relocation agent did not meet separately with each family to obtain the required information for the inventory. The SMC provides that the inventory request form "shall clearly state" that the purpose of the information is to "assess the impact of the proposed closure and the applicability of low-income housing assistance programs". While the inventory form does not include a specific statement of intent to close the park, the form does include a section to rate the mobility of a home for purposes of relocation. Such provides a clear indication of the intent to close the park. Furthermore, owner had previously notified tenants in writing by its letter of May 8, 2016, of its intent to close the park,

14X

had held an open house, and had held individual meetings with tenants to assist in relocation.

F. Appellants allege that failure to translate the inventory form violates tenants' constitutional and Federal statutory rights. However, the SMC does not require translation of said from into Spanish or other languages, and the Examiner has no authority to order the City to do so.

G. Appellants assert that the plan provides inadequate relocation options, inaccurate information about housing choices, and incomplete communication in the primary language of a majority of tenants. However, the Plan provides many pages of various housing options within the south King County area and also includes a list of low-cost housing agencies and their contact information.

H. Appellants assert that the plan does not consider the age of the mobile homes and therefore fails to consider impacts on the net worth of tenants. However, the age of the units is reflected on Attachment D, the housing information sheets, and is also available on the King County Assessor's website. Furthermore, neither the SMC nor SEPA require an analysis of park closure on the net worth of affected families. Chapter 197 of the Washington Administrative Code (WAC) sets forth the SEPA rules, and WAC 197-11-450 provides that SEPA does not require a cost benefit analysis.

I. Appellants assert throughout their appeal that owner and the City did not require Spanish translations of the Relocation Plan and of all attached appendices. Neither the RCW nor the SMC require either a Spanish language version of the plan or any other language version of the plan. Even though not obligated to do so, the City directed the owner to provide a Spanish language version of the main portion of the Plan for tenants, but not the nine appendices attached thereto. Staff then had the translation examined by a third party translator. The City then authorized a retranslation of the owner's version. The owner then incorporated the "City's interpreter's version" into the final plan. However, even then, appellants were not satisfied with the translation and continue to allege inadequate and incomplete communication in Spanish.

J. Appellants assert that the SeaTac City Council violated tenants' due process rights by failing to extend the appeal deadline even though families did not receive notice of the Relocation Plan approval until on or about October 25, 2016. The Examiner has no authority to consider whether the City Council violated residents' due process rights, but notes that appellants timely filed an appeal of the Relocation Plan and timely supplemented said appeal. Furthermore, appellants were most ably represented at the public

hearing by counsel, and the City provided a most qualified interpreter.

K. The loss of school funding by Madrona Elementary School due to a potential loss of Hispanic/Latino students is far beyond the scope of the Relocation Plan. The school provided no comment on the appeals. Furthermore, consistency of the Relocation Plan with the City of SeaTac Comprehensive Plan is at best a SEPA issue, and as previously found, the SEPA appeal period expired long before the attempt to file the present SEPA appeal.

L. Appellants assert that the City violated Title VI of the Civil Rights Act of 1964 by failing to provide Spanish language interpretations of all documents. As previously found the Examiner is limited to a determination as to whether or not the City has complied with SMC provisions. Consideration of the Civil Rights Act is far beyond a hearing examiner's jurisdiction.

## CONCLUSIONS:

1. The Hearing Examiner has jurisdiction to consider and decide the issues presented by this request.

2. The City has shown that the Director's decision to approve the Mobile Home Park Relocation Plan for The Firs Mobile Home Park issued on October 17, 2016, was legally correct. The Relocation Plan satisfies all criteria set forth in SMC 15.465.600(H). Therefore, appellants appeal should be denied.

3. Appellants did not timely file an appeal of the SEPA threshold DNS and therefore the Examiner has no jurisdiction to consider it.

## DECISION:

The appeal of Crisanto Medina and The Firs Mobile Home Park Homeowners Association of the City's decision to approve the Mobile Home Park Relocation Plan for The Firs Mobile Home Park is hereby denied. The SEPA appeal is likewise denied due to its untimely filing.

**ORDERED** this 22nd day of February, 2017.

**STEPHEN K. CAUSSEAUX, JR.**
Hearing Examiner

**TRANSMITTED** this  day of February, 2017, to the following:

**APPLICANT:**  Fife Motel, Inc.
706 Marine Hills Way
Federal Way, WA 98003

**ATTORNEY:**  Olsen Law Firm PLLC
Attn: Walter H. Olsen, Jr.
205 South Meridian
Puyallup, WA 98371

**APPELLANT:**  Chrisanto Medina
20440 International Boulevard, Space 62
SeaTac, WA 98198

**ATTORNEY:**  Barraza Law, PLLC
Attn: Vincente Omar Barraza
14245-F Ambaum Boulevard S.W.
Burien, WA 98166

**CITY ATTORNEY:**  City of SeaTac
Attn: Mary Mirante Bartolo, City Attorney
4800 South 188th Street
SeaTac, WA 98188-4236

**OTHERS:**

Jan Sylvester
12605-115th Avenue Court East
Puyallup, WA 98374

Earl Gipson
17050-51st Avenue South
SeaTac, WA 98188

CITY OF SEATAC

17X