# EXHIBIT 25

FILED

17 DEC 22 PM 12:56

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-07094-7 KNT

IN THE SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

CRISANTO MEDINA, a married man; and FIRS HOME OWNERS ASSOCIATION, a domestic nonprofit corporation;

                    Petitioners,

v.

CITY OF SEATAC, a Washington Municipal Corporation; and FIFE MOTEL INC., a domestic corporation, *et al.,*

                    Respondents.

NO. 17-2-07094-7

FIRST AMENDED
LAND USE PETITION

(Chapter 36.70C RCW)

## INTRODUCTION

The owner of land underlying a mobile home park can close a mobile home park only by complying with reasonable requirements to protect the property and civil rights of manufactured home owners and residents. Unlike the typical leased residence, where the owner owns both the dwelling and the land, a mobile home park the owner owns the land, but the residents own the manufactured home. Each homeowner leases the land under and around their respective homes. These dwellings, formerly mobile homes, now manufactured homes, are almost always moved only once from the point of manufacture to be permanently affixed in a leased space or pad in a mobile home park. The homes in mobile home parks are generally the least expensive route to home

*FIRST AMENDED LAND USE PETITION, Page 1*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

ownership for low- and moderate-income families.  Because mobile home parks are affected with the public interest in promoting stable, sustainable diversified housing—a fundamental human right—mobile home park owners and residents are subject to reasonable regulation, which include carefully balanced requirements for closing a mobile home park:  At least one-year proper notice of intent to close a mobile home park, cooperative formulation and implementation of a relocation plan to successfully relocate all residents of the mobile home park before a mobile home park can be closed and converted to another land use.  **This Land Use Petition Act appeal** was filed on March 24, 2017, asserting pervasive procedural and substantive errors in the Firs Mobile Home Park notice of closing and in the design, formulation and approval of the Relocation Plan. Special accommodation and enhanced legal protections are applicable for Firs residents because they are a cohesive community consisting of a vast majority of whom are low income, elderly, disabled, Spanish-speaking and/or vulnerable adults and innocent children residing in 62 homes.   Applicable law not only governs the Relocation Plan, but also its implementation: **This amended petition** is filed to review and enjoin prohibited misconduct unlawfully interfering with successful implementation of the Relocation Plan by the City of SeaTac and Fife Motel, Inc. dba as The Firs Mobile Home Park by and through its manager, Mr. Jong Soo Park, in collaboration with his consultants and attorneys, which occurred and continues to occur after petitioners filed the LUPA appeal herein on March 24, 2017.

Pursuant to Land Use Petition Act, Chapter 36.70C RCW (LUPA), State Environmental Policy Act, Chapter 43.21C (SEPA), Manufactured/Mobile Home Landlord-Tenant Act, Chapter 59.20 RCW, SeaTac Municipal Code Chapter 15.465,

*FIRST AMENDED LAND USE PETITION, Page 2*

and other applicable law, plaintiffs/petitioners Crisanto Medina and the Firs Home Owners Association (Firs Homeowners) for their first amended petition, allege and plead as follows:

## I. JURISDICTION AND VENUE

1.1     The Court has jurisdiction over this matter under LUPA, SEPA, other applicable law, and under the grant of jurisdiction to superior courts through Article IV, Section 6 of the Washington State Constitution.

1.2     Venue properly lies in this court under RCW 4.12.010.

## II. PARTIES

2.1     Name and mailing address of petitioners:

Crisanto Medina
20440 International Boulevard, Space 62
SeaTac, WA 98198

Firs Home Owners Association[1]
c/o Barraza Law PLLC
14245F Ambaum Blvd SW
Burien, WA 98166

2.2     Name and mailing address of the attorney for all petitioners is:

Vicente Omar Barraza
Barraza Law PLLC
14245F Ambaum Blvd SW
Burien, WA 98166

2.3     The name and mailing address of the local jurisdiction whose land use decisions are at issue in this case is:

---

[1] The Hearing Examiner's Decision on Reconsideration identified the Firs Home Owners Association as "The Firs Mobile Home Park Homeowners Association."

*FIRST AMENDED LAND USE PETITION, Page 3*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

City of SeaTac
4800 South 188th Street
SeaTac, WA 98188-8605

2.4    The City Attorney of the City of SeaTac is:

Mary Mirante Bartolo,
4800 South 188th Street
SeaTac, WA 98188-8605

2.5    Name and mailing address of owner, applicant and, in this amended petition, its president (and manager of The Firs Mobile Home Park), Jong Soo Park, personally and his marital community, if any:

Fife Motel, Inc.
706 Marine Hills Way
Federal Way, WA  98003

2.6    Attorney for owner/applicant:

Walter H. Olsen, Jr.
Olsen Law Firm PLLC
205 South Meridian
Puyallup, WA 98371

2.7    Other parties requesting notice:

Jan Sylvester
12605 – 115th Ave Ct E
Puyallup, WA  98374

Earl Gipson
17050 51st Ave S
SeaTac, WA  98188-4236

## III. DECISIONS and ACTIONS APPEALED

3.1    Petitioners appeal the Report and Decision and Decision on Reconsideration issued by the City of SeaTac Hearing Examiner, City of SeaTac case number APL 16-0001. The Hearing Examiner issued the Report and Decision on February 22, 2017 and the Decision on Reconsideration on March 6, 2017 (Land Use

*FIRST AMENDED LAND USE PETITION, Page 4*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

Decision).  The initial decision of the City of SeaTac was attached as **Exhibit A;** The Hearing Examiner's Report and Decision issued on February 22, 2017 was attached as **Exhibit B**; and the Hearing Examiner's Decision on Reconsideration on March 6, 2017 was attached as **Exhibit C** to petitioners' Land Use Petition herein filed on March 24, 2017 and are incorporated by reference as though fully set forth herein.

