Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Firs Home Owners Association,

Plaintiff,

v.

City of SeaTac, a Municipal Corporation,

Defendant.

NO. 2:19-cv-01130-RSL

DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. LAMONT GREEN

NOTE ON MOTION CALENDAR: MARCH 26, 2021

## I. MOTION AND INTRODUCTION

Defendant City of SeaTac moves to exclude the testimony of plaintiff's expert witness Dr. LaMont Green pursuant to Fed. R. Evid. 702, Fed. R. Evid. 402, Fed. R. Evid. 403, and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Dr. Green's testimony should be excluded because (1) he is not qualified by knowledge, skill, training, experience, or education to render opinions on the subjects described in his expert report; (2) his expert opinions are unreliable; (3) his testimony will not help the trier of fact; and (4) any marginal probative value of Dr. Green's testimony is outweighed by the risk of unfair prejudice to the City, and that his testimony will mislead the jury and confuse the issues.

### A. Procedural Background.

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

Pertinent background is set forth in the City's motion for summary judgment (Dkt. #92) at pages 1-6.

**B. The Racial Equity Action Lab Report.**

On December 10, 2020, the HOA produced an expert report by Racial Equity Action Lab. (Plant dec., Ex. A (herein the "REAL report")). The report identifies as authors Dr. LaMont Green, William Yi, and Evan Smith. (*Id.*, at 2). The HOA did not indicate which author it would designate as an expert witness at trial.

More than a month after the deadline for producing expert reports, the HOA on January 12, 2021, produced Dr. Green's resume. (Plant dec., ¶ 3 and Ex. B). The following day, the HOA disclosed that it may call Dr. Green to testify as an expert at trial. (*Id.*, Ex. C).

**1. The report does not comply with Fed. R. Civ. P. 26(a)(2)(B).**

The REAL report does not list the facts and data considered by the authors in developing their opinions. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). The report does not include a list of publications authored by any of the report's author in the previous 10 years. *See* Fed. R. Civ. P. 26(a)(2)(B)(iv). The report does not explain whether any of the authors have testified in other cases. *See* Fed. R. Civ. P. 26(a)(2)(B)(v). The report contains no "statement of the compensation" paid for the report or testimony. *See* Fed. R. Civ. P. 26(a)(2)(B)(vi).

**2. The opinions expressed in the REAL report.**

The opinions set forth in the REAL report may be summarized as follows:

- There is "a pervasive pattern of othering, microaggression, implicit bias, and discrimination exacerbating the impacts of institutional and systemic racism."

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

- City staff and councilmembers "acted in a manner that disenfranchised and truncated civil, social and economic rights of Firs Mobile Home Park residents."
- The actions of the City were "unlawful."
- The actions of the City were "the antithesis of inclusive governance best practices." (REAL report, at 8).

## II. APPLICABLE STANDARDS

It is the trial judge's responsibility to act as a “gatekeeper” by ensuring “that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.” *Daubert,* 509 U.S. at 597. The court's gatekeeping function exists to ensure that an expert witness “employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.” *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999). The gatekeeping role extends to all expert witnesses, whether the expert relies on “scientific” knowledge or “technical” or “other specialized” knowledge. *Id.*, at 147–48. The inquiry is flexible and case-specific, however, and must leave the task of weighing the facts or the expert's credibility to the factfinder. *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010).

## III. LEGAL ARGUMENT

### A. The HOA has not established that Dr. Green is qualified to testify about municipal authority, othering, implicit bias, or institutional racism.

Dr. Green's resume reflects education and experience in social work and housing. (Plant dec., Ex. B). Most of Dr. Green's career has focused on homelessness. *(Id.*). He is presently employed at the "Housing Group," where he provides homelessness-related guidance to federal grantees. (*Id.*).

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

There is no evidence that Dr. Green has an educational background, has formal training, or has any relevant work experience on subjects discussed in the REAL report. There is no evidence that Dr. Green has authored any papers, conducted (or even participated in) any research or studies on subjects discussed in the REAL report. Finally, there is no evidence that Dr. Green has previously qualified as any expert on any subject in any court.

By way of contrast, the court in *Samaha v. Wash. State Dept. of Transp.*, 2012 WL 11091843 (E.D. Wash. Jan. 3, 2012), found Dr. Anthony Greenwald qualified as an expert on implicit bias. Dr. Greenwald was a tenured faculty member at the University of Washington who specialized in "implicit social cognition" and whose research "in the area of unconscious cognition and subliminal perception focuse[d] on the Implicit Association Test," which he helped invent and develop. *Id.*, at *3.

