UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FIRS HOME OWNERS ASSOCIATION,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF SEATAC,<br><br>  Defendant. | Cause No. C19-1130RSL<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Defendant's Rule 56(c) Motion for Summary Judgment." Dkt. # 92. Under SeaTac Municipal Code ("SMC") § 15.465.600(H)(2)(k), the owner of property on which a mobile home park is located may close the park only after he or she has implemented a "relocation plan" that has been approved by the City of SeaTac's Department of Community and Economic Development ("CED") and after all residents have been relocated. Plaintiff, a nonprofit corporation representing the former residents of the Firs Mobile Home Park, alleges that the City discriminated against its predominately Spanish-speaking members in violation of various provisions of the Fair Housing Act ("FHA") and the Washington Law Against Discrimination ("WLAD").

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1

judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

**A. WLAD Claim 11-12 and FHA Claim 7**

The WLAD and the FHA bar national origin discrimination in housing and real estate transactions. RCW 49.60.222; 42 U.S.C. § 3604. The WLAD makes it "an unfair practice for any person, whether acting for himself, herself, or another, because of . . . national origin . . . to discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling, to any person" or "to expel a person from occupancy of real property." RCW 49.60.222(1)(f) and (i). Section § 3604 of Title 42 of the United States Code makes it unlawful "(a) [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . national origin" or "(b) [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . national origin." Plaintiff argues that the City of SeaTac was driven by discriminatory animus against Latino or Hispanic residents when it approved the land owner's relocation plan for the Firs Mobile Home Park, leading to their expulsion from the park, despite significant procedural problems. The Court assumes without deciding that the City's actions in reviewing and

---

[1] Although there are significant evidentiary problems with some of the declarations, exhibits, and expert reports submitted by plaintiff, the Court has nevertheless considered the evidence cited by plaintiff in its opposition when determining whether plaintiff has raised a triable issue of fact regarding its WLAD and FHA claims.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 3

approving the property owner's plan to close the mobile home park and relocate its residents can fairly be characterized as making a dwelling unavailable or expelling a person from occupancy for purposes of WLAD Claim 11-12 and FHA Claim 7.[2] Plaintiff's WLAD and FHA claims under RCW 49.60.222(1)(f) and (i) and 42 U.S.C. § 3604(a) nevertheless fail because plaintiff has not provided evidence from which a reasonable jury could conclude that the City's decision to approve the relocation plan was "because of . . . national origin" as required by the statutes.

In asserting a disparate treatment claim, plaintiff must raise a plausible inference of discriminatory intent through direct or circumstantial evidence or through the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013); *Scrivener v. Clark College*, 181 Wn.2d 439, 445 (2014). Plaintiff has not attempted to raise a *prima facie* case of discrimination under *McDonnell Douglas*. Where direct or circumstantial evidence is used to show that "invidious discriminatory purpose was a motivating factor" behind the City's conduct (*Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 266 (1977)), plaintiff need provide "very little such evidence" to raise a triable issue of fact (*Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996)). Nevertheless, plaintiff has failed to satisfy its burden. It does not argue, much less provide evidence, that any of the relevant decisionmakers (*i.e.*, the Planning

---

[2] To the extent plaintiff is asserting a claim under 42 U.S.C. § 3604(b) (FHA Claims 2 and 5), plaintiff has failed to identify any service the City provided in connection with the sale or rental of a dwelling. No sale or rental of a dwelling was in the offing when the City reviewed the property owner's relocation plan.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 4

Manager who processed the relocation plan, the director of the CED who made the decision to approve the relocation plan, and/or the Hearing Examiner who affirmed the approval) harbored discriminatory animus toward Latinos or Hispanics. Nor has plaintiff identified any evidence that the decisionmakers were aware of or otherwise impacted by the views of the City Council or its members regarding Latinos or Hispanics, the closure of the Firs Mobile Home Park, or the relocation plan at issue. Under the SMC, the City Council had no role to play in either the relocation plan review or the appeal process, and plaintiff's failure to provide any evidence suggesting that the relevant decisionmakers were biased or that the City Council inserted itself into the process should doom plaintiff's WLAD Claim 11 and FHA Claim 7.[3]