By this amended petition, petitioners further seek review of and petition for injunctive and other relief to bar respondents Fife Motel and Mr. Park from engaging in unlawful interference with successful implementation of the Relocation Plan, willfully violating laws governing operation and closure of mobile home parks, and the Court's May 26, 2017 Order on Initial Hearing and December 15, 2017 Order on Respondent SeaTac's Motion to Strike by filing and prosecuting separate eviction proceedings for improper and unlawful purposes against Firs residents (as of December 19, 2017, Messrs Park and Olsen have filed unlawful detainer proceedings against the residents of Firs spaces 4, 8, 14, 17, 21, 28 and 56, stating they will commence such proceedings against all Firs residents on the sole basis of not vacating by October 31, 2017 in an unlawful scheme to circumvent the requirements of law.  The instant LUPA appeal challenges the validity of this underlying notice and the formulation and implementation of the Relocation Plan.  The Court has statutory and inherent authority to restrain and sanction such misconduct.

## IV. STANDING

4.1     Crisanto Medina is aggrieved or adversely affected by the Land Use Decision, and subsequent actions by Respondents as detailed in the records and files herein.  He rents space 62 in the Firs Mobile Home Park where he resides with his

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

family in a mobile home they own. The decision of the City of SeaTac to approve Respondent Fife Motel Inc.'s Relocation Plan for the Firs Mobile Home Park directly affects Mr. Medina's possessory and personal property rights and those of other Firs residents.  Crisanto Medina, acting individually, as President of the Firs Home Owners Association and on behalf of Firs residents, timely filed an appeal of the Director's decision on October 31, 2016 and timely submitted supplemental materials that were received on November 18, 2016.

4.2    Mr. Medina is President of the Firs Home Owners Association Board of Directors. The Firs Home Owners Association incorporated as a nonprofit domestic corporation on October 22, 2016 under Unified Business Identifier number 604047064. The Firs Home Owners Association members are individual home owners who lease spaces on which their manufactured homes are located who are aggrieved or adversely affected by the Land Use Decision and subsequent misconduct by respondents.

4.3   Petitioners are prejudiced or are likely to be prejudiced by Mr. Jong Park's purported decision to change from a mobile home park use to a non-mobile home park use.  Each Firs resident has interests and has and continues to assert those interests herein that are among those that that would be infringed if the Firs Mobile Home Park were to be closed before all Firs residents are relocated to acceptable alternative homes.  SeaTac officials and staff was required to consider the Firs residents interests when it made the Land Use Decision and thereafter implementing the Relocation Plan. A judgment in favor of petitioners would substantially eliminate or redress the prejudice caused or likely to be caused by the Land Use Decision.  Petitioners have exhausted administrative remedies to the extent required by law.

*FIRST AMENDED LAND USE PETITION, Page 6*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

## V. STATEMENT OF ERRORS

5.1     The City of SeaTac failed or refused to comply with applicable provisions of law, including but not limited to LUPA, SEPA, Manufactured/Mobile Home Landlord-Tenant Act Chapter 59.20 RCW, SeaTac Municipal Code Chapter 15.465, and applicable constitutional rights.  The Hearing Examiner errored as follows:

   **a.**     **Finding no. 2:** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the City of SeaTac responsible official properly issued a threshold Determination of Nonsignificance following review pursuant to the State Environmental Policy Act (SEPA) on July 22, 2016.  SeaTac Municipal Code 15.465.600(H)(1)(b) requires Fife Motel Inc. to conduct an analysis of environmental conditions of the park.  According to the Hearing Examiner:

"Residents of the mobile home park presented compelling testimony regarding the hardships involved in relocation of their homes to include, finding a vacant space in a mobile home park, disruption of their children's education in having to change schools, loss of community support, and loss of convenient transit service."  **Facts in Support of this Assignment of Error:**

      i.     The State Environmental Policy Act ("SEPA") determination of non-significance issued by the City of SeaTac on July 22, 2016 concluded that the Mobile Home Park Relocation Plan for the Firs Mobile Home Park "will facilitate future development of the site with projects consistent with the City's Comprehensive Plan." In

*FIRST AMENDED LAND USE PETITION, Page 7*

other words, the SEPA concluded that the Relocation Plan submitted by Fife Motel Inc. for the Firs MHP demonstrated consistency with the City's Comprehensive Plan. However, the Relocation Plan actually contravenes the City's Comprehensive Plan, Housing and Human Services Element, which commits the City to increasing housing options

ii.   The SEPA approved the initial relocation plan, not the Revised Relocation Plan approved October 17, 2016. The SEPA must be redone to reflect the Revised Relocation Plan.

iii.   Moreover, the City's Comprehensive Plan commits it to supporting the maintenance of SeaTac's existing mobile home parks as a source of affordable housing. The approval of the SEPA and initial and Revised Relocation Plan violates the City's own Comprehensive Plan.

iv.   None of the SEPA materials were provided in Spanish to apprise the majority of the Firs residents for whom Spanish is their primary language of the SEPA process, its relationship to the relocation plan, and their right to appeal.

v.   The failure to ensure language access for the purpose of gathering demographic data essential to the SEPA determination and the Relocation Plan's purported analysis of the impacts of park closure and mitigation options related thereto constitutes

*FIRST AMENDED LAND USE PETITION, Page 8*

disparate treatment on the basis of national origin in violation of state law and the federal Fair Housing Act.

    vi.    Discriminatory conduct justifies overturning land use decisions. Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 829 P.2d 746 (1992).

**b.**    **Finding no. 2:** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that no SEPA appeals were timely filed. **Facts in Support of this Assignment of Error:**

    i.    SMC 15.465 et. seq. inextricably links the SEPA and Relocation Plan requirements. A deficient relocation checklist and SEPA determination  prejudiced the approval of the relocation plan and falls within the duty of City staff, and independently it is the duty of the Hearing Examiner, to remedy a deficient SEPA analysis and determination, to mitigate all adverse environmental and human impacts prior to or as part of the review of the proposed Firs Mobile Home Park closing and relocation plan for Firs residents.

    ii.    Spanish is the primary language of most Firs residents.  They were precluded from reviewing, providing comments, participating in and appealing deficiencies in the City's SEPA assessments and determinations—because SeaTac failed or refused to provide required notice, for example, of SEPA appeal rights to Firs in Spanish.