Nothing in the REAL report or in Dr. Green's resume suggests he is qualified to opine about othering, implicit bias, or institutional discrimination, let alone the "civil, social and economic rights" of mobile home park residents, or governance best practices. In fact, Dr. Green's knowledge of othering appears[1] to be drawn from publically available internet sources. (*See* REAL report, at 3 n. 2 & 5 n. 9). Dr. Green defines implicit bias not by reference to peer reviewed studies or publications, but rather by citing the homepage of the University of California, San Francisco's Office of Diversity and Outreach. (*Id.*, at 5 n. 9). For a definition of

[1] The internet link cited in footnote 2 ("www.otheringandbelonging.org/the-problem-of-othering/") does not appear to be a valid internet address. (last visited March 6, 2021).

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

"microaggression," Dr. Green cites to a government webpage that does not contain the two-sentence definition included in the REAL report. (Plant dec., ¶ 5, Ex. D).

The HOA has the burden of establishing that Dr. Green is qualified to testify to the subject matters identified in the REAL report. *Daubert*, 509 U.S. at 592 n. 10. They have not done so and his opinion testimony should be excluded. *See Recreational Developments of Phoenix, Inc. v. City of Phoenix*, 220 F. Supp. 2d 1054, 1061 (D. Ariz. 2002) (witness not qualified where plaintiff failed to establish link between formal education and training and subjects addressed in witness report).

**B. Dr. Green's opinions are not reliable.**

Rule 702 sets forth three requirements for reliability: (1) the expert testimony must be "based on sufficient facts or data"; (2) the expert testimony must be "the product of reliable principles and methods"; and (3) the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

**1. Dr. Green's opinions are not based on sufficient facts or data.**

The facts and data relied upon by Dr. Green are not identified in the REAL report as required by Fed. R. Civ. P. 26(a)(2)(B)(ii), and must therefore be ascertained by reference to the text of the report.

**a. The opinions on othering and implicit bias rely on transcripts from two SeaTac City Council meetings and two newspaper articles.**

In developing their opinions on othering, the REAL report's authors relied on transcripts from two public meetings of the SeaTac City Council in October 2016 and a conversation with

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

"an organizer" who was present at one or more of these meetings and who explained that some residents had not previously "participated in direct advocacy[.]" (REAL report, at 3). The discussion of implicit bias was additionally informed by two newspaper articles. (*Id.*, at 6).

**b. The opinions on institutional racism, the lawfulness of City conduct, and governance best practices, rely on land use planning documents, pleadings, judicial orders, and census data from Bellevue.**

In developing their opinions on the perpetuation of institutional racism, the lawfulness of City conduct, and governance best practices, the REAL report's authors relied on a municipal land use planning document, the first amended complaint, two judicial orders, and U.S. census data for the City of Bellevue. (REAL report, at 6-8). The judicial orders relied upon by Dr. Green include this Court's March 23, 2020, order on the City's Fed. R. Civ. P. 12(b)(6) motion to dismiss the first amended complaint. (*Id.*, at 7 ("In the Motion to Dismiss, U.S. District Judge Robert S. Lasnik stated that . . .")).

**c. The information and data relied upon by Dr. Green is not sufficient.**

Dr. Green's conclusions are drawn solely from materials assembled by the HOA's attorneys. The REAL report does not indicate that the authors considered, for example, documents produced by the City in discovery. Nor does the REAL report indicate that the authors reviewed transcripts from the six depositions conducted by the HOA in this lawsuit. (*See* Dkt. #93). The foundation of Dr. Green's testimony is inadequate. *E.E.O.C. v. Bloomberg, L.P.*, 2010 WL 3466370 at *14 (S.D.N.Y. Aug 31, 2010) (excluding expert where "he admitted in his deposition [that he] only analyzed materials provided and selected by the EEOC."); *Campbell v. Nat'l Railroad Passenger Corp.*, 311 F. Supp. 3d 281, 299 (D.D.C. 2018) ("Such blind reliance

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

on 'facts' provided by plaintiffs' counsel—combined with his failure to review other sources of information that he conceded could affect Amtrak's hiring, promotion, and disciplinary practices—renders his expert report unreliable."). *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 2003 WL 22124991 at *3 (S.D.N.Y. Sept. 15, 2003) ("[A]ny expert should be aware that a party and council in litigation have an interest in the outcome and that an expert study should not be dependent on information they supply."); *Chen*, 2020 WL 5819869 at *4 ("…by relying so heavily on [the plaintiff's] alleged side of the story without considering potentially contrary evidence, Dr. Brink did not use a reliable method to arrive at his conclusions.").