---

[3] The evidence that has been presented supports the conclusion that the CED made its decision based solely on a comparison of the relocation plan and the requirements of the municipal code. *See* Dkt. # 96 at ¶ 32 (CED approved the relocation plan on October 17, 2016, because "both Acting CED Director Jeff Robinson and [Planning Manager Steve Pilcher] concluded that the proposed Relocation Plan complied with the requirements of SMC § 15.465.600(h)(1)."); *Id*. at ¶¶ 34-36 (other than providing information to both the Mayor and City Council regarding the status of the relocation plan review process, the Planning Manager had no other communications with any member of the City Council regarding Firs Mobile Home Park or the review process); *Id.* at ¶ 39 (noting that an appeal of a relocation plan approval "is adjudicated by the City's hearing examiner. The City Council plays no role in this appeal process."); Dkt. # 99 at ¶ 7 ("The suggestion that land use decisions of CED's were influenced by perceived preferences of City Council members is erroneous. [Acting CED Director Jeff Robinson] had no idea whether any SeaTac City Council members had opinions one way or the other about the relocation plan."); *Id.* at ¶ 9 ("Neither the City Council nor the mayor had any role in CED's review of the mobile home park relocation plan submitted by Fife Motel."); Dkt. # 96-21 at 9 (hearing examiner finding that "Section 1.20.100 SMC provides that Examiner decisions on such appeals are 'final and conclusive' and not appealable to the SeaTac City Council.").

Plaintiff makes much of the fact that the Honorable Leroy McCullough, King County Superior Court Judge, ultimately found that the relocation plan approved by the City was defective. In particular, Judge McCullough found that:

> (a) the Inventory of the mobile home park tenants and their mobile homes required by SMC § 15.465.600(h)(1)(a) was insufficient because it did not contain income

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 5

Plaintiff nevertheless argues that, even if there is no indication that the decisionmakers harbored discriminatory animus or that the City Council played a role in the review or appeal processes, the Council influenced the decisionmakers by making clear its national origin biases. The theory seems to be that the Council's anti-Hispanic/Latino/immigrant animus was so flagrant and public that "[i]t stretches credulity" to think that the CED and the Hearing Examiner were unaware that the City Council wanted the relocation plan approved. Dkt. # 125 at 6. To support this argument, plaintiff identifies specific actions or statements on the part of the City Council and/or its members which, plaintiff argues, would have caused the planning staff to fast-track approval of the proposed relocation plan regardless of its merits and without adequate consideration of alternative outcomes. Dkt. # 125 at 5-11. These actions or statements are as follows:

---

information and the form used to collect the data did not contain a statement of voluntariness or purpose (Dkt. #126-3 at 4-6);

(b) the meeting that the property owner scheduled with the mobile home park residents – and which the CED attended – should have been scheduled by the CED under SMC § 15.465.600(h)(2)(b) (*Id.* at 7); and

(c) the property owner failed to send a copy of its SEPA checklist to each Firs resident as required by SMC § 15.465.600(h)(2)(d) (*Id.* at 7-8).

Plaintiff argues that these procedural shortcomings were overlooked by the CED because it knew the City Council wanted to fast-track the closure of the mobile home park. As discussed in the text, this speculation is unsupported. That a decision is ultimately found to be in error and reversed on appeal does not prove -- or even tend to prove -- that the initial decision was made in bad faith or for improper purpose. Mr. Pilcher and Mr. Robinson state that the errors identified by Judge McCullough were honest mistakes, and they provide explanations for why they believed that the requirements of SMC § 15.465.600(h)(1) had been satisfied. The evidence of the decisionmaker's intent is unrebutted.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6

▪       Plaintiff asserts that "[i]n the months leading up to the consideration of the Firs Relocation Plan, SeaTac's Mayor hosted virulently anti-immigrant former State Legislator Matt Shea who lobbied them to reject federal funding . . . ." Dkt. # 125 at 5. The deposition testimony cited as support for this accusation shows that Mr. Shea was invited to a City Council meeting to discuss "affirmatively furthering fair housing," an obligation that arises when one accepts federal funds. Richard L. Forschler, a City Councilmember at the time, shared Mr. Shea's concerns regarding the nature and scope of those obligations and believed Mr. Shea had more experience in the area than the City's attorneys. Dkt. # 126-4 at 16 and 24. Mr. Forschler was unaware of Mr. Shea's politics until attendees at the meeting made accusations. *Id.* at 24-25. Plaintiff does not identify any evidence that Mr. Shea was invited to speak at the City Council meeting because of or about his views on immigration, that the City's planning staff were aware of the invitation, or that planning staff would understand the invitation as a direction to approve the relocation plan at issue here.