*FIRST AMENDED LAND USE PETITION, Page 9*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

iii.  The respondents' failure to provide language access for the purpose of gathering demographic data essential to the SEPA determination and the Relocation Plan's purported analysis of the impacts of park closure and mitigation options related thereto constitutes disparate treatment on the basis of national origin in violation of state law and the federal Fair Housing Act.

iv.  Discriminatory conduct justifies overturning land use decisions. Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 829 P.2d 746 (1992).

**c.  Finding no. 4:** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the City has established by a preponderance of the evidence that The Firs Mobile Home Park Relocation Plan satisfies all criteria set forth in SMC 15.465.600(H)(1)(a-f).

**Facts in Support of this assignment of Error:**

i.  SeaTac Municipal Code 15.465.600(H)(1)(a) requires Fife Motel Inc. to prepare an inventory of park tenants and their mobile homes to provide data for the SEPA checklist and SEPA analysis of the environmental impacts of mobile home park closure.   The inventory also establishes a basis for identifying relocation/mitigation options.  The inventory "shall" include tenants' age, income, and number of years in the park; the age and conditions of tenants' mobile homes; and the cost of pad rental,

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

utility fees, personal utilities, insurance, personal property taxes, and "mobile home security interests".  The inventory form must clearly advise tenants that the disclosure is voluntary and that the purpose is to assess the impact of the proposed closure and applicability of low-income housing assistance programs.

ii.     The mobile home relocation plan must include an analysis of the inventory, environmental conditions, relocation options, relocation choices, anticipated timing, and coordination plans or actions. The Relocation Plan is fundamentally flawed by the failure of the City to require effective communication with the majority of the adult residents for whom Spanish is their primary language.

iii.    Mr. Park's failure to provide certified interpreters and translators prevented the owner from effectively communicating the inadequate relocation options to the Spanish-language dominant residents, impaired the gathering of accurate information about relocation preferences, fundamentally compromised the SEPA process, deprived the majority of adult residents information regarding the closure timetable, prevented effective coordination and doomed the Relocation Plan.

d.      **Finding no. 5:** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the Examiner had no duty to independently consider the environmental and human impact of the

*FIRST AMENDED LAND USE PETITION, Page 11*

proposed closure and Relocation Plan. **Facts in Support of this Assignment of Error:**

    i.    The failure to provide required disclosures and to translate the collection instrument (essential to a proper SEPA determination) into Spanish prevented the collection of complete and accurate data essential to conduct the analysis required by SMC 15.465.600H.1.a.

    ii.    The failure to ensure language access for the purpose of gathering demographic data essential to the analysis of the impacts of park closure and mitigation options related thereto constitutes disparate treatment on the basis of national origin in violation of state law and the federal Fair Housing Act.

    iii.    SMC 15.465.600H.2.e. tasks City staff with identifying proposed Relocation Plan deficiencies and requiring the owner to remedy them.  Because City staff failed to adequately review and analyze Mr. Parks Relocation Plan, it approved an unworkable Relocation Plan, as demonstrated by the fact that about 62 Firs households currently have no viable dwelling to re-locate to.

    **e.**    **Finding no. 11:** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the Examiner has no authority to require a park owner to "start over" and provide all notices, letters,

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

and plans to the tenants in Spanish as neither the RCW nor the SMC require such.  **Facts in Support of this Assignment of Error:**

      i.     Throughout the relocation planning process, Mr. Park failed to provide certified interpreters and translators. In those instances when the landlord utilized interpreters or translators, those interpreters and translators failed to attest to the accuracy of their interpretations and translations. For example, the June 11, 2016 meeting hosted by the landlord to discuss relocation utilized the services of a young woman with limited Spanish language proficiency.

     ii.    The young woman apparently hired by the landlord, aside from lacking any known certification, did not adequately translate the verbal and/or written information conveyed by the landlord and the relocation team hired by the landlord.

    iii.    The landlord provided the residents with a copy of the Relocation Plan in English. Although the landlord also provided a version of the Plan translated into Spanish, the Spanish-language translation lacks the completeness, specificity, and precision of the English-language version.

    iv.    The formatting of the Spanish-language version of the Plan is inferior to that of the English-language Plan, including lacking the legibility of the English-language Plan. Significantly, the Spanish-language Plan lacks the full content provided by the English-

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

language Plan because many of the pages are oriented

incorrectly and cut off the translated text.

v.   The landlord translated only some of the informational notices

served on the residents between May and October of 2016.

Specifically, the letters dated May 8, 2016 and July 7, 2016 were

not translated into Spanish. Petitioners assert that selective—and

thereby incomplete and misleading—translation of some but not

all relocation-related documents degraded the required relocation

process to ineffectiveness, requiring a re-set of date from which

the one-year closure time runs or re-starting the process over to

ensure that the affected families received adequate information

throughout the relocation process.

vi.   The relocation plan indicates that the landlord provides a hotline

for the affected residents. Again, Alma Raymundo does not

appear to possess any certifications to translate or interpret and

any assistance provided by her constitutes disparate treatment.

vii.   Many of the appendices to the Plan lack Spanish language

translation.

viii.   To the extent that the City of SeaTac paid for the translation of the

Relocation Plan, the City must start over by translating it correctly

and into a legible format. SMC 15.465.600H.2.e. requires the City

to review the Plan, notify the owner in writing of deficiencies, and

require the owner to correct all of the identified deficiencies. The

*FIRST AMENDED LAND USE PETITION, Page 14*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

identification and correction of deficiencies provides the City

extensive discretion to ensure that the owner addresses all

relevant issues related to the relocation.

ix.  A Memorandum dated September 15, 2016 from the U.S.