Dr. Green relies in significant part on allegations of the HOA's first amended complaint. (REAL report, at 7 ("The first amended complaint outlines how the City of SeaTac continuously treated Latino and Hispanic residents unfairly . . ."). An opinion that relies on allegations in a complaint is unreliable. *Wasilewski v Abel Womack, Inc.*, 2016 WL 183471 * 3 (D. Conn. Jan. 14, 2016) (methodology not reliable to the extent it relied "exclusively on the allegations" in complaints); *Chen*, 2020 WL 5819869 at * 3 (allegations in a complaint "cannot provide a reliable factual foundation for expert testimony to be considered at summary judgment or trial"). Dr. Green's reliance on this Court's ruling on a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) is inadequate for the same reasons.

Because the HOA cannot establish that Dr. Green's opinions are based on sufficient facts and data, his testimony is inadmissible pursuant to Fed. R. Evid. 702. *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006, 1016 (E.D. Wash. 2010) ("If Dr. Egilman has not cited to



**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

reliable sources for his underlying facts or data, the Court can find that Dr. Egilman's opinions fail the first step of the *Daubert* inquiry.").

**2 Dr. Green's opinions are not the product of reliable principles and methods.**

While a social science-based methodology need not necessarily meet the specific criteria set forth in *Daubert*, an expert must provide "some explanation" of his or her methodology so that it can be evaluated as to its reliability. *Roniger v. McCall*, 2000 WL 1191078 at *3 (S.D.N.Y. Aug. 22, 2000) (citing *Kumho Tire Co.*, 526 U.S. at 157).

**a. The REAL report opinions are not the product of any accepted social-science based approach or methodology.**

The REAL report authors do not explain their methodology because they employed no methodology. The authors have merely cited to examples of evidence that supports the HOA's theory of the case in a small group of documents assembled by the HOA's attorneys. There is nothing "expert" about this approach. *See In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding expert testimony that "does no more than council for plaintiff will do in argument, *i.e.*, propound a particular interpretation of [defendant']'s conduct.") (citation omitted; bracket in original)

The absence of any social science-based approach or methodology renders the REAL report and its conclusions unreliable. *See E.E.O.C. v. Bloomberg L.P.*, 2010 WL at *15 ("The fact that Dr. Borgida conceded that he did not employ any 'specific methodology' and instead merely engaged in 'dog-earing' passages from depositions that he believed supported his conclusion underscores the Court's conclusion that Dr. Borgida's methodology is not reliable and

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

should not be admitted.") (internal citation to record omitted); *Childers v. Trustees of the Univ. of Pennsylvania*, 2016 WL 1086669 at *6 (E.D. Penn. March 21, 2016) ("Dr. Halpert's methodology of sifting through evidence to find passages that support the Plaintiff's theory of the case does not meet Rule 702's requirement of reliability.").

**b. Dr. Green's conclusions about the City are connected to his statements of bias only by the REAL report's *ipse dixit*.**

Even if Dr. Green were qualified to testify about othering, implicit bias, or institutional racism generally, his opinions about these subjects *in this case* are too attenuated from existing data to be reliable. In *Maciel v. Thomas J. Hastings Properties, Inc.*, 2012 WL 13047595 (D. Mass. Nov. 30, 2012), the plaintiff sought to introduce expert testimony on explicit and implicit bias. *Id.*, at *1. The expert sought to testify that "the documents and depositions" he reviewed suggested that the defendants "acted with bias." *Id.* at *5.

While allowing expert testimony about bias generally, the district court excluded testimony about the existence of bias in the case. The court found that the expert did not "provide any connection between, or scientific support for, his general statements about bias and his opinion that Defendants were biased in this case." *Id.* The expert also failed to "describe how the listed events indicate bias, the methods by which he determined that these events indicate bias, or how his experience informed this conclusion." *Id.* While the expert referenced the Implicit Association test as the standard bearer for measuring implicit bias, he did not "describe its application to, or use in, this case." *Id.* The court concluded that the expert's

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

conclusions about the defendants were connected to his statements about bias generally only by his own *ipse dixit*. *Id.*

In addition to lacking the qualifications of the expert in *Maciel*, Dr. Green's expert testimony shares each problem identified by the district court in *Maciel*. Even if implicit bias generally were a proper subject for expert testimony, testimony about implicit bias *in this case* is unreliable and should be excluded.

**3. Dr Green has not reliably applied any methodology to the facts of this case.**

Dr. Green has not applied any ascertainable methodology to the facts of this case. Instead, he has simply cited to examples of evidence that support his conclusions while ignoring evidence that does not. By way of example, the REAL report is critical of Councilmember Campbell's inquiry whether Firs MHP residents spoke Spanish, (REAL report at 3), but ignores the substance of her comment:

> So, I just want people to know that what the city can do, it's more than willing to do. And, I don't think there was anybody here that wouldn't want to help if they can. So, we will do what we can. And, we can pray for you, and work for you. And, you belong to us and we belong to you. We're your council, just as much as anybody else that lives here. (Dkt. #93-9 at 8:1-7).