▪       Plaintiff asserts that the City Council hired (and then fired) "a City Manager who tasked staff with mapping Muslim residents," again citing Mr. Forschler's deposition testimony as support. Dkt. # 125 at 5-6. Mr. Forschler makes clear that, while the City Manager's request was portrayed in the news as targeting a particular religious denomination, he was actually asking for an update of a much broader demographic map that the City had previously created and used to determine whether it was meeting its obligations under the federal community development block grant program. Dkt. # 126-4 at 12-15. The map was based on census records and captured demographic information on a census block level, showing the average number of people in the household, average income, dominant race, dominant religion, *etc*. in various areas of the City. *Id.* at 13-14. Plaintiff does not explain how the map request would convey to the planning staff that they were to approve Fife Motel's relocation plan.

▪       Plaintiff asserts that the City Council, its members, City staff, and members of the public discussed the proposal to close and redevelop the Firs Mobile Home Park. Dkt. # 125 at 6. Plaintiff does not assert that any of these communications suggested discriminatory animus or attempted to direct the planning staff's decision-making.

▪       Plaintiff asserts that at a Town Hall meeting held less than two weeks before CED approved the property owner's relocation plan, Councilmember Kathryn Campbell asked

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 7

"how many Firs residents spoke English" and asserted that the residents "do not pay property tax." Dkt. # 125 at 6. While this assertion was accepted as true at the motion to dismiss stage, when read in the context of the remainder of the meeting transcript, no reasonable jury (or planning manager) would think that the comments reflect anti-Hispanic or anti-Latino animus. Ms. Campbell addressed the meeting attendees in Spanish in an attempt to ascertain whether English would be understood. Dkt. # 126-6 at 8. After noting that only two or three hands went up, she pointed out to the other attendees that "a lot of these are Spanish speakers, they earn a living, they live here, they pay taxes here. They don't pay property tax; that's the job of the property owner. But, they're still taxpayers and they're part of the community. And, so, anything we can do to help them, I'd like to see us do." *Id.* Taking Ms. Campbell's comments out of context and characterizing them as discriminatory does not raise a triable issue of fact as to the City's intent or motivation in approving the relocation plan.

▪   Plaintiff asserts that, when a resident of SeaTac emailed the City Council to complain that "[w]e cannot solve all of the world's problems by wasting our resources on non-SeaTac issues," Deputy Mayor Pam Fernald "scrambled to assuage" her. Dkt. # 125 at 6. The resident was concerned that members of the City Council wanted to go beyond the City's legal obligations to assist the residents of Firs Mobile Home Park, even going so far as to encourage the residents to take legal action. Dkt. # 126-7 at 13. She expressed her belief "that our City should [not] become involved in this issue other than to approve or disapprove the relocation plan presented to us." *Id.* Deputy Mayor Fernald clarified that her intention was to identify and make available resources that might help the mobile home park residents, while acknowledging that the property owner has the right to do what he wants with the property as long as he complies with the law. *Id.* at 12. Plaintiff does not explain how responding to – or even placating – a constituent in this context raises a reasonable inference of discriminatory animus toward Hispanics or Latinos on behalf of Deputy Mayor Fernald. Just as importantly, there is no reason to believe that the CED staff was aware of this email exchange.

▪   Plaintiff asserts that various City Councilmembers and staff "loudly echoed their lack of authority to intervene [in the relocation plan review process] or extend the appeal [deadline for challenging CED's determination]." Dkt. # 125 at 7. Plaintiff makes no effort to show that these statements were erroneous, much less that they were motivated

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 8

by discriminatory animus or that they conveyed to the planning staff an instruction to approve the relocation plan.

- ▪ Plaintiff argues that the City Council failed to engage with its members in their primary language (either in writing or through a certified translator), failed to support the mobile home park residents in their efforts to challenge the relocation plan and/or to purchase the property from Fife Motel, failed to exercise its powers to widen the scope of the relocation plan review process and/or to create post-appeal remedial options, and failed to identify City property that could be sold to a developer to build replacement affordable housing. Dkt. # 125 at 7-8. Even if, as plaintiff's experts opine, the City had the authority to do some or all of these things, there is no indication that it had a duty to do so. Plaintiff makes no attempt to explain how a failure to take affirmative and extra-ordinary measures in favor of the residents of the Firs Mobile Home Park (and in some instances against the property owner) suggests discriminatory animus or would have indicated to the CED staff that the City Council wanted the relocation plan approved.

- ▪ Finally, plaintiff argues that events occurring long after the CED had approved the relocation plan on October 17, 2016, and the decision was upheld by the Hearing Examiner on October 17, 2017, somehow impacted those decisions. Dkt. # 125 at 9- 11. No reasonable inference of a causal relationship arises given the chronology.