Department of Housing and Urban Development titled Office of

General Counsel Guidance on Fair Housing Act Protections for

Persons with Limited English Proficiency. According to the

memorandum "[b]ecause a person's primary language generally

derives from his or her national origin, singling out persons for

disparate treatment because they speak a certain language is

typically national origin discrimination." Here, the City required the

owner to translate the Relocation Plan, but not most of the

exhibits. The failure of the owner and City to translate all of the

content into Spanish, especially that involving limitations on

allowable relocation expenses, constitutes nothing less than

disparate treatment on the basis of national origin in violation of

state law and the federal Fair Housing Act.

x.  Discriminatory conduct justifies overturning land use decisions.

See <u>Lutheran Day Care v. Snohomish County</u>, 119 Wn.2d 91,

829 P.2d 746 (1992).

f.  **Finding No. 12.a.** The Examiner failed to follow prescribed

procedures, disregarded duties or abused discretion to the extent that the

Examiner erroneously concluded as a matter of law that the inventory meets

*FIRST AMENDED LAND USE PETITION, Page 15*

the requirements of Section SMC 15.465.600(H)(1)(a).  **Facts in Support of this Assignment of Error:**

    i.    Respondent Fife Motel Inc. failed to comply with SMC 15.465.600 H.1.a. when they sought information to prepare the required inventory because they failed to disclose the purpose of the inventory pursuant to SMC 15.465.600 H.1.a.

    ii.    The information collection instrument utilized to collect the inventory failed to provide the proper disclosures in English.

    iii.    The SeaTac Municipal Code requires the inventory as part of the relocation plan and to inform the SEPA determinations, yet neither contains any substantive analysis of "the impact of the park closure, and to establish a basis for identifying relocation/mitigation options."

    iv.    The Plan asserts that the landlord's relocation agent met with all of the families individually. Public testimony established that the relocation representative met with each family; therefore the inventory and demographic data provided by the owner is misleading and inaccurate, and the analysis required by SMC 15.465.600H.1.a fatally defective.

    v.    Testimony from park residents illuminated the owner's failure to effectively meet with individual tenants with respect to the preparation of an effective and informative inventory.

*FIRST AMENDED LAND USE PETITION, Page 16*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

   vi. The failure to ensure language access for the purpose of gathering demographic data essential to the SEPA determination and the Relocation Plan's purported analysis of the impacts of park closure and mitigation options related thereto constitutes nothing less than disparate treatment on the basis of national origin in violation of state law and the federal Fair Housing Act.

   vii. Discriminatory conduct justifies overturning land use decisions. See <u>Lutheran Day Care v. Snohomish County</u>, 119 Wn.2d 91, 829 P.2d 746 (1992).

  **g.** **Finding No. 12.b.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the owner did not have to provide the checklist and other environmental documents in Spanish. **Facts in Support of of this Assignment of Error:**

   i. Title VI of the Civil Rights Act of 1964 obligates the City of SeaTac to provide Spanish language interpretation and translation. To-date, none of the City's correspondence or meetings were translated or interpreted.

   ii. The City itself failed to comply with Title VI of the Civil Rights Act of 1964 because it neglected to provide the Relocation Approval letter in Spanish.

   iii. The City itself failed to comply with Title VI of the Civil Rights Act of 1964 because it neglected to provide SEPA related materials

*FIRST AMENDED LAND USE PETITION, Page 17*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

pertinent to the approval of the Revised Relocation Plan in Spanish to the residents.

iv.  The City itself failed to comply with Title VI of the Civil Rights Act of 1964 because it refused to provide Spanish-language interpreters at City Council meetings attended by the Firs MHP residents.

v.  Both the owner and the City failed to provide residents with information in Spanish about their right to appeal the City's approval of the Revised Relocation Plan.

vi.  Despite the City's duty to host a relocation meeting as required by SMC 15.465.600H.2.b, it delegated the responsibility to the owner. The City itself failed to comply with Title VI of the Civil Rights Act of 1964 because the park owner failed to provide effective language translation at the meeting required by SMC 15.465.600H.2.b which occurred on or about June 11, 2016. See facts challenging Finding No. 11.

vii.  As noted above, to the extent that the City of SeaTac paid for the translation of the Relocation Plan, the City must start over by translating it correctly and into a legible format. As noted, supra, SMC 15.465.600H.2.e. requires the City to review the Plan, notify the owner in writing of deficiencies, and require the owner to correct all of the identified deficiencies. The identification and correction of deficiencies provides the City extensive discretion to ensure that the owner address all relevant issues related to the relocation.

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

Indeed, the City exercised this discretion to require a translation of the Relocation Plan although the SMC lacks an express translation requirement.

viii. It was well within the discretion of the City to require the owner to provide Spanish-language access to the Firs families at every stage of the relocation process and in all of the owner's written and verbal communications with the families.

ix. With respect to the owner of the park, HUD recognizes that failing to explain untranslated documents or translating them inaccurately may constitute discrimination. See Memorandum dated September 15, 2016 from the U.S. Department of Housing and Urban Development titled Office of General Counsel Guidance on Fair Housing Act Protections for Persons with Limited English Proficiency. Petitioners assert that incomplete and inaccurate language translation throughout the relocation process constitutes disparate treatment in violation of state and federal civil rights laws. The City's refusal to ensure consistent language access for the Firs families perpetuates discriminatory housing practices.

x. Discriminatory conduct justifies overturning land use decisions. See Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 829 P.2d 746 (1992).

h. **Finding No. 12.c. and 14.G.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that

*FIRST AMENDED LAND USE PETITION, Page 19*

the Examiner erroneously concluded as a matter of law that the owner provided

an adequate list of relocation options.  SeaTac Municipal Code

15.465.600(H)(1)(c) requires Fife Motel Inc. to provide affected residents a list of

relocation options.  **Facts in Support of this Error:**

    i.    The list of relocation options considered pursuant to SMC

        15.465.600 H.1.c. was incomplete because it failed to take into

        account the market's handling of housing applications from persons

        of Hispanic descent who in some cases may lack a government-

        issued social security number.

    ii.    In addition, some of the communities listed have rents far in excess

        of the $590/month currently being paid by Firs' homeowners.  For

        instance, the rents at Kloshe Illahee in Federal Way are over

        $900/month.  Just listing manufactured housing communities

        without giving any information about the number of possible

        vacancies they have, or the lot rent they charge, renders the list

        worthless.