An approach that relies on evidence that supports the HOA's theories while ignoring "disconforming" evidence renders the report and its conclusion unreliable and inadmissible. *E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370 at *16.

Put another way, Dr. Green came to his conclusions first, and then did the research to support them. This is not a reliable approach to developing an expert opinion.

**C. Dr. Green's testimony will not help the trier of fact.**

MENKE JACKSON BEYER, LLP
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

At issue in this lawsuit is whether the City engaged in *intentional* discrimination against Firs MHP residents. The opinions set forth in the REAL report cannot support these claims because the report speaks only to implicit, or hidden bias—not intentional acts. *See E.E.O.C. v. Wal-Mart Stores, Inc.,* 2010 WL 583681 at *4 (E.D. Ky. Feb. 16, 2010) (excluding expert testimony about gender stereotyping and bias in lawsuit alleging gender discrimination); *Jones v. Nat'l Council of Young Men's Christian Ass'n of the United States of America*, 34 F. Supp. 3d 896, 901 (N.D. Ill. 2014) (excluding expert testimony on implicit bias in lawsuit alleging discrimination on basis of race); *Haydar v. Amazon Corporate*, LLC, 2019 WL 5079704 at *5 (E.D. Mich. Oct. 10, 2019) ("[T]he Court is not convinced that the concept of unconscious bias would help the jury decide the key issue of intentional discrimination in this case.").

If this case goes to trial, the jurors will hear about the statements made by City officers and employees. From that evidence, a jury is fully capable of inferring whether these individuals were (or were not) biased against Firs MHP residents. *See Haydar*, 2019 WL 5079704 at *5. With case-specific evidence, the jury does not need to base a finding of intentional discrimination on the general concept that people hold unconscious bias or that institutional racism exists in the world. *See E.E.O.C. v. Wal-Mart Stores, Inc.*, 2010 WL at *4 ("The burden ... is on the plaintiff to prove that intentional discrimination occurred at this particular distribution center, not just that gender stereotyping or intentional discrimination is prevalent in the world.").

**E. Dr. Green's testimony should be excluded under ER 403.**

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351

Testimony about othering, implicit bias and the perpetuation of institutional racism should also be excluded pursuant to Fed. R. Evid. 403. These concepts are of limited probative value. Under Red. R. Evid. 403, such testimony may be excluded if the probative value of such evidence is "substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, testimony about the role these concepts *might* have played in the City's review of the relocation plan would be entirely speculative, yet highly prejudicial to the City. *See Haydar*, 2019 WL 5079704 at *5 (excluding expert testimony on implicit bias pursuant to Fed. R. Evid. 403). In particular, testimony that City officers or staff perpetuate systemic racism and acted with implicit bias in a lawsuit alleging intentional discrimination has the potential to confuse the issues and mislead the jury. *See Maciel*, 2012 WL 13047595 at *6 ("The distinction between testimony regarding discrimination and testimony regarding bias is too fine a point, and has the potential to confuse the issues and mislead the jury.").

**VI. <u>CONCLUSION</u>**

For the reasons set forth above, the Court should exclude the expert report of REAL and any derivative opinion testimony of Dr. LaMont Green.

DATED THIS 8th day of March, 2021.

s/ QUINN N. PLANT
WSBA # 31339
Menke Jackson Beyer, LLP
*Attorneys for Defendant*
807 North 39th Avenue
Yakima, Washington 98902
Telephone: (509) 575-0313

Fax: (509) 575-0351
Email: qplant@mjbe.com

DEFENDANT'S MOTION TO EXCLUDE
EXPERT OPINION TESTIMONY OF
DR. LAMONT GREEN - 13
NO. 2:19-cv-01130-RSL

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA  98902
Telephone (509)575-0313
Fax (509)575-0351

CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2021, I filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

| | |
|---|---|
| V. Omar Barraza | omar@barrazalaw.com |
| Christina L. Henry | chenry@hdm-legal.com |
| Mary E. Mirante Bartolo | mmbartolo@seatacwa.gov |
| Mark S. Johnsen | mjohnsen@seatacwa.gov |
| Brendan W. Donckers | bdonckers@bjtlegal.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None.

s/ QUINN N. PLANT
WSBA #31339
Menke Jackson Beyer, LLP
*Attorneys for Defendant*
807 North 39th Avenue
Yakima, Washington 98902
Telephone: (509) 575-0313
Fax: (509) 575-0351
Email: qplant@mjbe.com

DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY OF DR. LAMONT GREEN - 14
NO. 2:19-cv-01130-RSL

**MENKE JACKSON BEYER, LLP**
807 North 39th Avenue
Yakima, WA 98902
Telephone (509)575-0313
Fax (509)575-0351