Regardless whether these actions and statements are considered separately or together, no reasonable jury could conclude that the CED and/or the Hearing Examiner understood that the City Council wanted them to expedite and approve the relocation plan regardless of its merits. Plaintiff has failed to present evidence that could support a finding that the City's decision to approve Fife Motel's relocation plan and affirmance of that decision on appeal was motivated by discriminatory animus. WLAD Claim 11 and FHA Claim 7 therefore fail as a matter of law.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 9

**B. WLAD Claims 2, 3, 4, 5, and 10**

Plaintiff asserts five claims under subsections of the WLAD that prohibit discrimination in the context of "real estate transactions." That phrase is defined to include "the sale, appraisal, brokering, exchange, purchase, rental, or lease of real property, transacting or applying for a real estate loan, or the provision of brokerage services." RCW 49.60.040(22). RCW 49.60.222(1)(b), for example, prohibits national origin discrimination in the furnishing of services in connection with real estate transactions. There is no evidence that the City was involved in the sale, appraisal, rental, or financing of real property, and the Court is not free to ignore the statutory definition that applies to these claims. Plaintiff's WLAD Claims 2, 3, 4, 5, and 10 fail as a matter of law.

**C. WLAD Claim 6**

RCW 49.60.215 makes it an unfair practice for any person "to commit an act which directly or indirectly results in any distinction, restriction, or discrimination . . . , or the refusing or withholding from any person [] admission . . . in any place of public . . . assemblage . . . ." On October 25, 2016, Deputy Mayor Fernald stated:

> Okay. Well, so, what I'd like to say is that I don't think there's a person up here that doesn't understand what's happening and does not have – what word do I want to use – well, compassion. It's even more than compassion – is not broken-hearted that people will be displaced. But, what I want to make clear, and I've said this to guys when it came to the town meeting as well, you know, I think – I think you're getting some bad information, some bad advice. And so I – I respectfully request that you wouldn't come here and say it is up to us when we know, we all know, it's not up to us. We don't have any legal recourse. If we did, we'd be doing it. So, if somebody is telling you that, I mean we can't break the law. We can't

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 10

break our law. We can't just change something on a whim at the last minute to fit what's going on. And, so, maybe I'm not expressing it correctly, but all I'm saying to you is, you know, with your signs and things, we get it but there's nothing we can do.

Dkt. # 126-8 at 16. Deputy Mayor Fernald did not, as plaintiff alleges in the Amended Complaint, "admonish[] the residents not to come with 'your signs and things.'" Dkt. # 25 at ¶ 4.16. Rather, she was acknowledging that, despite the residents' "signs and things," the City Council could not provide the relief requested of it: both the Acting City Manager and the Senior Assistant City Attorney had just confirmed that the City Council had no role to play in the review process and did not have the authority to extend the appeal deadline set forth in the municipal code.

The City did not move for summary judgment regarding WLAD Claim 6, but there does not appear to be any evidence from which a reasonable jury could conclude that the City violated RCW 49.60.215. Plaintiff shall, within fourteen days of this Order, show cause why WLAD Claim 6 should not be dismissed.

**D. WLAD Claim 7**

As alleged in the Amended Complaint, WLAD Claim 7 is based on a denial of access to public accommodations under RCW 49.60.215. Plaintiff alleges that the City had a duty under RCW 2.43 to provide translation and/or interpreter services throughout the relocation planning process and that the failure to do so deprived its members of equal language access to public assemblages or accommodations. Plaintiff has not asserted, and cannot add in the context of an opposition memorandum, a cause of action directly under RCW 2.43. It therefore must show not

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11

only that its members were deprived of translation services "in legal proceedings" (RCW 2.43.010), but also that the lack of translation services resulted in a "distinction, restriction, or discrimination" based on national origin or otherwise excluded the Firs residents from a place of public accommodation or assemblage because of their national origin (RCW 49.60.215).

For purposes of RCW 2.43, "legal proceeding" means "a proceeding in any court in this state, grand jury hearing, or hearing before an inquiry judge, or before an administrative board, commission, agency, or licensing body of the state or any political subdivision thereof." RCW 2.43.020(3). A municipality's review of applications and plans to determine whether they comply with land use regulations and/or the public meetings that go along with such review are not akin to a court proceeding or administrative/agency hearing.[4] Even if "legal proceeding" could be interpreted to include the notices, forms, and meetings involved in this case, any distinction, restriction, or discrimination was on the basis of language, not national origin. Not all Spanish-speakers share the same national origin, nor is language an immutable characteristic. While one could imagine a situation in which a government agency, employer, or landlord uses language as a proxy to identify and discriminate against members of a particular race or national origin, that is not what happened here. Rather, the City provided services to everyone in the same way, and plaintiff has not identified any authority suggesting "that the provision of services in the English language amounts to discrimination against non-English speakers based

---

[4] Plaintiff does not dispute that interpreter services were provided on appeal before the Hearing Examiner.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 12

on ethnicity or national origin." *Kustura v. Dep't of Lab. & Indus.*, 142 Wn. App. 655, 686-87, (2008) (quoting *Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1141 (E.D. Cal. 2004)). WLAD Claim 7 fails as a matter of law.