    iii.    In the list of communities, only Bonel will provide guaranteed

        security of tenure since it is owned by a non-profit. The landlord

        failed to make it clear to the residents that moving into any of the

        other communities could result in the homeowners getting a 12-

        month notice of closure the very next day.

    iv.    In addition, why does the Relocation Plan provide the HUD income

        guidelines for Thurston, Kitsap, and Whatcom counties?  It is highly

*FIRST AMENDED LAND USE PETITION, Page 20*

unlikely that any of the homeowners from the Firs would choose to move that far away from employment, schools, family and friends.

v.    It is axiomatic that irrelevant, inaccurate, or incomplete information is useless. The purpose of SMC 15.465.600H.2.e and other mandatory duties under RCW 59.20 requiring the owner and the City to analyze the impacts of the park's relocation is to provide meaningful and useful information to Firs residents, other agencies, non-profit organizations, lenders and investors to design and execute the Re-location Plan to successfully relocate all Firs residents prior to Park closure.

i.    **Finding No. 12.d.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the owner complied with SMC 15.465.600(H)(1)(d) by gathering and coordinating tenant relocation preferences.  SeaTac Municipal Code 15.465.600(H)(1)(d) requires Fife Motel Inc. to gather and then coordinate each tenant's housing relocation preferences with others in the park.

**Facts in Support of Error:**

i.    SMC 15.465.600 H.1.d. required the Fife Motel Inc. to obtain accurate information about resident relocation preferences. Testimony at the public hearing established that the residents' relocation preferences were neither solicited nor addressed in the

ii.   Relocation Plan.

*FIRST AMENDED LAND USE PETITION, Page 21*

**j.      Finding No. 12.f.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the Relocation Plan adequately addresses the impacts of park closure on the tenants. **Facts in Support of Error:**

      i.    Testimony at the Public Hearing confirmed that many of the families living in the different homes are related and share child care and other household functions. The forced relocation of the Firs families will shatter these family networks that these low-income families rely on to manage their lives. The City should have required the owner to obtain data on the familial status, a protected category under the federal Fair Housing Act and the Washington Law Against Discrimination pursuant to the City's discretion under SMC 15.465.600H.2.e. to properly gauge the impact of the relocation on these families and the community.

      ii.    Despite the requirement contained at SMC 15.465H.1.a. to analyze the impact of the park closure, and to establish a basis for identifying relocation/mitigation options, no such analysis is contained in the Relocation Plan or the SEPA documents. Given that SMC 15.465.600H.2.e. requires the City to review the Plan, notify the owner in writing of deficiencies, and require the owner to correct all of the identified deficiencies, the lack of analysis of

*FIRST AMENDED LAND USE PETITION, Page 22*

Comprehensive Plan impacts in the Plan constitutes a deficiency within the discretion of the City to address.

    iii.    The Relocation Plan contravenes the City of SeaTac's Comprehensive Plan which commits the City of SeaTac to "support the maintenance of SeaTac's existing mobile home parks as a source of affordable housing." Comprehensive Plan Goal 3.8.

    iv.    The City committed itself to minimizing the impacts of mobile home relocation on low- and moderate-income residents. Comprehensive Plan Goal 3.8.

    v.    The City's disregard of its own Comprehensive Plan goals throughout the formulation of the Relocation Plan constitutes a deficiency requiring reversal of approval of the Relocation Plan contrary to SMC 15.465.600H.2.e.

    vi.    The City's complete and total disregard for its own Comprehensive Plan goals throughout the formulation of the Relocation Plan gives rise to an appearance of prejudgment in favor of approval notwithstanding the implications for approval on the City's own Comprehensive Plan goals. Such prejudgment also contravenes state law with respect to the Growth Management Act.

    **k.**    **Finding No. 14.A.**  The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the erroneous legal

*FIRST AMENDED LAND USE PETITION, Page 23*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

citations contained in the City's notice of approval letter constituted a mere scrivener's error. **Facts in Support of Error:**

    i.    The Notice of Approval dated October 17, 2016 cites a municipal code that does not exist.

    ii.    The failure of the City to properly cite its own code constitutes more than a mere "scrivener's error" because the incorrect citation: (1) misleads the public about the law underlying the decision to approve the relocation plan; and (2) betrays the Director's prejudgment of the proposed relocation plan.

    iii.    Determinations of a public agency require the appearance of fairness and fairness in fact. "The United States Supreme Court has stated that the matter of procedural due process requires the appearance of fairness and fairness in fact. Quasi-judicial administrative decisions will be reversed upon a showing of the probability or appearance of conflict or prejudgment." *Westside Hilltop Survival Committee v. King County*, 96 Wn.2d 171, 181, 634 P.2d 862 (1981) (internal citations omitted).

    iv.    The public and the families residing at the Firs Mobile Home Park have a fundamental right to accurate information about the decisions made by the City of SeaTac. The City's misstatement of its own law misleads the public about the legal basis of the City's decision.

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

v.    Moreover, the misstatement of law gives rise to an appearance of prejudgment. The owner of the park submitted three iterations of the Relocation Plan on May 27, 2016, August 30, 2016, and October 7, 2016. Each iteration misstates the law and the City's approval correspondence dated October 17, 2016 adopts the misstatement of law. The City's adoption of the owner's misstatement of law gives rise to an inference that the City failed to act independently and neutrally and betrays the Director's prejudgment of the relocation plan.

**I.**    **Finding No. 14.C.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the owner provided adequate service of the final, approved Relocation Plan. **Facts in Support of Error:**

i.    Page 6, paragraph 3, of the Relocation Plan states that "when the official 12-month notice of park closure is provided to all residents, it will be sent by registered mail and also hand-delivered to ***all residents***" (emphasis added). Upon information and belief, the owner neglected to (1) hand-deliver the Relocation Plan to ***all*** residents; or (2) properly serve the Plan in accordance with the requirements of RCW 59.21.030. Testimony at the public hearing confirmed hand-delivery to all residents did not occur.