**E. FHA Claims 2-5**

Claims under the FHA must be brought "not later than 2 years after the occurrence or the termination of an allegedly discriminatory housing practice." 42 U.S.C. § 3613(a). FHA Claim 2 is based on the City's failure to host and control a meeting held on July 11, 2016, a failure which plaintiff asserts is a violation of 42 U.S.C. § 3604(b). FHA Claims 3 and 4 are based on Mayor Sietkes' and/or Deputy Mayor Fernald's October 25, 2016, statements to or about the mobile home park, statements which plaintiff asserts are a violation of 42 U.S.C. § 3617. FHA Claim 5 is based on the City's failure to provide Spanish language interpreters at City Council meetings and the July 11, 2016, meeting and the failure to translate required documents such as the Inventory form in violation of 42 U.S.C. § 3604(b).

FHA Claims 2, 3, and 4 are based on discrete conduct that occurred more than two years before these federal claims were articulated. They are, therefore, time-barred. With regards to FHA Claims 2 and 5, Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." As noted in footnote 2, no sale or rental of a dwelling was in the offing when the City reviewed the property owner's relocation plan, held Council meetings, or attended the

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 13

July 11, 2016, meeting. Because plaintiff has failed to identify any service the City provided in connection with the sale or rental of a dwelling, the claims under § 3604(b) fail.

**F. FHA Claim 6**

FHA Claim 6 alleges that the City violated 42 U.S.C. § 3617 when it failed to enforce the automatic stay in the relocation plan and allowed Fife Motel to initiate unlawful detainer actions and prematurely close the mobile home park. Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." In order to make out a retaliation claim under § 3617, plaintiff must satisfy the *McDonnell Douglas* burden-shifting analysis and can make a *prima facie* case by showing that (1) it engaged in a protected activity; (2) the defendant subjected it to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).

> In the context of a § 3617 claim, that adverse action must be in the form of "coerc[ion], intimidat[ion], threat[s], or interfere[nce]." 42 U.S.C. § 3617. [Plaintiff] has not sought to distinguish among these statutory terms, nor does the statute provide any definition. In determining what those terms mean, "we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996) (internal quotation marks and citation omitted). . . . "Interference" is "the act of meddling in or hampering an activity or process." Webster's Third New Int'l Dict. 1178 (14th ed. 1961). To "coerce" is "to compel to an act or choice by force, threat, or other pressure." *Id.* at 439. And . . . "coercion" includes "the application

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14

of sanctions or force by a government [usually] accompanied by the suppression of constitutional liberties in order to compel dissenters to conform." *Id.* Finally, a "threat" is "an expression to inflict evil, injury, or other damage on another." *Id.* at 2382.

*Walker v. City of Lakewood*, 272 F.3d 1114, 1128–29 (9th Cir. 2001) (alterations in original; internal footnote omitted). Plaintiff is not challenging any affirmative conduct on the part of the City but rather asserts that the City "intentionally declined to exercise its police power to enforce its law preventing the premature and unilateral closure of the part and the unlawful displacement of 60% of SeaTac's Hispanic or Latino mobile home households." Dkt. # 25 at ¶ 4.53. Plaintiff admitted during its Rule 30(b)(6) deposition that no one from the City threatened, coerced, or intimidated plaintiff or its members. Even if the City's failure to intervene in the property owner's unlawful detainer actions could be considered "interference" with plaintiff's FHA rights, there is no evidence that the decision not to intervene was causally related to plaintiff's efforts to enforce its rights under 42 U.S.C. § 3604.

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED in part. All remaining claims other than WLAD Claim 6 are hereby DISMISSED. With regards to WLAD Claim 6, plaintiff shall, within fourteen days of this Order, show cause

//

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 15

why it should not also be dismissed. The Clerk of Court is directed to note a show cause order on the Court's calendar for consideration on July 8, 2022. Defendant may file its response, if any, on or before the note date.

Dated this 21st day of June, 2022.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 16