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

ii.  The park owner claims that the Plan "will be hand-delivered to *all*
     *residents* of the park." (emphasis added) See Relocation Report
     and Plan, p. 7. The declaration provided by the owner confirms that
     this did not occur.

iii. Since June of 2016, there have been a number of break-ins in the
     mail room and many residents have lost their mail. SeaTac Police
     report C16058190 details damages to the mail boxes reported on
     November 14, 2016 and report C16057407 details damages to the
     mail boxes reported on November 9, 2016.

iv.  The Relocation Plan must be served with the notice of park closure.
     State law requires that notice of park closure required by RCW
     59.20.080 to be given to "*all tenants* in writing." RCW
     59.21.030(1). RCW 59.20.300 in turn requires the Notice of park
     closure to be served on "*each tenant*" "by certified mail *or* personal
     delivery." RCW 59.20.300(1)(a) (emphasis added). The declaration
     provided by the owner confirms that this did not occur.

v.   The City's position that service of the approved relocation plan falls
     outside the scope of the administrative appeal conflicts with SMC
     15.465.600 section H.2.k. which provides that "[o]nce the relocation
     plan has been deemed by the Director to be satisfactorily
     implemented, the City shall issue a certificate of satisfactory
     completion." SMC 15.465.600H.2.k. Moreover, SMC

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

15.465.600H.2.j. requires the owner to provide monthly relocation reports to the City.

    vi.   The approval of the relocation plan extends to its implementation. The monthly report and certification requirements confirm that post-approval events are an integral part of the relocation plan such that a failure to serve the plan falls within the scope of this appeal.

    vii.   The City has a duty to make sure that the owner does what the plan says the owner will do, especially when it involves service of process of a statutorily required document that upends the lives of all of the residents of Firs Mobile Home Park.

    **m.**    **Finding No. 14. E.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the owner properly prepared the required inventory. **Facts in Support of Error:**

    i.   See analysis related to Finding No. 14.f.

    **n.**    **Finding No. 14. F.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the owner and City had no duty to ensure the translation of the inventory form into Spanish. **Facts in Support of Error:**

    i.   "An ***inventory*** of park tenants and their mobile homes shall be prepared in a format established by the Department (hereinafter referred to as the "department"). ***The purpose of the inventory is***

*to provide data for the State Environmental Policy Act* (Chapter 43.21C RCW) *checklist* (hereinafter referred to as the "SEPA checklist"), *which will analyze the impact of the park closure, and to establish a basis for identifying relocation/mitigation options*." SMC 15.465.600H.1.a. (emphasis added).

ii. Respondent Fife Motel Inc. failed to comply with SMC 15.465.600 H.1.a. when they sought information to prepare the required inventory because they failed to disclose the purpose of the inventory pursuant to SMC 15.465.600 H.1.a.

iii. The SeaTac Municipal Code requires the inventory as part of the relocation plan and to inform the SEPA, yet neither contains any substantive analysis whatsoever of "the impact of the park closure, and to establish a basis for identifying relocation/mitigation options."

iv. The Plan asserts that the landlord's relocation agent met with all of the families individually related to the inventory. Public testimony disputed the Plan's assertion that the relocation representative met with each family and the inventory and demographic data provided by the owner is compromised.  The failure to provide required disclosures and to translate the collection instrument into Spanish prevented the collection of complete and accurate data essential to conduct the analysis required by SMC 15.465.600H.1.a because the majority of the adult residents of the park are Spanish-language dominant.

*FIRST AMENDED LAND USE PETITION, Page 28*

v. Public testimony from park residents before the hearing examiner illuminated the owner's failure to effectively meet with individual tenants with respect to the preparation of an effective and informative inventory.

vi. The failure to ensure language access for the purpose of gathering demographic data essential to the SEPA determination and the Relocation Plan's purported analysis of the impacts of park closure and mitigation options related thereto constitutes nothing less than disparate treatment on the basis of national origin in violation of state law and the federal Fair Housing Act.

vii. See analysis in paragraph "e.." supra related to Finding no. 11.

viii. Discriminatory conduct justifies overturning land use decisions. See Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 829 P.2d 746 (1992).

**o.     Finding No. 14.H.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the owner and City had no duty to ensure the SEPA analyze the impact of the park closure on the net worth of affected families. **Facts in Support of Error:**

i. SMC 15.465.600H.2.e. provides the City staff broad discretion to identify deficiencies in the formulation and content of the Relocation Plan.

*FIRST AMENDED LAND USE PETITION, Page 29*

ii.   The Firs families, whose homes are no longer mobile, are more than tenants. Washington's Constitution and laws generally afford and favor strong property rights protections for tenants, especially for manufactured home owners. Washington's Manufactured/mobile home landlord-tenant act Chapter 59.20 RCW affords manufactured home owners a presumption of one-year leases while Chapter 59.21 RCW provides with relocation assistance.

iii.   Washington law at Chapter 6.13 RCW confers homestead protections to owners of manufactured homes.

iv.   The Hearing Examiner perpetuated the City's failure to exercise the discretion to require the park owner to analyze the impact of the relocation on the financial well-being of the residents of the Firs Mobile Home Park.

p.   **Finding No. 14.I.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the owner and the City had no duty to translate all relocation related materials into Spanish. **Facts in Support of Assignment of Error:**

i.   Neither the Plan nor the exhibits thereto provide any information in Spanish regarding limitations on allowable reimbursements.

ii.   The majority of the Exhibits to the Relocation Plan were not translated into Spanish.

*FIRST AMENDED LAND USE PETITION, Page 30*

iii.   A Memorandum dated September 15, 2016 from the U.S. Department of Housing and Urban Development titled <u>Office of General Counsel Guidance on Fair Housing Act Protections for Persons with Limited English Proficiency</u>. According to the memorandum "[b]ecause a person's primary language generally derives from his or her national origin, singling out persons for disparate treatment because they speak a certain language is typically national origin discrimination." Here, the City required the owner to translate the Relocation Plan, but not all of the exhibits. The failure of the owner and City to translate all of the content into Spanish, especially that involving limitations on allowable relocation expenses, constitutes nothing less than disparate treatment on the basis of national origin in violation of state law and the federal Fair Housing Act.

iv.   See also the facts related to the challenge of Fining No. 12.b.

**q.    Finding No. 14.J.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that the owner and the City had no duty to analyze the impacts of the park closure on Madrona Elementary School. **Facts in Support of Error:**

i.   The Madrona Elementary School receives federal Title I funds in part because of the diverse population of persons residing at the Firs Mobile Home Park. Indeed, 53.7% of Madrona Elementary

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

students are Hispanic/Latino compared to 37.9% of the district overall.

ii.   The Firs families consistently expressed a preference to stay in-place or live nearby so that their children can continue attending Madrona Elementary. This information appears nowhere in the Relocation Plan although the families articulated this concern throughout the process and in Council meetings.

iii.  The Hearing Examiner's refusal to reject the Relocation Plan for its want of analysis with respect to the impacts of the relocation on the education preferences of the families constitutes a deficiency worthy of correction prior to approval of the Relocation Plan.

**r.**   **Finding No. 14.K.** The Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner erroneously concluded as a matter of law that he lacked jurisdiction to consider civil rights related issues. **Facts in Support of Error:**

i.   Section 15.465.600(H)(2)(a-k) of the SeaTac Municipal Code sets forth the "Required Process" related to the Relocation Plan. SeaTac Municipal Code Section 15.465.600(H)(2)(b) required the City of SeaTac to schedule a meeting with tenants.  Mr. Pilcher testified that he did not schedule the meeting, but attended a meeting that the mobile home park owner scheduled and which occurred on July 11, 2016 meeting.  Mr. Pilcher testified that the owner sent an English-language letter dated July 7, 2016 inviting

*FIRST AMENDED LAND USE PETITION, Page 32*

them to attend the July 11, 2016 meeting which Mr. Pilcher

attended. Mr. Pilcher confirmed that: (1) a Spanish language

interpreter was present at the meeting, but the City did not pay for

the interpreter; and (2) the July 7 letter was not translated and the

City did not require its translation.

    ii.    The City must comply with Title VI of the Civil Rights Act of 1964

obligates the City of SeaTac to translate documents and provide

interpreters.

    iii.    Discriminatory conduct justifies overturning land use decisions. See

Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 829 P.2d

746 (1992).

**s.**    **Conclusion 2.** The Examiner failed to follow prescribed

procedures, disregarded duties or abused discretion to the extent that the

Examiner erroneously concluded as a matter of law that the Director's decision to

approve the Mobile Home Park Relocation Plan for The Firs Mobile Home Park

issued on October 17, 2016, was legally correct and satisfied all criteria set forth

in SMC 15.465.600(H).

**t.**    **Decision on Reconsideration.** The Hearing Examiner failed to

follow prescribed procedures, disregarded duties or abused discretion to the

extent that the Examiner denied Petitioners' Motion for Reconsideration. The

record for the Public Hearing closed on February 2, 2017 and the City of SeaTac

Hearing Examiner issued a Report and Decision on February 22, 2017. The

Petitioners moved for reconsideration on March 1, 2017 and requested that the

*FIRST AMENDED LAND USE PETITION, Page 33*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

Hearing Examiner vacate his decision and remand the matter back to the City to reconvene a new Public Hearing because he failed to issue his decision in accordance with SeaTac Municipal Code 1.20.140 which mandates that the Hearing Examiner "shall" render a written recommendation or decision within ten days of the hearing. Here, while the record closed on February 2, 2017, the Hearing Examiner did not issue a decision until February 22, 2017. The Hearing Examiner denied the Petitioners Motion for Reconsideration on March 6, 2017.

u.      Closing Brief. The Hearing Examiner failed to follow prescribed procedures, disregarded duties or abused discretion to the extent that the Examiner refused to consider Petitioners' arguments related to unconstitutional gifts provided by the City of SeaTac to the Applicant/Respondent Fife Motel Inc. Mr. Pilcher "testified that translation (of the Relocation Plan) is not required by the code, but he voluntarily asked the owner to translate the plan and the owner complied.  Staff asked for the owner's agreement for the translation.  Upon receipt the City hired a third party to verify the accuracy of the translation.  The City then opted to have the plan retranslated more accurately.  The City's translation is the version in the final plan."

The City of SeaTac's financial assistance to Fife Motel Inc. reflects bias or favoritism and violates the Washington Constitution which holds that "[n]o county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation…" Const. art. VIII, § 7.

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

**5.2 Misconduct by respondent** Fife Motel, Inc., dba Firs Mobile Home Park, and the president of Fife Motel and manager of The Firs Mobile Home Park, Jong Soo Park and his agents, consultants and attorneys:

**5.2.1** Petitioners re-allege and incorporate by reference the facts set forth in each of the preceding paragraphs of this Petition and the facts set forth in the Dec 11, 2017 declarations of Helena Benedict, Stephanie Ruiz and Omar Barraza (filed and served in Firs eviction case no. 17-2-30223-6 Kent).

**5.2.2** The Due Process Clause of the Fifth Amendment prohibits the government from depriving individuals of their liberty interests, property rights and civil rights without due process of law, and from denying equal protection under the law. Where state or local legislatures granted statutory rights and authorized procedures applicable for protection of vulnerable adults and innocent children, prohibiting age, sex and national-origin discrimination, protecting disabled persons, to notices of closure of mobile home parks, formulation and implementation of the Relocation Plans, minimum substantive and procedural due process rights attach to those statutory and administrative rights.  Through their actions above, Messrs. Park and his consultants and attorneys have violated petitioners' constitutional rights.

**5.2.3** In addition to previously noted breaches, Mr. Park failed to comply with his duties under RCW 59.20.130, RCW 59.20.134 requiring written receipts, RCW 59.20.135 maintenance of common structures, RCW 59.20.150 failure to deliver notices to last known address of tenant.  RCW 59.20.020 imposes a duty of good faith "as a condition precedent to the exercise of a right or remedy under this

*FIRST AMENDED LAND USE PETITION, Page 35*

chapter." Mr. Park breached his duties to Firs residents, as detailed above, thereby precluding him from enforcing Firs Mobile Home Park closure.

**5.2.4** The intent of mobile home park closure and relocation requirements is to permit closure for the purpose of allowing more intensive development that increases housing, business, employment or urban amenities—and generates more governmental revenues and tax receipts—to build a more vibrant, attractive community, in this instance, the City of SeaTac. Mr. Park has neither disclosed nor filed any development applications nor provided any evidence he has done anything toward planning, designing, engineering, and financing a hotel or motel for the Firs property. Indeed, Walt Olson asserted in open court on December 13, 2017 at the unlawful detainer show-cause hearing to evict Firs space 17 resident Stephanie Ruiz, that Mr. Park could evict all Firs residents, regardless of whether any feasible housing alternatives were available to relocate to, seize the Firs residents' property, destroy some 62 manufactured homes, *even if Mr. Park just wanted to fence the property and watch weeds grow.* Mr. Park's staying eviction of all Firs residents as here requested would not materially prejudice Mr. Park's nor SeaTac's rights, but failure to provide such relief to petitioners would unconstitutionally infringe Firs Mobile Home Park residents fundamental property and civil rights. Mr. Park's evictions under the circumstances is impermissible. *See*, *Yee v. City of Escondido*, 503 U.S. 519 (1992).

## VI. REQUEST FOR RELIEF

Wherefore, Petitioners respectfully request the Court to:

*FIRST AMENDED LAND USE PETITION, Page 36*

6.1.    Stay and suspend all action to implement the Land Use Decision here under review pursuant to RCW 36.70C.100;

6.2.    Reverse SeaTac's October 17, 2016 decision approving the applicant's relocation plan;

6.3.    Reverse the Hearing Examiner's February 22, 2017 Land Use Decision;

6.4.    Reverse the Hearing Examiner's March 6, 2017 Land Use Decision on Reconsideration;

6.5.    Enter an Order reversing the City of SeaTac's approval of the Relocation Plan submitted by Fife Motel Inc. which it approved on October 17, 2016.

6.6    Enter an Order staying the closure of the mobile home park still technically set for October 31, 2017 (but for the Court's May 26, 2017, Order on Initial Hearing, as clarified by the Court's December 15, Order on Respondent SeaTac's Motion to Strike) to a date following the final determination of this LUPA appeal, or when all homeowners and residents of The Firs Mobile Home Park are successfully relocated to new housing, whichever date is later.

6.7    Pursuant to RCW 36.70C.100 or other applicable law, without security, A) enjoin and restrain harassment by respondents and B) stay eviction proceedings against individual Firs Mobile Home Park households, including enforcement of all writs of restitution, or orders providing for or allowing removal of Firs residents' property, and moving, damaging or  destroying or interfering with the use and enjoyment of Firs homes—to mitigate or prevent further irreparable harm and unconstitutional deprivation of property rights—of  all Firs Mobile Home Park residents, pending final determination

*FIRST AMENDED LAND USE PETITION, Page 37*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

of this LUPA appeal, or when all homeowners and residents of The Firs Mobile Home Park are successfully relocated to new housing, whichever date is later.

6.8     Impose sanctions against Mr. Park and/or Mr. Olsen, in favor of petitioners for wrongful harassment, threats and intimidation suffered by petitioners.

6.9  Award petitioners their actual reasonable attorney fees, costs and expenses incurred in pursuing this petition; and

6.10   Award such additional and further relief as the Court finds just and equitable.

Respectfully submitted this 22nd day of December 2017.

BARRAZA LAW PLLC

*Vincente Omar Barraza*

VINCENTE OMAR BARRAZA, WSBA #43589
*Attorney for defendants*
14245-F Ambaum Blvd SW
Burien, WA 98166
P: 206-933-7861, E: omar@barrazalaw.com

THE PUBLIC ADVOCATE
A NONPROFIT PROFESSIONAL SERVICES CORPORATION

*Henry E. Lippek*

HENRY E. LIPPEK, WSBA #2793
*Attorney for Defendants*
1001 Fourth Ave., Suite 4400
Seattle, WA  98154
P:  206 389-1652, E: lippek@aol.com

*FIRST AMENDED LAND USE PETITION, Page 38*

Barraza Law, PLLC
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax

DECLARATION OF SERVICE

The undersigned declares:

I am over the age of majority, am competent to testify herein and do so on personal knowledge.

On the date entered below I electronically served at their respective email address the foregoing petitioners' first amended petition to the following attorneys of record:

| | |
|---|---|
| Vincente Omar Barraza<br>Barraza Law PLLC<br>14245 Ambaum Blvd SW<br>Burien, WA 98166 | co-counsel for defendants<br>omar@barrazalaw.com |
| Walter H. Olsen, Jr.<br>Olsen Law Firm PLLC<br>205 South Meridian<br>Puyallup, WA 98371 | Attorney for plaintiff Fife Motel, Inc.<br>walt@olsenlawfirm.com |
| Mary Mirante Bartolo<br>Cindy C. Corsilles<br>SeaTac Office of City Attorney<br>4800 South 188th Street<br>SeaTac, WA 98188-8605 | mmbartolo@ci.seatac.wa.us<br>ccorsilles@ci.seatac.wa.us<br>Attorneys for City of SeaTac |

I certify under penalties of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed on December 22, 2017, at Seattle, WA.

The Public Advocate, n.c.

*Henry E. Lippek*

Henry E. Lippek, WSBA No. 2793,
*Co-counsel for Firs Mobile Home Park*
*unlawful detainer defendants*

*FIRST AMENDED LAND USE PETITION, Page 39*

**Barraza Law, PLLC**
14245-F Ambaum Blvd. SW
Burien, WA 98166
206-933-7861 phone
206-933-7863 fax